UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Tampa Division

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual,<br><br>Plaintiff,<br><br>v.<br><br>NEW YORK TIMES COMPANY, a New York corporation, SUSANNE CRAIG, an individual, RUSS BUETTNER, an individual, PETER BAKER, an individual, and PENGUIN RANDOM HOUSE LLC, a Delaware company,<br><br>Defendants. | Case No. 25-cv-02487-SDM-NHA |

**PLAINTIFF'S MOTION TO CONDUCT VENUE
DISCOVERY AND TO STAY BRIEFING ON DEFENDANTS'
RULE 12(B)(3) MOTION TO DISMISS PENDING LIMITED
DISCOVERY AND TO ESTABLISH BRIEFING SCHEDULE**

Plaintiff President Donald J. Trump ("Plaintiff" or "President Trump"), by and through his undersigned counsel, and pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, hereby files his Motion to Conduct Venue Discovery and to Stay Briefing on Defendants' Rule 12(b)(3) Motion to Dismiss ("12(b)(3) Motion") Pending Limited Discovery and To Establish Briefing Schedule, and, in support thereof, states as follows:

## INTRODUCTION

This action concerns numerous defamatory statements regarding President Trump in at least three false, defamatory, and malicious publications made by Defendants New York Times Company ("New York Times" or the "Times"), Susanne Craig ("Craig"), Russ Buettner ("Buettner"), Peter Baker ("Baker"), and Penguin Random House LLC ("Penguin") (collectively, "Defendants")—two articles (the "Articles") published and a book (the "Book").

Plaintiff's Complaint alleges facts supporting venue in this District under 28 U.S.C. § 1391(b)(2) and (3). Defendants have nevertheless filed their Motion to Dismiss or, in the Alternative, to Transfer For Improper Venue and Supporting Memorandum of Law (ECF No. 43) ("Rule 12(b)(3) Motion") challenging venue and have submitted five (5) declarations[1] that inject numerous factual disputes bearing directly on the Fed. R. Civ. P. 12(b)(3) analysis. Plaintiff seeks to propound targeted venue-limited written discovery and take venue-limited depositions of the declarants who submitted their declarations, as well as appropriate Rule 30(b)(6) depositions, to test and controvert Defendants' factual assertions and permit the Court to resolve the venue dispute on a complete record.

---

[1] Defendants submitted declarations from each of the authors of the defamatory publications, as well as from the Senior Vice President of the Times and the President and Publisher of Penguin.

# ARGUMENT

## I. Legal Standards

### A. Federal Rule of Civil Procedure 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) "authorizes dismissal 'only when venue is wrong or improper in the forum in which it was brought.'" *Fertilizantes Tocantins S.A. v. TGO Agriculture (USA), Inc.,* 599 F.Supp.3d 1193, 1199 (M.D. Fla. 2022) (internal quotations and citation omitted). The question of whether venue is "wrong" or "improper" in diversity cases like this one is generally governed by 28 U.S.C. § 1391(b), which states that a civil action may be brought in:

(1) A judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) A judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) If there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

"The plaintiff bears the burden of showing that venue is proper." *Fertilizantes Tocantins,* 599 F. Supp. 3d at 1200. "In assessing whether venue is proper, the court must accept all well-founded allegations in the complaint as true, unless contradicted by the affidavits from the defendant." *Id.* "The Court must

draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Id.*

### B. Venue Discovery

It is well-accepted in the Eleventh Circuit that a qualified *right* to limited discovery exists where jurisdictional facts are genuinely in dispute and discovery may be essential to revealing the facts needed to decide the issues. *See Am. Civil Liberties Union of Florida, Inc. v. City of Sarasota,* 859 F.3d 1337, 1341 (11th Cir. 2017) ("[W]hen facts that go to the merits and the court's jurisdiction are intertwined and genuinely in dispute, parties have a 'qualified right to jurisdictional discovery,' . . . meaning that a district court abuses its discretion if it completely denies a party jurisdictional discovery . . . unless that party unduly delayed in propounding discovery or seeking leave to initiate discovery."); *see also Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 729-31 (11th Cir. 1982) ("[I]f the jurisdictional question is genuinely in dispute and the court cannot resolve the issue in the early stages of the litigation . . . , then discovery will certainly be useful and may be essential to the revelation of facts necessary to decide the issue."); *see also Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367 (11th Cir. 1997) (holding that a motion to dismiss for lack of personal jurisdiction may require limited discovery so that a meaningful ruling can be made); *Majd-Pour v. Georgiana Community Hosp., Inc.,* 724 F.2d 901, 903 (11th Cir. 1984) ("[a]lthough the plaintiff bears the burden of proving the court's jurisdiction, the

plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction"). This principle applies with equal force where, as here, a defendant's declarations inject factual disputes central to venue. *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 n. 13 (1978) ("[W]here issues arise as to jurisdiction *or venue*, discovery is available to ascertain the facts bearing on such issues.") (emphasis added).

Applying this precedent, district courts in the Eleventh Circuit, including this district, routinely recognize a plaintiff's right to conduct limited discovery before ruling on a motion to dismiss for lack of jurisdiction or venue. *See, e.g., Pena v. Helidosa Aviation Group, S.A.,* 2024 WL 3090667, at *2 (M.D. Fla. June 20, 2024) (granting motion to take limited jurisdictional discovery and abating the deadline for plaintiff to respond to defendant's motion to dismiss until after the completion of jurisdictional discovery); *Randall v. Offplan Millionaire AG,* 2018 WL 11252318, * 6 (M.D. Fla. Oct. 23, 2018) (same) *Amerifactors Financial Group, LLC v. Enbridge, Inc.,* 2013 WL 5954777, at * 8 (M.D. Fla. Nov. 7, 2013) (same); *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC,* 2008 WL 1771857, * 2 (S.D. Fla. Apr. 15, 2008) (same).

Indeed, as one Court explained:

> A district court confronted with a factual challenge to its jurisdiction cannot ignore a genuine factual dispute simply because it arises at the pleading stage. *Am. C.L. Union of Fla., Inc. v. City of Sarasota,* 859 F.3d 1337, 1340 (11th Cir. 2017). Rather, it has an 'obligation at any time to inquire into jurisdiction.' *Fitzgerald v. Seaboard Sys. R.R.,* 760 F.2d 1249, 1251 (11th Cir. 1985). In fact, because parties

have a qualified right to jurisdictional discovery, a district court abuses its discretion if it completely denies a party jurisdictional discovery, unless that party unduly delayed in propounding discovery or seeking leave to initiate discovery. *See Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1214 n. 7 (11th Cir. 1999) (rejecting argument that plaintiffs were erroneously denied jurisdictional discovery where they made 'no discovery efforts . . . in the eight months between the time [they] filed the complaint and the time it was dismissed').

*Basaran v. Martin Data, LLC,* 2021 WL 9614107, at *6 (N.D. Ga. Apr. 9, 2021).

Disallowing such discovery would "empower [Defendant] to defeat personal jurisdiction [or venue] merely by filing a written affidavit contradicting jurisdictional [or venue] facts alleged by a plaintiff," which is extremely prejudicial because the "relevant evidence is most likely to be under the defendants' control." *Nissim Corp. v. Clear Play, Inc.,* 351 F. Supp. 2d 1343, 1350-51 (S.D. Fla. 2004).

