**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, | Case No. 25-cv-02487-SDM-NHA |
| Plaintiff, | |
| v. | |
| NEW YORK TIMES COMPANY, a New York corporation, SUSANNE CRAIG, an individual, RUSS BUETTNER, an individual, PETER BAKER, an individual, and PENGUIN RANDOM HOUSE LLC, a Delaware company, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TO TRANSFER FOR IMPROPER VENUE
AND SUPPORTING MEMORANDUM OF LAW**

Plaintiff President Donald J. Trump ("Plaintiff" or "President Trump"), by and through his undersigned counsel, hereby files this Memorandum of Law in Opposition to Defendants' Motion to Dismiss or, in the Alternative, to Transfer for Improper Venue and Supporting Memorandum of Law ("Rule 12(b)(3) Motion" or "Motion") [DE 43]. In support, President Trump states as follows:

## INTRODUCTION

This action arises from a series of false, defamatory, and malicious publications about President Trump, a Florida citizen, by Defendants—The New

York Times Company ("New York Times" or the "Times"), Susanne Craig, Russ Buettner, Peter Baker, and Penguin Random House ("PRH") (collectively, "Defendants"). The publications include two Times articles (the "Articles"), and a book published by PRH (the "Book").

Defendants wrongly ask the Court to dismiss this action for improper venue, or, alternatively, to transfer it to New York, relying on an artificially narrow view of the events giving rise to Plaintiff's defamation claims. Defendants focus almost entirely on where the challenged statements were researched, drafted, edited, and approved, while minimizing the places where the statements were published, distributed, sold, read, and caused injury. Defendants' approach is inconsistent with the nature of defamation, which revolves around where the challenged statements were published.

The stipulated record defeats Defendants' venue argument. Defendants admit that the challenged Articles and Book were published, distributed, sold, accessed, and read nationwide, including in this District. Tens of thousands of readers in this District reviewed or viewed the Articles. Thousands of print copies of the Times editions containing the Articles were distributed or sold here. PRH sold thousands of copies of the Book in or around this District. Further, Defendants knew before publication that the Articles and Book would be published, distributed, and sold nationally, including in this District.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Nor is this District merely a place where the publications happened to circulate. President Trump is a Florida citizen. He founded Truth Social, the social media platform owned and operated by Trump Media & Technology Group ("TMTG"), which is headquartered in Sarasota, Florida, within this District. President Trump was TMTG's majority shareholder when these claims accrued, and the First Amended Complaint alleged that Defendants' defamatory statements caused economic injury tied to TMTG's stock price and President Trump's ownership interest. The reputational and economic injuries alleged in this case are therefore connected to Florida in concrete and substantial ways.

Defendants' alternative request to transfer this case under 28 U.S.C. § 1404(a) fares no better. At the outset, their position is irreconcilable with their own litigation history. Both the New York Times and PRH have affirmatively invoked and accepted this District as a proper and convenient forum when it served their interests, including PRH's decision to file suit here less than two years ago and the Times' prior willingness to litigate here without contesting venue. That record forecloses any credible claim that this District is now so inconvenient or unjust as to warrant transfer.

Defendants have also stipulated that their documents are accessible electronically and that they will produce party witnesses for deposition at mutually agreeable locations. Those concessions substantially undercut any claimed witness or document burden. The locus of the operative facts, properly

understood in a defamation case, includes where the defamatory statements were disseminated, consumed, and caused injury. That includes this District. Florida defamation law will govern these claims, and President Trump's choice to bring suit in his home state is entitled to substantial deference. Because Defendants have not carried their burden of showing that transfer is necessary to disturb that choice, their Motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Defamatory Publications and Their Targeted Distribution in This District.

President Trump, a Florida citizen who founded Truth Social and was the majority shareholder of its parent company, TMTG, when these claims accrued, filed this action against Defendants for serial defamation in three publications: the Book, the First Article (an adaptation of the Book published on the eve of the 2024 election), and the Second Article (which republished and amplified the prior defamatory accusations against him). *See* First Amended Complaint, D.E. 9 ("FAC") ¶¶ 1, 3, 19, 73.

The parties have stipulated to the facts material to venue. *See* Joint Stipulated Facts ("Stipulation") attached hereto as Exhibit A. Those facts confirm that this District is not an incidental or attenuated forum. Defendants admit that the challenged works were published, distributed, and sold nationwide, including in this District. *See* Stipulation ¶¶ 1, 2, 15, 16, 17. The numbers are substantial:

- Approximately 15,000 Times print subscribers in this District received each Article, and additional print copies of the Times editions containing the Articles were sold through retail outlets here. *See* Stipulation ¶¶ 3-4, 9-10.

- The Times also had approximately 120,000 paid online subscribers in this District at the time of each Article, and the Articles were viewed by approximately 45,000 unique online readers in this District. *See id.* ¶¶ 5-6, 13-14. The Articles remain accessible online to readers here. *See id.* ¶¶ 11-12.

- The Book likewise reached this District. PRH's records reflect that consumers purchased approximately 2,200 copies of the Book in or around this District, and the Book remains available for purchase here. *See id.* ¶¶ 17-18.

