# UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual,<br><br>Plaintiff,<br><br>v.<br><br>NEW YORK TIMES COMPANY, a New York corporation, SUSANNE CRAIG, an individual, RUSS BUETTNER, an individual, PETER BAKER, an individual, and PENGUIN RANDOM HOUSE LLC, a Delaware company,<br><br>Defendants. | Case No.<br>8:25-cv-02487-SDM-NHA |

**JOINT STIPULATED FACTS RELATING TO PLAINTIFF'S MOTION TO CONDUCT VENUE DISCOVERY AND TO STAY BRIEFING ON DEFENDANTS' RULE 12(B)(3) MOTION TO DISMISS**

The list below reflects stipulated facts that the parties have negotiated and agreed upon to supplement the filings in the above-captioned Action. The parties agree that, as set forth in Defendants' Motion to Dismiss or, in the Alternative, to Transfer for Improper Venue and the declarations and exhibits in support thereof, there are other facts relevant to venue that are unchallenged on the motion.[1]

---

[1] The numbers herein related to print and online circulation and Book sales are estimated or approximated in accordance with the methodology agreed to by the parties and are exchanged in accordance with a forthcoming confidentiality agreement between the parties.

EXHIBIT A

1. New York Times Company published, in print and online, the First Article (as defined in Plaintiff's First Amended Complaint, D.E. 9) nationwide, including within the District.

2. New York Times Company published, in print and online, the Second Article (as defined in Plaintiff's First Amended Complaint, D.E. 9) nationwide, including within the District.

3. New York Times Company had approximately 15,000 print subscribers within the District and approximately 700,000 print subscribers nationally at the time the First Article (as defined in Plaintiff's First Amended Complaint, D.E. 9) was published.

4. New York Times Company had approximately 15,000 print subscribers within the District and approximately 700,000 (90% of total) print subscribers nationally at the time the Second Article (as defined in Plaintiff's First Amended Complaint, D.E. 9) was published.

5. New York Times Company had approximately 120,000 online subscribers within the District and  approximately 5.2 million online subscribers nationally at the time the First Article (as defined in Plaintiff's First Amended Complaint, D.E. 9) was published.

6. New York Times Company had approximately 120,000 online subscribers within the District and approximately 5.2 million online subscribers nationally at the time the Second Article (as defined in Plaintiff's First Amended Complaint, D.E. 9) was published.

7. New York Times Company made available for purchase nationally and within the District the print edition of *The Times* dated September 15, 2024, which contained the First Article (as defined in Plaintiff's First Amended Complaint, D.E. 9).

8. New York Times Company made available for purchase nationally and within the District the print edition of *The Times* dated October 23, 2024, which contained the Second Article (as defined in Plaintiff's First Amended Complaint, D.E. 9).

9. Apart from the copies distributed to subscribers, the New York Times Company distributed within the District approximately 2,000 copies of the print edition of *The Times* dated September 15, 2024, which contained the First Article (as defined in Plaintiff's First Amended Complaint, D.E. 9).

10. Apart from the copies distributed to subscribers, the New York Times Company distributed within the District approximately 1,000 copies of the print edition of *The Times* dated October 23, 2024, which contained the Second Article (as defined in Plaintiff's First Amended Complaint, D.E. 9).

11. The First Article (as defined in Plaintiff's First Amended Complaint, D.E. 9) is accessible online by readers nationwide, including within the District.

12. The Second Article (as defined in Plaintiff's First Amended Complaint, D.E. 9) is accessible online by readers nationwide, including within the District.

13. The First Article (as defined in Plaintiff's First Amended Complaint, D.E. 9) had approximately 15,000 unique online viewers within the District and approximately 550,000 unique online viewers nationwide.

14. The Second Article (as defined in Plaintiff's First Amended Complaint, D.E. 9) had approximately 30,000 unique online viewers within the District and 1,000,000 unique online viewers nationwide.

15. Penguin Random House published the Book (as defined in Plaintiff's First Amended Complaint, D.E. 9) nationwide, including within the District.

16. Penguin Random House circulated the Book (as defined in Plaintiff's First Amended Complaint, D.E. 9) for sale nationwide, including within the District.

17. The Book (as defined in Plaintiff's First Amended Complaint, D.E. 9) is available for purchase nationwide, including within the District.

18. As of January 31, 2026, Penguin Random House's reported sales amounted to approximately 93,000 copies of the Book in all formats nationwide, and, as of the week ending February 21, 2026, book seller records in Penguin Random House's possession indicate that consumers had bought approximately 2,200 copies of the Book in or around the District.

19. Defendants Craig and Buettner did not travel to or interview anyone in the District in connection with the statements in the Book that President Trump challenges in this lawsuit. *See* D.E. 9, ¶ 20.

20. Among more than one hundred interviews conducted for the Book, Defendant Craig interviewed one source in the District by telephone about issues unrelated to the statements in the Book that President Trump challenges in this lawsuit. *See* D.E. 9, ¶ 20. Defendant Craig did not travel to the District in connection with her reporting on the Book. Defendant Buettner did not travel to or

interview anyone in the District in connection with the Book, including the statements that President Trump challenges in this lawsuit. *See* D.E. 9, ¶ 20.

21. Defendants Craig and Buettner did not travel to or interview anyone in the District in connection with the First Article, including the statements that President Trump challenges in this lawsuit. *See* D.E. 9, ¶ 21.

22. Defendant Baker did not travel to or interview anyone in the District in connection with the Second Article, including the statements that President Trump challenges in this lawsuit. *See* D.E. 9, ¶ 22.

23. Defendants Craig and Buettner did not travel to the District to promote the Book nor did Penguin Random House engage in promotional, advertising or marketing activities for the Book targeted at the District.

24. Defendants Craig and Buettner did not travel to the District to promote the First Article nor did New York Times Company engage in promotional, advertising or marketing activities for the First Article targeted at the District.

25. Defendants Baker did not travel to the District to promote the Second Article nor did New York Times Company engage in promotional, advertising or marketing activities for the Second Article targeted at the District.

26. New York Times Company's documentary evidence related to this action is accessible and can be transmitted electronically.

27. Penguin Random House's documentary evidence related to this action is accessible and can be transmitted electronically.

28. In the event of deposition discovery, New York Times Company will produce for deposition witnesses under its care, custody, and control at a mutually agreeable location.

29. In the event of deposition discovery, Penguin Random House will produce for deposition witnesses under its care, custody, and control at a mutually agreeable location.

30. Prior to publication, Defendants The New York Times Company, Craig, and Buettner knew that the First Article was scheduled to be published, distributed, and sold nationally, including in the District.

31. Prior to publication, Defendants The New York Times Company and Baker knew that the Second Article was scheduled to be published, distributed, and sold nationally, including in the District.

32. Prior to publication, Defendants Penguin Random House, Craig, and Buettner knew that the Book was scheduled to be published, distributed, and sold nationally, including in the District.