**II.   Venue Discovery Is Necessary and Proper.**

Under 28 U.S.C. § 1391(a)(2), venue is proper in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situation." "In assessing whether a 'substantial of the events or omissions giving rise to the claim occurred' in a particular judicial district, courts should consider 'only those acts and omissions that have a close nexus to the wrong.'" *Capital Corp. Merchant Banking, Inc. v. Corporate Colocation, Inc.,* 2008 WL 4058014 (M.D. Fla. Aug. 27, 2008) (quoting *Jenkins Brick Co. v. Bremer,* 321 F.3d 1366,

1372 (11th Cir. 2003). "The plaintiff is not required to select the venue with 'the most substantial nexus to the dispute'; rather, it must simply choose a venue where a substantial part of the events giving rise to the claim occurred." *Id.* (citation omitted). "[I]n the context of defamation and other non-physical torts, courts generally hold that venue under 1391(a)(2) is proper in the district where the injured party resides and the defamatory statements were published." *Id.* (collecting cases); *see also Seminole Transp. Specialists, Inc. v. PDM Bridge, LLC,* 2009 WL 3822773, at * 3 (M.D. Fla. Nov. 16, 2009) (finding venue was proper in the Tampa Division of the Middle District of Florida where plaintiff alleged damage to its reputation and business relationships in Pasco and surrounding counties); *Chapin Revenue Cycle Management, LLC v. JDA eHealth Systems, Inc.,* 2012 WL 469824, at *4 (M.D. Fla. Feb. 13, 2012) (finding venue proper in the Middle District of Florida because Plaintiffs were injured here).

In this case, Plaintiff alleges that:

- The New York Times sells printed, regularly read newspapers in Florida, which contain news reports, editorials, and other media content, including the Articles (ECF No. 9 at ¶ 10);

- The New York Times publishes online news reports, editorials, and other media content at https://www.nytimes.com, which are regularly read by individuals in Florida, including the Articles (*id.*);

- Penguin publishes online books/e-books at https://www.penguinrandomhouse.com/books/ and sells printed books, all of which are regularly read by individuals in Florida, including the Book (*id.*);

- The New York Times and Penguin operate, conduct, engage in, or carry on a business in Florida or have an agency in Florida (*id.* at ¶ 11);

- The Book and Articles were published in Florida and remain accessible to the public in Florida (*id.* at ¶ 12);

- The Times' newspapers, online content, and subscriptions are available for public consumption in Florida, and Penguin's publications are available for public consumption in Florida (*id.*);

- Injury to President Trump's reputation in his home state of Florida and among Florida citizens is particularly damaging to him (*id.* at ¶ 12);

- The Times and its reporters produce a distinct newspaper for daily distribution and sale in Florida. The Times distributes and sells thousands, or even millions, of copies of its paper each in Florida, and to thousands of subscribers through its interactive digital content who reside in Florida. In the aggregate, the Times and its reporters generate many millions of individual copies of the Times per year which are distributed in Florida (*id.* at ¶ 13);

- When writing for the Times, Craig, Buettner and Baker were all aware of the Times' regular distribution and sale in Florida. Each was aware that their writings would be published and distributed in Florida (*id.* at ¶ 14);

- Penguin, which maintains an office in Florida, similarly regularly publishes, markets, distributes, and sells thousands of titles, including thousands of copies of the Book, in Florida under various brands, including but not limited to *Penguin Random House* and *Penguin Books* (*id.* at ¶ 15);

- Penguin, Craig, and Buettner knew that the Book would be published, distributed, and sold in Florida (*id.* at ¶ 16);

- Penguin's extensive business contacts with, and interest in, Florida are further evidence by litigation to protect its business (*id.* at ¶ 17);

- A substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District: both the Times and Penguin distributed and sold at least tens of thousands of copies of the publications at issue within this District (*id.* at ¶ 18);

- Trump Media & Technology Group ("TMTG"), the media and technology company that owns and operates the social media platform *Truth Social,* which President Trump founded, is headquartered in Sarasota, within this District. President Trump was TMTG's majority shareholder at the time his claims accrued (*id.* at ¶ 19).