Critically, these forum contacts were foreseeable and known before publication. Defendants stipulated that they knew, before publication, that the Book and Articles were scheduled to be published, distributed, and sold nationally, including in this District. *See id.* ¶¶ 30-32.

### B.    President Trump's Connections to this District.

President Trump's reputational and economic interests in this District are substantial. He founded Truth Social, the social media platform owned and operated by TMTG, which is headquartered in Sarasota, Florida, within this District. *See* FAC ¶ 19. President Trump was TMTG's majority shareholder when his defamation claims accrued. *Id.*

The FAC states that Defendants' defamatory statements "led directly to a precipitous decline in the stock price of TMTG, significantly injuring the President given his ownership stake." *Id.* ¶ 73. The alleged economic injury is

therefore tied to President Trump, a Florida resident, and to a Florida-headquartered company in which President Trump held a majority ownership interest. The publications also reached readers and consumers in this District, among whom President Trump's reputation as a businessman, entrepreneur, media founder, and public figure was substantially injured. *See id.* ⁋ 12.

### C. Defendants' Stipulations Undermine Their Transfer Arguments.

Defendants' own stipulations substantially weaken their request to transfer this case to New York. Defendants have readily stipulated that their documentary evidence is "accessible and can be transmitted electronically." *See* Stipulation ⁋⁋ 26-27. They also stipulated that they will produce deposition witnesses under their care, custody, and control "at a mutually agreeable location." *See id.* ⁋⁋ 28-29. Those concessions eliminate most of the practical burden on which Defendants' transfer request depends. This is not a case where relevant documents are inaccessible, where evidence is concentrated in a distant forum, or where party witnesses cannot be produced without undue hardship. Defendants' request, therefore, rests largely on a self-serving preference for litigating in New York. That is insufficient to overcome President Trump's chosen forum, which must be afforded substantial deference, and particularly where the stipulated facts show substantial publication, readership, sales, continued accessibility, and injury in this District.

## ARGUMENT

## I.    Venue Is Proper in the Middle District of Florida.

### A.    Legal Standard

Federal Rule of Civil Procedure 12(b)(3) "authorizes dismissal 'only when venue is wrong or improper in the forum in which it was brought.'" *Fertilizantes Tocantins S.A. v. TGO Agriculture (USA), Inc.,* 599 F. Supp. 3d 1193, 1199 (M.D. Fla. 2022) (internal quotations and citation omitted). In diversity cases, venue is governed by 28 U.S.C. § 1391(b), which permits suit in, among other places, "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

Plaintiff bears the burden of showing that venue is proper, but the Court must accept well-pled allegations as true unless contradicted by competent evidence, draw reasonable inferences in Plaintiff's favor, and resolve factual conflicts in Plaintiff's favor. *See Fertilizantes Tocantins,* 599 F. Supp. 3d at 1200. Section 1391(b)(2) does not require Plaintiff to identify the district with the most substantial connection to the dispute. It requires only that a substantial part of the events giving rise to the claims occurred in the chosen district. *See Jenkins Brick Co. v. Bremer,* 321 F.3d 1366, 1371-72 (11th Cir. 2003). That standard is satisfied here.

### B.      Substantial Publication Events Occurred in this District.

Defendants' venue argument depends on treating the relevant "events" as limited only to where the Articles and Book were researched, written, edited, or approved. That framing is wrong for a defamation case.

Defamation requires publication. "The tort of defamation requires publication—communication of the defamatory statement to a third person." *Jews for Jesus, Inc. v. Rapp,* 997 So. 2d 1098, 1106 (Fla. 2008). Florida law likewise recognizes that the tort of defamation is not complete until the challenged statement is communicated to a third party. *See Internet Sols. Corp. v. Marshall,* 39 So. 3d 1201, 1214-16 (Fla. 2010) (explaining that allegedly defamatory material is not "published" in Florida unless accessed by a third person in Florida); *Silver v. Levinson,* 648 So. 2d 240, 244 (Fla. 4th DCA 1994).

That principle applies with particular force to venue. The Eleventh Circuit has recognized that, for defamation purposes, the relevant wrong occurs where the defamatory statement is published. *See Simon v. Shearson Lehman Bros., Inc.,* 895 F.2d 1304, 1311 (11th Cir. 1990) (citing *Stepanian v. Addis,* 782 F.2d 902, 903 (11th Cir. 1986)). Florida law follows the same rule. *See Firstamerica Dev. Corp. v. Daytona Beach News-Journal Corp.,* 196 So. 2d 97, 102 (Fla. 1966).

Here, the stipulated facts establish substantial publication in this District. The Times distributed approximately 3,000 print copies of the Articles in this District, the Articles were viewed by approximately 45,000 unique online readers

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

in this District, and PRH sold approximately 2,200 copies of the Book in or around this District. *See* Stipulation ¶¶ 9-10, 13-14, 17-18. Defendants also stipulated that, before publication, they knew the Book and Articles would be published, distributed, and sold nationally, including in this District. *See id*. ¶¶ 30-32. These facts are key to the venue analysis. They are the publication facts that complete the tort and give rise to Plaintiff's reputational injury.