Defendants, however, argue that venue is not proper in this District and should be transferred to the Southern District of New York based on their own self-serving statements attempting to portray the Articles and the Book as "New York-centric" stories about President Trump and what they claim to be their own New York-based investigations that led to their ultimate publication of the Articles and the Book, even though two of the authors (Buettner and Baker) are not even residents of New York. Defendants have injected these factual disputes through declarations and are asking the Court to resolve these factual disputes.

Targeted venue discovery will assist the Court in making an informed and reasoned ruling based upon all the evidence. *See, e.g., Clean Fuels of Ind. Inc. v. Riverport Ins. Co.,* 2016 WL 6650714, at *1 (M.D. Fla. Nov. 10, 2016); *Asbury v. Stout,* 2025 WL 1906707, at *2 (M.D. Fla. July 10, 2025) (where venue allegations are challenged by affidavit, the Court may consider evidence outside the pleadings). At a minimum, venue discovery will reveal:

9
**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

- <u>District-specific print distribution and sales</u>: the number of copies of the Book and the print editions containing the challenged Articles that were shipped into, distributed within, and sold within the Middle District of Florida, and the channels, distributors, and routing decisions that drove those shipments and sales;

- <u>District-specific digital publication and readership</u>: readership metrics (*e.g.,* page views, unique visitors, subscriber views) attributable to users located within the Middle District of Florida for the challenged Articles, and any related landing pages, which directly bear on the locus and extent of publication in this District;

- <u>Location of publication and distribution decisions</u>: where the operative decisions and acts for publication and distribution occurred (including printing, warehousing and shipping pathways for Penguin and publication and distribution processes for the Times), because Defendants contend the "material events" occurred exclusively in New York and/or Washington, D.C.

- <u>Any District-tethered conduct relevant to the challenged statements</u>: the existence, scope, and location of any Florida- or Middle-District-related acts connected to the statements at issue (including any Florida-related reporting steps Defendants deny occurred).

Plaintiff's request is narrow and will afford Plaintiff an opportunity to discover additional facts that would support his contention that venue is proper. Plaintiff seeks venue-limited written discovery, Rule 30(b)(6) depositions of the Times and Penguin, as well as the depositions of each of the five (5) declarants, focused on (i) district-specific circulation/distribution/sales, including print and digital readership metrics, (ii) the location of the publication/distribution decisions and any District-tethered acts Defendants contend did not occur here;

and (iii) the factual assertions raised by each of the declarants in their declarations. This limited discovery is proportional and will materially assist the Court in resolving the venue dispute.

Without this targeted discovery, Plaintiff will be prejudiced because Defendants seek dismissal/transfer based on an untested declaration record, while the relevant evidence is largely within Defendants' possession, custody, and control.

### III.   Proposed Venue Discovery and Rule 12(b)(3) Briefing Schedule.

Further, Plaintiff respectfully requests that the Court stay or extend the briefing schedule on Defendants' Rule 12(b)(3) Motion, and set the following accelerated venue discovery schedule:

- Within seven (7) days of the Court's Order, Plaintiff will serve written venue discovery and Rule 30(b)(6) deposition topics;

- Within fourteen (14) days thereafter, Defendants will serve written responses and produce responsive documents;

- Within twenty-one (21) days after production, the parties will complete the two 30(b)(6) depositions, as well as the depositions of all of the declarants;

- Plaintiff's response to the Rule 12(b)(3) Motion shall be due fourteen (14) days after completion of venue discovery; and

- Defendants' reply shall be due ten (10) days thereafter.

In the event the Court denies Plaintiff's Motion for Venue Discovery, Plaintiff respectfully requests an enlargement of time of twenty-one (21) days to respond to Defendants' 12(b)(3) Motion.

## CERTIFICATE OF CONFERRAL

Pursuant to M.D. Fla. R. 3.01(g), the parties have conferred in good faith about the relief requested herein, including by zoom conference on December 26, 2025, and Plaintiff is authorized to represent that Defendants do not consent to the relief requested in the motion.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order allowing Plaintiff to conduct limited discovery, including propounding written discovery and taking depositions, and allowing Plaintiff to file a response to Defendants 12(b)(3) Motion within fourteen (14) days following the close of venue discovery, with Defendants' reply due ten (10) days thereafter, or, alternatively, allowing Plaintiff an additional twenty-one (21) days to respond to Defendants' Rule 12(b)(3) Motion, and for any such further relief the Court deems just and proper.