Defendants cannot now convert a nationwide publication into a venue only in New York. Section 1391(b)(2) does not ask whether this District is the only district where relevant events occurred, or even the district with the greatest number of contacts. It asks whether a substantial part of the events giving rise to the claims occurred here. The stipulated record plainly shows that they did.

### C. Defendants' Attempt to Treat Publication as Irrelevant Cannot Be Reconciled with *Jenkins.*

In support of their Motion, Defendants rely on *Jenkins,* but *Jenkins* actually supports Plaintiff. *Jenkins* instructs courts to focus on acts or omissions that have a "close nexus" to the wrong. 321 F.3d at 1371-72. In a contract case, this may point to where the contract was breached. In a defamation case, it points to where the defamatory matter was published, and where reputational injury occurred.

The publication events in this District have the closest possible nexus to Plaintiff's injury. They are the means by which the allegedly defamatory statements reached third parties, and caused injury. Defendants' contrary position would improperly elevate newsgathering and drafting over the required element

of publication. Nor does Plaintiff's argument depend on treating each copy, sale, or online view as a separate cause of action. The stipulated distribution, readership, and sales show that a substantial part of the events giving rise to the defamation claims occurred in this District.

> **D.    The District Residence Argument Attempts to Add a Requirement that the Statute Does Not Contain.**

Defendants also suggest that venue is improper because President Trump does not reside in this particular District. But § 1391(b)(2) contains no district residence requirement. Instead, it focuses on whether a substantial part of the events or omissions giving rise to the claims occurred in this district. *See* 28 U.S.C. § 1391(b)(2). Cases recognizing proper venue where a defamation plaintiff resides and suffers reputational injury do not establish the converse rule that venue is improper everywhere else. Residence may be sufficient. It is not necessary. The relevant question remains whether substantial publication-related events occurred here. They clearly did.

Moreover, President Trump is a Florida citizen. *See* FAC ¶ 3. The challenged publications reached tens of thousands of readers in this District, were distributed in print here, were sold here, and injured his reputation among Florida readers and consumers, including in a District where he has substantial business and reputational interests, including through TMTG and Truth Social. *See* FAC ¶¶ 19, 73. That is enough under § 1391(b)(2).

## E.     Defendants' Authorities Do Not Support Dismissal.

Defendants' reliance on cases involving thin, incidental, or undifferentiated internet contacts is misplaced. This is not a case where Plaintiff merely alleges that an online article was theoretically accessible in the forum. The parties have stipulated to substantial, actual readership, print distribution, retail sales, book sales, and pre-publication knowledge that the works would be distributed and sold in this District. *See generally* Stipulation.

Defendants' lead authority, *Nunes v. Cable News Network, Inc.,* 2023 WL 2468646 (M.D. Fla. Mar. 1, 2023), is materially distinguishable. The *Nunes* plaintiff was Devin Nunes, a former *California* congressman who lived and worked *in California* and whose only connection to this District (and the State of Florida) was that he had recently joined TMTG as CEO. The court held that this "professional[]" tie was insufficient because Nunes did not reside in Florida and the broadcast had nothing to do with the District. *Id.* at *5. Here, by contrast, President Trump is a Florida citizen. *See* FAC ⁋ 3. He founded Truth Social and was TMTG's majority shareholder when his claims accrued. *See id.* ⁋ 19. Defendants' publications had concrete financial consequences for him in this District through the decline of TMTG's publicly traded stock. *See id.* ⁋ 73. *Nunes*, whether one agrees with it or not, has no bearing and does not control the outcome here.

Defendants' reliance on *Trump v. Simon & Schuster, Inc.,* 2023 WL 5000572 (N.D. Fla. Aug. 4, 2023) is similarly misplaced. *Simon & Schuster* involved copyright claims arising from audio recordings made in Washington, D.C., not defamation claims arising from a publication's effect on the plaintiff's reputation. *Id.* at *4. Copyright claims and defamation claims are not analyzed identically for venue purposes because the wrongs are different. Copyright infringement is committed by the act of copying, while defamation is committed by the act of publication to a third party. *Simon & Schuster* is inapposite. Moreover, *Simon & Schuster* was filed in a different District, and does not control here.

## II.    Transfer Under § 1404(a) Is Not Warranted.

### A.    Legal standard.

Section 1404(a) does not authorize transfer merely because Defendants prefer a different forum. The statute requires that Defendants demonstrate that transfer is necessary, "[f]or the convenience of parties and witnesses" and "in the interests of justice." 28 U.S.C. § 1404(a). A plaintiff's chosen forum "should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 260 (11th Cir. 1996). Section 1404(a) does not permit transfer to a forum that is merely "equally convenient or inconvenient." *Van Dusen v. Barrack,* 376 U.S. 612, 645-46 (1964). Nor may it be used simply to shift inconvenience from Defendants to Plaintiff. *See Trinity*

*Christian Center of Santa Ana, Inc. v. New Frontier Media, Inc.,* 761 F. Supp. 2d 1322, 1329 (M.D. Fla. 2010).