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Dated December 26, 2025          Respectfully submitted,

*/s/ Alejandro Brito*
Alejandro Brito
Florida Bar No. 098442
BRITO, PLLC
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Tel: 305-614-4071
Fax: 305-440-4385
abrito@britopllc.com
apiriou@britopllc.com

*/s/ Edward Andrew Paltzik*
Edward Andrew Paltzik
Taylor Dykema PLLC
914 E. 25th Street
Houston, TX 77009
Tel: 516-526-0341
edward@taylordykema.com
(*pro hac vice* admitted)

*/s/ Daniel Zachary Epstein*
Daniel Zachary Epstein
Epstein & Co. LLC
8903 Glades Rd
Ste A8 #2090
Boca Raton, FL 33434
Tel: 202-240-2398
dan@epsteinco.co
(*pro hac vice* admitted)
*Counsel to Plaintiff*
*President Donald J. Trump*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 26, 2025, the foregoing was served via the Court's CM/ECF System upon:

| | |
|---|---|
| William J. Schifino, Jr., Esq.<br>Justin P. Bennett, Esq.<br>Gregory L. Pierson, Esq.<br>Gunster, Yoakley & Stewart, P.A.<br>401 E. Jackson Street<br>Suite 1500<br>Tampa, Florida 33602<br>wschifino@gunster.com<br>jbennett@gunster.com<br>gpierson@gunster.com<br>cwarder@gunster.com<br>*Counsel for Defendants Penguin Random House LLC,*<br>*Susanne Craig, and Russ Buettner* | George S. LeMieux, Esq.<br>Eric C. Edison, Esq.<br>Gunster, Yoakley<br>& Stewart, P.A.<br>450 East Las Olas Blvd.<br>Suite 1400<br>Fort Lauderdale, Florida 33301<br>glemieux@gunster.com<br>eedison@gunster.com<br>*Counsel for Defendants Penguin Random House LLC,*<br>*Susanne Craig, and Russ Buettner* |
| Williams & Connolly, LLP<br>Thomas G. Hentoff, Esq.*<br>Nicholas G. Gamse, Esq.*<br>Kimberly Broecker, Esq.*<br>680 Main Avenue S.W.<br>Washington, D.C. 20024<br>thentoff@wc.com<br>ngamse@wc.com<br>kbroecker@wc.com<br>*Counsel for Defendants New York Times Company,*<br>*Susanne Craig, Russ Buettner, and Peter Baker* | Elizabeth A. McNamara, Esq.* (lead counsel)<br>John M. Browning, Esq.*<br>Alexandra Perloff-Giles, Esq.*<br>Alexandra M. Settelmayer, Esq.*<br>Davis Wright Tremaine, LLP<br>1251 Avenue of the Americas<br>New York, New York 10020<br>lizmcnamara@dwt.com<br>jackbrowning@dwt.com<br>alexandraperloffgiles@dwt.com<br>alexandrasettelmayer@dwt.com<br>*Counsel for Defendants Penguin Random House LLC,*<br>*Susanne Craig, and Russ Buettner* |
| Thomas & LoCicero, PL<br>Carol Jean LoCicero, Esq.<br>James J. McGuire, Esq.<br>Linda R. Norbut, Esq.<br>601 South Boulevard<br>Tampa, FL 33606 | |

**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

clocicero@tlolawfirm.com
jmcguire@tlolawfirm.com
lnorbut@tlolawfirm.com
*Counsel for Defendants New York Times Company,*
*Susanne Craig, Russ Buettner, and Peter Baker*

/s/ Alejandro Brito