Defendants come nowhere close to meeting this standard. Their Motion proceeds through the familiar *Manuel* factors—"(1) the convenience of the witnesses; (2) the location of relevant documents and ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 & n.1 (11th Cir. 2005). Defendants do not satisfy the *Manuel* test, as their preferences do not outweigh President Trump's chosen forum. At most, Defendants show that they would prefer to litigate in the district where the Times and PRH are headquartered and where some editorial work occurred. That is not enough.

Defendants' transfer argument fails because it rests on a distorted view of the record and the governing factors. They overstate witness convenience by counting reporters' sources as though they were identified, material, unwilling trial witnesses. They ignore their own stipulation that documents are electronically accessible and that witnesses under their control will be produced at mutually agreeable locations. *See generally* Stipulation. They confuse the place

of newsgathering and editing with the place of publication and injury in a defamation case. They dismiss President Trump's choice of his home state in a footnote. They also treat Plaintiff's unrelated prior litigation in New York as though it were an evidentiary admission that New York is convenient for this case. None of those arguments justifies transfer under § 1404(a).

### B. The New York Times and PRH have previously consented to jurisdiction in this District.

Defendants' request to transfer is meritless given their own prior conduct. Both the New York Times and PRH have not merely acquiesced to jurisdiction in this District. They have affirmatively invoked it when it suited their interests. Vitally, less than two years ago, PRH chose this very forum as a ***plaintiff***, filing suit in this District. *See Penguin Random House, LLC, et. al. v. Gibson*, *et. al.*, 6:24-cv-01573-CEM-RMN. Moreover, the New York Times has likewise accepted this District as a proper forum, forgoing arguments for dismissal under 12(b)(3) or other grounds. *See Willhoit v. New York Times Co., et. al.*, 8:08-cv-00898-S_B-TBM ECF No. 20; *see also Sauve v. New York Times Co., d/b/a Sarasota Herald Tribune et. al.*, 8:03-cv-00203-RAL-TGW. Having previously chosen, or accepted, to litigate in this forum, the New York Times and PRH cannot credibly claim that this forum is so inconvenient as to warrant transfer.

### C. Plaintiff's choice of forum is entitled to substantial deference.

Defendants' effort to give President Trump's choice of forum "no weight" is untenable. A plaintiff's chosen forum "should not be disturbed unless it is

clearly outweighed by other considerations." *Robinson,* 74 F.3d at 260; *see also*

*Exotropin, LLC v. DP Derm, LLC*, 2025 WL 2306200, at *10 (S.D. Fla. Aug. 11,

2025) ("Traditionally, a plaintiff's choice of forum is accorded considerable

deference[.] …") (quoting *Sorensen v. Am. Airlines, Inc*., 2022 WL 2065063, at

*7 (S.D. Fla. June 8, 2022)). That principle applies with force here because this

is not a dispute with only a manufactured connection to Florida. President Trump

is a Florida citizen. The challenged publications were knowingly published,

distributed, sold, and read in this District. The Times distributed thousands of

print copies here. The Articles were viewed by tens of thousands of unique online

readers here. PRH sold thousands of copies of the Book in or around this District.

Defendants knew before publication that the works would be distributed and sold

nationally, including here.

Nor is this a case where Plaintiff selected a forum unrelated to the alleged

harm. Defamation injures reputation where the defamatory matter is published

and received. *See Simon,* 895 F.2d at 1311; *Firstamerica Dev. Corp.,* 196 So. 2d

at 102. This District is also where TMTG—President Trump's media company,

which he founded and in which he held a majority ownership stake when the

claims accrued—is headquartered. The FAC details economic injury connected

to TMTG's stock price and President Trump's ownership interest. Defendants

cannot erase that connection by declaring those damages allegations irrelevant at

the venue stage, as they are clearly relevant.

**D.      The locus of operative facts does not favor transfer.**

Defendants' transfer argument rests on the same flawed premise as their venue argument—that the only meaningful events in this defamation case occurred wherever the Articles and Book were researched, drafted, edited, or approved. That is simply not the law. In a defamation action, publication is not a peripheral event. It is the act that gives rise to liability. The operative facts, therefore, include not only Defendants' newsgathering and editorial decisions, but also where the defamatory statements were published, distributed, read, and caused injury. As previously set forth, the stipulated record establishes that those publication-related events occurred in this District in substantial measure. Those facts are not incidental. They are operative facts in a defamation action.

*Gubarev v. BuzzFeed, Inc.* is directly on point. There, the New York-based media defendants sought to transfer a Florida defamation action to the Southern District of New York, arguing that the challenged publication was written, edited, approved, and uploaded in New York. 253 F. Supp. 3d 1149, 1165-67 (S.D. Fla. 2017). The Court rejected that narrow framing. It held that the locus of operative facts did not support transfer because the allegedly defamatory article was accessible and accessed in Florida, the plaintiffs alleged injury in Florida, and "there are arguably multiple loci of operative facts." *Id.* at 1166. The Court further explained that, where "there is no single locus of the operative facts," the factor is neutral and does not support transfer. *Id.* at 1165-66.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

The same reasoning applies here with even greater force. This is not a case involving only passive online accessibility. Defendants stipulated to actual, substantial publication in this District. They also stipulated that they knew before publication that the challenged works would be distributed and sold here. Under *Gubarev,* those publication and injury facts cannot be disregarded simply because some editorial work occurred elsewhere.

At most, Defendants have shown that this case has multiple loci of operative facts—New York or Washington, D.C. for some newsgathering and editorial conduct, and Florida for substantial publication, readership, sales, and reputational and economic injury. Like *Gubarev,* that does not justify transfer. The case should remain in this District.

### E.    Alleged witness convenience does not carry Defendants' burden.

Defendants call witness convenience the "most important consideration," D.E. 43 at p. 22, but their showing does not satisfy § 1404(a). The convenience inquiry does not turn on a headcount of people located near New York, nor on every person a journalist interviewed, contacted, or considered during newsgathering. It focuses on material, non-cumulative, non-party trial witnesses whose testimony is necessary and who are likely to be unavailable or materially inconvenienced if the case remains in Plaintiff's chosen forum.

Defendants' argument fails at the threshold because their own Stipulation removes much of the claimed burden. Defendants stipulated that they will

produce witnesses under their care, custody, or control "at a mutually agreeable location," and that documentary evidence is "accessible and can be transmitted electronically." *See* Stipulation ¶¶ 26–29. Those concessions substantially undercut any claim that New York is necessary for witness or evidentiary convenience. The reporters, editors, publishing personnel, and corporate representatives most likely to testify about the core issues—research, drafting, editing, verification, approval, publication, distribution, actual malice, and reliance—are Defendants or witnesses within Defendants' control. Their location carries reduced weight, particularly where Defendants have already agreed to produce them at mutually agreeable locations.

Middle District authority confirms the point. In *Nat'l Trust Ins. Co. v. Pennsylvania Nat'l Mutual Casualty Ins. Co.*, the Court denied transfer where the movant offered only generalized assertions that relevant witnesses were located in the proposed transferee forum, explaining that a "general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be," does not justify transfer. 223 F. Supp. 3d 1236, 1243 (M.D. Fla. 2016). The Court also emphasized that employee-witness convenience receives less weight because parties can compel their own employees' testimony. *Id.* Likewise, *Trinity Christian* explains that "the convenience inquiry focuses on key non-party witnesses," because party and

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

employee witnesses are presumed to be available to testify where needed. 761 F. Supp. 2d at 1327.

Defendants do not make the required showing. They identify a roster of allegedly New York-area sources—Mary Trump, Jim Ledley, Joel Rosenfeld, Michael Bailkin, Peter Goldmark, Barbara Res, Abraham Wallach, Tim Miller, Jeff Zucker, and Alan Blum—but do not establish which of them will actually be called at trial, what specific material testimony each would provide, why that testimony is non-cumulative, or whether any would refuse to testify in this District (some are actually known to travel to Florida frequently). That omission is dispositive. *See Gubarev*, 253 F. Supp. 3d at 1164 ("[T]he party seeking the transfer must support its motion by clearly specifying the key witnesses to be called and particularly stating the significance of their testimony."). A list of possible sources is not a showing that New York is materially more convenient for key non-party trial witnesses.

Nor are reporters' sources automatically "key witnesses" for transfer purposes. Many of the witnesses that Defendants identify appear to possess information, by Defendants' own description, about background events, historic business matters, or contextual subjects. But the central trial issues in this public-figure defamation case will include what Defendants knew, what they believed, what they verified, what they disregarded, how the challenged statements were edited and approved, and how the publications were disseminated. Those issues

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

principally concern Defendants' *own* conduct and state of mind, and the relevant witnesses are largely within Defendants' control.

Defendants' own materials also show that transfer to New York would not solve the supposed witness problem. Some of the individuals connected to the Apprentice-related allegations are not in New York at all. Defendants identify California-based sources, including Mark Burnett, whom Craig sought to interview but did not. Thus, even on Defendants' framing, this is not a case centered in any single alternative forum. In modern litigation, where depositions are routinely conducted remotely and travel burdens are minimized, Defendants' witness convenience argument is a non sequitur. Transferring the case to New York would not eliminate inconvenience. It would simply shift inconvenience away from Defendants and onto Plaintiff and Florida-connected witnesses, which is not authorized by Section 1404(a).

Defendants also ignore Plaintiff-side witnesses and evidence. The case involves substantial publication, readership, sales, reputational injury, and alleged economic harm connected to Florida. TMTG is headquartered in Sarasota. The stipulated facts establish substantial distribution and readership in this District. Witnesses and evidence concerning TMTG, Truth Social, Florida readership, reputational injury, and economic harm are connected to this District at least as much as, and likely more than, Defendants' sources are connected to New York.

At most, Defendants have shown that some potential witnesses may be located closer to New York. However, because Defendants have not identified key unwilling non-party trial witnesses whose testimony would be unavailable in this District, and have stipulated to produce their own witnesses at mutually agreeable locations, the convenience-of-witnesses factor is neutral at best and thus mandates that transfer is denied.

### F.    The location of documents factor is neutral.

The location of documents factor does not favor transfer. Defendants have stipulated that their documentary evidence is accessible and can be transmitted electronically. *See* Stipulation ¶¶ 26-27. That concession is dispositive of this factor. In modern litigation, and especially in a case such as this, where most of the material documents are electronically stored, the physical location of records carries little weight. *Exotropin,* 2025 WL 2306200, at *8 ("Defendants do not explain why producing documentary evidence in Florida would be burdensome, nor do they identify the specific evidence at issue or its location.").

Courts in this District routinely reject transfer arguments based on document location where the movant fails to show any real burden in producing materials electronically. *See Nat'l Trust Ins. Co.*, 223 F. Supp. 3d at 1244 (denying transfer: "the location of relevant documents and other tangible sources is no longer a heavily weighted factor" because "technological advances now

permit the electronic transmittal of documents," particularly where the movant failed to show "any particular difficulty" producing materials in either forum).

Defendants identify no category of documentary evidence that cannot be produced electronically, no physical evidence that must be inspected in New York, and no source of proof that would be materially easier to access in New York than in this District. Nor could they. The relevant materials—editorial communications, drafts, notes, source communications, publication records, subscriber data, online analytics, distribution records, and sales records—are the kinds of materials routinely collected, reviewed, and produced electronically. Defendants' own Stipulation confirms as much. At most, this factor is neutral. It cannot support transfer, much less help Defendants carry their burden.

### G.   Party convenience does not favor transfer.

The convenience of the parties factor does not favor transfer either. Defendants are sophisticated national publishers who intentionally distributed the challenged works across the country, including widely in this District. Whatever marginal inconvenience a Florida trial imposes on Defendants is of their own making: they knowingly, deliberately, and on a large scale delivered defamatory publications into this District. *See* Stipulation ¶¶ 3–6, 13–14, 30–32.

Defendants' argument that President Trump owns property in New York, spends time in Washington, D.C., or has litigated other cases elsewhere[1] does not

---

[1] A litigant's prior willingness to file unrelated suits in other forums is not a § 1404(a) factor. The statutory inquiry concerns "the convenience of parties and witnesses, [and] the

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

show that New York is more convenient for this case. A plaintiff does not forfeit his chosen forum because he has contacts with other places - that would be untenable and unconstitutional. The relevant question is whether a transfer would materially improve convenience overall. It would not. It would simply replace Defendants' claimed inconvenience with Plaintiff's inconvenience and the inconvenience of Florida-based witnesses. *See Mason v. Smithkline Beecham Clinical Labs*, 146 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001) ("Where a transfer 'merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain.'") (quoting *Eye Care International, Inc. v. Underhill,* 119 F.Supp.2d 1313, 1319 (M.D. Fla. 2000)).

### H.    Compulsory process is, at most, neutral.

The compulsory process factor also does not justify transfer. Defendants have not identified any particular witness who is unwilling to testify and whose live testimony is essential. Defendants' argument assumes that witnesses near New York will refuse to appear and that Florida witnesses will not matter. Neither assumption is established. In fact, Defendants' own list of witnesses confirms the opposite. Virtually all the "sources" that they identify are individuals with whom

---

interest of justice" with respect to this case. 28 U.S.C. § 1404(a). Tellingly, the cases Defendants list to support their "comfortable litigating" theory include actions filed in the Northern District of Texas, the Southern District of Iowa, the Southern District of New York, the Northern District of New York, and a 1993 contract case. Under Defendants' theory, transfer to any of those forums would be equally justified. That cannot be, and is not, the law. President Trump's choice to file his Florida defamation claims in his home state of Florida is not undermined by the fact that, as a public figure, he has been a litigant in other forums on unrelated matters. President Trump is entitled to the substantive and procedural law that his home state has chosen for the protection of its citizens' reputations.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

they had cooperative reporting relationships, who agreed to be quoted on the record in published works. These are not adversarial third parties who must be compelled.

This District has compulsory process over Florida-based witnesses, including witnesses connected to TMTG and Florida-based damages, as well as injury issues. The Southern District of New York will likely have process over some New York witnesses. That makes the factor, at most, neutral. It does not support transfer absent a concrete showing that critical testimony will be unavailable once the case remains here, which is not the case.

## I.     Governing law and choice-of-law issues do not favor transfer.

Florida applies the most significant relationship test for choice of law in defamation cases. *Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980). For multistate defamation actions, Florida courts apply the law of the state where the plaintiff is domiciled, because that is where the principal injury to reputation is felt. *See Mancini v. Personalized Air Conditioning & Heating, Inc.*, 702 So. 2d 1376, 1380 (Fla. 4th DCA 1997); *Trump v. Clinton*, 626 F. Supp. 3d 1264, 1296 (S.D. Fla. 2022) (applying Florida's most-significant-relationship analysis in a multistate defamation context). President Trump is a Florida citizen. *See* FAC ¶ 3. Accordingly, Florida defamation law will govern these claims.

Defendants concede that they will "seek application of New York law at a later juncture," but acknowledge that this Court "can apply New York defamation

law, and a New York court can apply Florida law." *See* Motion at 24 & n.12. The premise of Defendants' position is that this factor is neutral. It is not. The Supreme Court has expressly identified "the interest in having the trial of a diversity case in a forum that is at home with the law" as a public-interest factor that weighs *against* transfer. *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 67–68 & n.6 (2013). While a federal court in the Southern District of New York is competent to apply Florida law, Florida federal judges routinely interpret and apply Florida defamation law as a matter of course, and are in the strongest position to navigate that landscape. This factor weighs accordingly against transfer.

### J.    Trial efficiency and the interests of justice favor keeping the case here.

Defendants identify no related action pending in the Southern District of New York, no risk of inconsistent rulings, no consolidation benefit, and no procedural advantage that would make New York a more efficient forum. Their argument rests instead on the same flawed premise that runs through their Motion: that this case belongs in New York simply because Defendants are headquartered there, and some editorial work occurred there. That is not an interest-of-justice argument. It is a preference for Defendants' home forum.

The interests of justice weigh against relocating a Florida defamation action brought by a Florida citizen against publishers who knowingly published, distributed, sold, and made available the challenged works in Florida, including

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

in this District. Defendants ask the Court to treat the publishers' home forum as presumptively superior even though their business model deliberately delivers publications nationwide and, here, delivered the challenged statements to tens of thousands of readers and subscribers in this District. Section 1404(a) does not create a rule that national media defendants may profit from substantial circulation in a plaintiff's home forum while insisting that any resulting defamation case be litigated only where the publisher is headquartered. The opposite is true.

Florida's public interest is substantial. This case concerns reputational harm suffered by a Florida citizen and economic harm connected to TMTG, a Sarasota-headquartered company founded by President Trump and in which he held a majority ownership interest when these claims accrued. Florida's defamation law and statutory damages provisions reflect legislative judgments about the balance between speech protection and reputational redress. That local interest weighs in favor of having a Florida court apply Florida law to a Florida citizen's defamation claims. See *Atl. Marine Constr. Co.*, 571 U.S. at 67–68 & n.6.

Defendants' trial efficiency argument depends entirely on their misguided locus-of-operative-facts analysis. *See* Motion at 25. They claim that New York is the center of the case because some research, drafting, editing, and publishing decisions occurred there. But in a defamation case, the operative facts focus upon

publication, distribution, readership, sales, and injury. Those facts substantially connect this case to Florida. Once the proper publication and injury framework is applied, the efficiency analysis changes: Florida is the locus of operative facts. Florida law will govern. Plaintiff is a Florida citizen who was injured here. Defendants knowingly distributed and sold the challenged publications here.

At most, Defendants have shown that New York may be more convenient for them. But that is insufficient. The interests of justice do not favor transferring a Florida citizen's defamation case from the forum where the publications were substantially disseminated, and the alleged injury was felt to Defendants' preferred home forum. This factor weighs against transfer.

As a final, futile attempt to persuade the Court, Defendants rely on *Fairstein v. Netflix*, 2020 WL 5701767, at *1 (M.D. Fla. Sept. 24, 2020), which is materially distinguishable. Indeed, *Fairstein* is the inverse of this case. In *Fairstein*, the New York-based plaintiff "had no connection to Florida at all." 2020 WL 5701767, at *3. The Court relied heavily on that fact in granting a motion to transfer. *Id.* at *3–4. Here, Plaintiff is a Florida citizen whose flagship media business is headquartered in this District. *Fairstein,* therefore, supports transfer when the plaintiff's connection to the chosen forum is tenuous — not when, as here, President Trump is a citizen in the forum state with substantial District-specific business interests.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

As demonstrated herein, no factor "strongly" favors transfer. On the contrary, the most significant factor—Plaintiff's home state choice—strongly disfavors it. Defendants have not come close to meeting their burden under § 1404(a), which requires them to "clearly outweigh[]" Plaintiff's choice. *See Robinson,* 74 F.3d at 260. The Motion should be denied.

### III. Any Transfer Should Be to the Southern District of Florida.

If the Court concludes that venue is improper in this District, which it should not, or that transfer is otherwise warranted, the appropriate transferee forum is the Southern District of Florida, not the Southern District of New York.

When venue is improper, 28 U.S.C. § 1406(a) permits the Court to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Transfer is generally preferred over dismissal because dismissal may impose "time-consuming and justice-defeating technicalities." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962). The Court is not limited to the transferee forum preferred by Defendants. Section 1406(a) authorizes transfer to "any" district where the action could have been brought. See *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 985 & n.5 (11th Cir. 1982).

The same is true under § 1404(a). If venue is proper but transfer is warranted for convenience and in the interest of justice, the Court selects the transferee forum based on the statutory factors—not Defendants' preference. *See*

*In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). Defendants have no unilateral right to choose New York. The question remains which available forum best serves "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). If the Court finds that the Middle District is not a proper forum, which it is, the proper transferee forum is the Southern District of Florida.

### A.    The Southern District of Florida is a proper transferee forum.

The Southern District of Florida is plainly a proper and available transferee forum. President Trump resides at Mar-a-Lago in Palm Beach, Florida, which is located in the Southern District of Florida. *See* FAC ¶ 3. Defendants themselves have argued that, if this case belongs anywhere in Florida, it belongs in the Southern District of Florida. *See* Motion at 16–17 & n.6. Thus, Defendants cannot plausibly contend that the Southern District of Florida is unavailable or improper.

The Southern District of Florida also eliminates any asserted concern that this case should proceed in the district where President Trump resides. It keeps the case in Florida, where Plaintiff is a citizen, where Florida defamation law will govern, and where Florida's public interest in reputational injury to its citizens is strongest. It also avoids the unnecessary and unjustified step of transferring a Florida-law defamation case to Defendants' preferred home forum in New York.

**B.      The interest of justice analysis strongly favors Florida over New York.**

As argued above, the interest of justice analysis confirms that any transfer should remain within Florida. Defendants' request for New York depends on the same flawed premise that runs through their Motion: that this case is centered only where Defendants researched, drafted, edited, and approved the challenged publications. But the relevant facts for defamation include where the defamatory statements were disseminated, received, read, and allegedly caused reputational injury. If the Court were to transfer this case despite the substantial publication events in this District, which is where it should remain, the interests of justice would still favor a Florida forum.

Accordingly, if the Court determines that transfer is required, which it should not, the proper transferee forum is the Southern District of Florida. Defendants' request to transfer this Florida defamation action to the Southern District of New York should be denied.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order: (i) denying Defendants' Rule 12(b)(3) Motion in its entirety; (ii) denying Defendants' alternative request to transfer this case to the Southern District of New York under § 1404(a); or (iii) in the alternative, transferring this case to the Southern District of Florida should the Court find venue improper in this District; and (iv) granting any further relief the Court deems just and proper.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Dated April 29, 2026

Respectfully submitted,

/s/ *Alejandro Brito*
Alejandro Brito
Florida Bar No. 098442
Jalaine Garcia
Florida Bar No. 58632
Ian Michael Corp
Florida Bar No. 1010943
BRITO, PLLC
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Tel:  305-614-4071
Fax:  305-440-4385
abrito@britopllc.com
jgarcia@britopllc.com
icorp@britopllc.com
apiriou@britopllc.com

Edward Andrew Paltzik
Taylor Dykema PLLC
914 E. 25th Street
Houston, TX 77009
Tel: 516-526-0341
edward@taylordykema.com
(*pro hac vice* admitted)

Daniel Zachary Epstein
Epstein & Co. LLC
8903 Glades Rd.
Ste A8 #2090
Boca Raton, FL 33434
Tel: 202-240-2398
dan@epsteinco.co
(*pro hac vice* admitted)

*Counsel to Plaintiff*
*President Donald J. Trump*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 29, 2026, the foregoing was served

via the Court's CM/ECF System upon:

William J. Schifino, Jr., Esq.
Justin P. Bennett, Esq.
Gregory L. Pierson, Esq.
Gunster, Yoakley & Stewart, P.A.
401 E. Jackson Street
Suite 1500
Tampa, Florida 33602
wschifino@gunster.com
jbennett@gunster.com
gpierson@gunster.com
cwarder@gunster.com
*Counsel for Defendants Penguin
Random House LLC,
Susanne Craig, and Russ Buettner*

George S. LeMieux, Esq.
Eric C. Edison, Esq.
Gunster, Yoakley
& Stewart, P.A.
450 East Las Olas Blvd.
Suite 1400
Fort Lauderdale, Florida 33301
glemieux@gunster.com
eedison@gunster.com
*Counsel for Defendants Penguin
Random House LLC,
Susanne Craig, and Russ Buettner*

Williams & Connolly, LLP
Thomas G. Hentoff, Esq.*
Nicholas G. Gamse, Esq.*
Kimberly Broecker, Esq.*
680 Main Avenue S.W.
Washington, D.C. 20024
thentoff@wc.com
ngamse@wc.com
kbroecker@wc.com
*Counsel for Defendants New York
Times Company,
Susanne Craig, Russ Buettner, and
Peter Baker*

Elizabeth A. McNamara, Esq.* (lead
counsel)
John M. Browning, Esq.*
Alexandra Perloff-Giles, Esq.*
Alexandra M. Settelmayer, Esq.*
Davis Wright Tremaine, LLP
1251 Avenue of the Americas
New York, New York 10020
lizmcnamara@dwt.com
jackbrowning@dwt.com
alexandraperloffgiles@dwt.com
alexandrasettelmayer@dwt.com
*Counsel for Defendants Penguin
Random House LLC,
Susanne Craig, and Russ Buettner*

Thomas & LoCicero, PL
Carol Jean LoCicero, Esq.
James J. McGuire, Esq.
Linda R. Norbut, Esq.
601 South Boulevard
Tampa, FL 33606

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

clocicero@tlolawfirm.com
jmcguire@tlolawfirm.com
lnorbut@tlolawfirm.com
*Counsel for Defendants New York*
*Times Company,*
*Susanne Craig, Russ Buettner, and*
*Peter Baker*

/s/ Alejandro Brito

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 ⏐ Coral Gables, Florida 33134
Telephone: (305) 614-4071