## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Tampa Division

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, | Case No. 25-cv-02487-SDM-NHA |
| Plaintiff, | |
| v. | |
| NEW YORK TIMES COMPANY, a New York corporation, SUSANNE CRAIG, an individual, RUSS BUETTNER, an individual, PETER BAKER, an individual, and PENGUIN RANDOM HOUSE LLC, a Delaware company, | |
| Defendants. | |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Plaintiff, President Donald J. Trump ("President Trump" or "Plaintiff"), by and through his undersigned counsel, hereby files this Memorandum of Law in Opposition to the Motion to Dismiss for Failure to State a Claim and Supporting Memorandum of Law [ECF No. 44] ("Motion to Dismiss") filed by Defendants The New York Times Company ("New York Times"), Susanne Craig ("Craig"), Russ Buettner ("Buettner"), Peter Baker ("Baker"), and Penguin Random House LLC ("PRH") (collectively, "Defendants"). In support, President Trump states as follows:

## SUMMARY OF OPPOSITION

This action arises from a campaign of false and defamatory statements published by Defendants in two articles in *The New York Times*: (a) *The Star-Making Machine That Created 'Donald Trump'* (the "Adaptation Article"), and (b) *For Trump, a Lifetime of Scandals Heads Toward a Moment of Judgment* (the "Survey Article"),[1] and the book *Lucky Loser: How Donald Trump Squandered His Father's Fortune and Created the Illusion of Success* (the "Book"). The Amended Complaint identifies thirty-four specific false statements (the "Challenged Statements")[2] that Defendants published with knowledge of their falsity or with reckless disregard for the truth. *See* ECF No. 9, ¶¶ 20-22. It pleads concrete, factual contradictions to the Challenged Statements, particularized indicia of actual malice as to each Defendant and each publication, as well as economic and reputational damages. Under established Eleventh Circuit law, Plaintiff's allegations survive the threshold imposed by Rule 12(b)(6). Accordingly, Defendants' Motion to Dismiss should be denied for multiple reasons.

---

[1] Plaintiff's Amended Complaint defined the Adaptation Article as the First Article and the Survey Article as the Second Article. *See* ECF No. 9, ¶¶ 1(a) and 1(c). However, Defendants relabeled both. To ease the Court's review, Plaintiff will use Defendants' defined terms.

[2] In the Motion to Dismiss, Defendants categorize the Challenged Statements into five buckets: the "Apprentice Statements," the "Inheritance Statements," the "Business Statements," the "Penchant Statement," and the "Survey Statements." Throughout this Opposition, Plaintiff shall use Defendants' defined terms and, where necessary, refer to the Challenged Statements as a whole.

2

*First*, the Amended Complaint satisfies the element of actual malice because it contains sufficient facts that "fairly, precisely, directly, soberly, and economically" (ECF No. 5, p. 3) allege why Defendants' defamatory statements were published with reckless disregard for their truth. *See* ECF No. 9, ¶¶ 45-64.

*Second*, the Amended Complaint pleads sufficient facts showing that Defendants' defamatory statements are false, directly contradicting the central factual claims about President Trump that are in the Adaptation Article, the Survey Article, and the Book. *See* ECF No. 9, ¶¶ 23-37.

*Third*, the Challenged Statements are not protected opinion. As an example, some of the Challenged Statements pass off as fact false assertions that Plaintiff engaged in "fraudulent tax evasion schemes" and "likely tax fraud," that he "knowingly" appropriated medals he did not earn, and that authorities "found violations of money laundering rules" against him. As evidenced by their plain language, these Challenged Statements, which are all false, are concrete factual assertions—not subjective commentary.

*Fourth*, the Challenged Statements are defamatory because they impugn Plaintiff's professional reputation as a businessman—the very core of his public identity—and are therefore defamatory *per se* under Florida law.

*Finally*, the Amended Complaint pleads special damages with sufficient specificity to support the defamation *per quod* counts: a precipitous decline in

3

TMTG stock price tied to the timing of the publication, a decline in licensing and brand revenues, and reputational harm to ventures whose value depends directly on Plaintiff's personal brand. *See* ECF No. 9, ¶¶ 73–75.

**ARGUMENT**

**I.      Applicable legal standard**.

"The threshold for surviving a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a low one. A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face." *Bell v. Pollock*, 2025 WL 1148677, at *3 (M.D. Fla. Apr. 17, 2025) (citing *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al.,* 711 F.2d 989, 995 (11th Cir. 1983) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Cole-Parmer Instrument Co. v. Prof'l Labs., Inc.*, 568 F. Supp. 3d 1307, 1313 (S.D. Fla. 2021) (quoting *Twombly*, 550 U.S. at 556 and denying motion to dismiss). "A court cannot resolve a factual dispute in adjudicating a Rule 12(b)(6) motion to dismiss." *G.F.B. Enterprises, LLC v. Toyota Motor Sales U.S.A., Inc.*, 2023 WL 2631467, at *2 (S.D. Fla. Mar. 24, 2023).

To state a claim for defamation, a public-figure plaintiff need only "allege facts sufficient to give rise to a reasonable inference" of actual malice—not direct proof. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (collecting

4
**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

cases). Courts in this District routinely deny motions to dismiss where the complaint pleads a plausible inference of actual malice. *See Loomer v. Maher,* 2025 WL 756549, at *4 (M.D. Fla. Jan. 16, 2025) (denying motion to dismiss plaintiff's defamation *per se* claims: "Assuming the truth of these allegations, which the Court must do at this stage, Maher was knowingly reckless because he fabricated what he said..."); *see also Trump Media & Tech. Group Corp. v. WP Co. LLC*, 2025 WL 1615443, at *2 (M.D. Fla. June 6, 2025) (denying motion to dismiss: "The new allegations undermine the Post's argument that actual malice has not been alleged. They substantially undercut the basis the Post might have had for concluding that TMTG actually paid the fee. Equally important, they plausibly allege that the Post's reference to the fee agreement was knowingly false. This, in turn, casts doubt on the Post's subjective state of mind and whether the Post, in fact, believed the fee had been paid as it stated in the article. … As pleaded, TMTG's allegations sufficiently state the existence of actual malice and plead a viable claim for defamation.").

Defamation is also driven by context. "In determining whether an alleged libelous statement is pure opinion, the court must construe the statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication." *Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984). Whether a publication is reasonably capable of conveying a defamatory meaning is generally a jury question, and dismissal is improper where

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

the publication is reasonably susceptible to a defamatory reading. *See Johnson v. Clark*, 484 F. Supp. 2d 1242, 1247 (M.D. Fla. 2007), *aff'd*, 294 Fed. Appx. 502 (11th Cir. 2008) ("Where the court finds that the statement in question is of mixed opinion and fact and reasonably capable of defamatory interpretation, then a jury issue is presented.").

## II.   The Amended Complaint plausibly alleges actual malice.

Defendants' contention that the Amended Complaint fails to plausibly allege actual malice fails for multiple reasons. *First*, the Amended Complaint alleges particularized facts explaining why Defendants published each of the Challenged Statements with reckless disregard. *Second*, the Amended Complaint alleges particularized facts supporting a more than plausible inference that Defendants published each of the Challenged Statements with reckless disregard. *Third*, PRH's blind reliance on Craig and Buettner's reporting, without more research and fact checking, demonstrates that the Book was published with reckless disregard for its falsity. *Fourth*, because the Adaptation Article and Survey Article are premised on the Book and prior biased reporting from the New York Times, respectively, the actual malice is plausibly inferred from the allegations in the Amended Complaint. *Finally*, Defendants' misapplication of established law does not support their argument that Plaintiff has failed to allege actual malice.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

**A. The actual malice pleading standard**.

Actual malice requires a public-figure plaintiff to plead that the challenged statements were published "with knowledge that [they were] false or with reckless disregard of whether [they were] false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). That standard is satisfied by allegations that a reasonable factfinder could infer that the defendants either knew the statements were false or harbored serious doubts about whether they were false at the time of publication. *See St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) ("Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice."); *Michel*, 816 F.3d at 702 ("a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice. Joining that chorus, we hold that the plausibility pleading standard applies to the actual malice standard in defamation proceedings."); *see also Veritas v. Cable News Network, Inc.,* 121 F.4th 1267, 1283 (11th Cir. 2024) ("But at the pleadings stage, Veritas need only allege sufficient facts to permit the inference that CNN published Cabrera's statements with actual malice."). If a reasonable jury could conclude that the plaintiff was defamed, it is improper to dismiss the plaintiff's complaint. *See Trump v. Am. Broad. Companies, Inc.,* 742 F. Supp. 3d 1168, 1182 (S.D. Fla. 2024) (denying motion to dismiss).

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Because a media defendant's state of mind is rarely demonstrated through direct proof, actual malice may be inferred from the circumstances surrounding the publication. *See Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979) (explaining that actual malice can be demonstrated through "any competent evidence, either direct or circumstantial[.]"). A public-figure plaintiff may also establish actual malice by alleging facts that demonstrate a media defendant's "purposeful avoidance of the truth[.]" *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989). Actual malice can also be shown when the "statement was inherently implausible or that there were obvious reasons to doubt the veracity of the informant[.]" *Hunt v. Liberty Lobby*, 720 F.2d 631, 643 (11th Cir. 1983) (collecting cases).

Courts routinely find actual malice plausibly alleged where a complaint identifies reliance on questionable sources, refusal to consult contradictory evidence, and adherence to a preconceived narrative. *See Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (citing *St. Amant*, 390 U.S. at 732: "reliance on anonymous or unreliable sources without further investigation may support an inference of actual malice"); *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 182 (S.D.N.Y. 2020) ("a speaker may be found to have acted with actual malice if a plaintiff can allege that the speaker specifically reviewed a contrary publication previously[.]").

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

**B. Plaintiff has pled particularized facts supporting an inference of actual malice.**

Defendants incorrectly claim that the Amended Complaint contains only "kitchen sink allegations[.]" ECF No. 44, at p. 11. That contention is directly belied by the well-pleaded allegations in the Amended Complaint, which contains at least five concrete categories of conduct that, taken together, more than plausibly support an inference of actual malice.

*First*, Craig and Buettner relied on convicted felon Charles Littlejohn as a source for the Challenged Statements in the Book. ECF No. 9, ¶ 46. The Book itself confirms this: in its Acknowledgments, it thanks "Chaz Littlejohn, an earnest and brilliant young man" who "came to us willing to risk his liberty." *Id.*, ¶ 46, n.4. Given that Littlejohn was charged with a felony on September 29, 2023, and the Book was published on September 17, 2024, Defendants' admission establishes that they knew or should have known that they were relying on a discredited source. *See Harte-Hanks*, 491 U.S. at 688 ("Recklessness may be found where there are obvious reasons to doubt the veracity of the informant[.]").

Although Defendants state that none of the Challenged Statements is "attributed to" the tax returns of President Trump that Littlejohn unlawfully disclosed, that contention is unsubstantiated and strains credulity. *See* ECF No. 44, p. 21 n.7. If Littlejohn did not provide any material information to Craig, Baker, and

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

PRH for purposes of the Book, it would not have been necessary to thank him in the Acknowledgments, specifically for coming to them "willing to risk his liberty." *Id.*, ¶ 46, n.4. Clearly, Littejohn was thanked for stealing and unlawfully disclosing President Trump's tax returns.

*Second*, Defendants failed to interview Mark Burnett, the central figure of *The Apprentice* narrative, despite Burnett's publicly known statements and conduct directly contradicting the Book's thesis. *See* ECF No. 9, ¶¶ 55–56. The Book states **as fact** that Burnett's producers "created a version of Donald Trump … that might have been nonexistent" and that *The Apprentice* was a "second inheritance" implying that President Trump would receive a windfall without providing any value in exchange. *See id.*, ¶¶ 20(b), (q). However, the 50/50 profit-split deal between Burnett and President Trump directly undermines the veracity of these Challenged Statements. *See* ECF No. 9, ¶ 56. Rather than addressing this dichotomy head-on, Defendants' Motion to Dismiss makes only a passing attempt to address this key allegation. *See* ECF No. 44, p. 31, n.12.

Defendants attempt to brush off their journalistic shortcomings by claiming that they "invited" Burnett to be interviewed but that he declined, and that President Trump should have alleged facts explaining what information Burnett would have provided. *See* ECF No. 44-2, p. 4 ("Mr. Burnett did not respond to invitations to be interviewed."); *see also* ECF No. 44, p. 17 ("President Trump fails to identify what

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

contradictory information Burnett would have provided to raise any doubts concerning the depiction provided by all these sources."). However, that is not an accurate characterization of the applicable burden at this stage. President Trump is only required to allege "sufficient facts to permit the inference" that Defendants published the Challenged Statements with actual malice. *See Veritas,* 121 F.4th 1283. "Although failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category." *Harte-Hanks*, 491 U.S. at 692 (citing *St. Amant*, 390 U.S. at 731). That is precisely what transpired here.

*Third*, the Amended Complaint alleges that the New York Times maintains documented internal practices that result in coverage deliberately departing from accepted journalistic standards: writing about Plaintiff in an "antagonistic and negative manner"; resolving "any factual ambiguities or uncertainties" against him; "deliberately ignoring potentially positive and exculpatory sources"; and "publishing negative, false claims … based on exclusively anonymous sources … without verification." ECF No. 9, ¶¶ 50–52. New York Times itself has acknowledged moving "closer than [it has] ever been to being oppositional" in its Trump coverage. *Id.*, ¶ 47. While departures from journalistic standards alone do not establish actual malice, when combined with Defendants' reliance on stolen records and a convicted felon, a refusal to interview Burnett, and adherence to a

11

preconceived narrative, these inferences plausibly allege that Defendants exhibited a reckless disregard for the truth when they published the Challenged Statements. *See Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 156–57 (1967) (explaining that "an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers" may support actual malice).

*Finally*, Defendants chose not to verify certain of the Challenged Statements. Despite Defendants' statements to the contrary, the undisputed facts demonstrate that neither President Trump nor his father has ever been charged with or convicted of any crime related to tax fraud. *See* ECF No. 9, ¶¶ 20(a), 20(f), 20(k), 20(m). Defendants' statements in this regard are demonstrably false and defamatory. Nowhere in the Book does Craig, Buettner, or PRH explain the steps taken to support the false and defamatory statement that President Trump was the beneficiary of fraudulent tax schemes. Given that Littlejohn was the source of these Challenged Statements, Defendants' reliance on him supports the inference that "there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *St. Amant*, 390 U.S. at 732. More importantly, the Amended Complaint plainly alleges that the Challenged Statements are categorically and objectively false.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

**C. Plaintiff sufficiently pled actual malice as to each of the Challenged Statements**.

***The Apprentice Statements (ECF No. 9, ¶¶ 20(b), (n), (o), (q), (u); 21(a), (b), (d), (e), (f), (i))***. These statements falsely assert, among other false, malicious, and defamatory meanings and implications, that the producers of *The Apprentice* "created a version" of Plaintiff that "might have been nonexistent", that *The Apprentice* was a "second inheritance," and that the show made Plaintiff "national and bankable in ways that Trump never did on his own." *See, e.g.,* ECF No. 9, ¶¶ 20(b), 20(q), and 20(u).

Defendants contend that only one allegation in the Amended Complaint contains Plaintiff's allegation that these Challenged Statements were published with actual malice. *See* ECF No. 44, p. 16 (referring to ¶ 55 in the Amended Complaint). However, in addition to paragraph 55, Plaintiff alleges multiple factual allegations that underscore Defendants' actual malice. Indeed, Plaintiff alleges that Burnett sought out President Trump—not the opposite as Defendants state. *See* ECF No. 9, ¶ 30. Plaintiff alleges that his global brand, which has been recognizable since the early 1980s, is what attracted Burnett to partner with him. *See id.,* ¶¶ 31-33. Plaintiff alleges that his departure from *The Apprentice* in 2015 caused the value and recognition of the program to decline precipitously. *See id.,* ¶ 34. Plaintiff alleges that he coined the household term "You're Fired!", which became a cultural

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

phenomenon, and led to multiple derivative works that embodied his name, image, and likeness. *See id*., ¶ 35. Plaintiff further alleges that New York Times' own reporting confirmed that but for his name, image, and likeness, *The Apprentice* would not have achieved the stellar ratings it garnered. *See id*., ¶¶ 36-37. In fact, Defendants' Motion to Dismiss ignores these factual allegations and fails to address them whatsoever. *See* ECF No. 44, § (B)(a). Thus, Defendants' contention that there is only one allegation as to why the Challenged Statements concerning *The Apprentice* were published with actual malice is demonstrably false.

Equally false is Defendants' contention that "the sourcing noted in the Book, which President Trump does not challenge, fully corroborates the reporting that Burnett and other producers 'made Trump a star' on *The Apprentice*[.]" ECF No. 44, p. 17. Indeed, the Motion to Dismiss ignores the well-pleaded allegations in paragraphs 57, 58, and 59 that specifically challenge Defendants' reporting and demonstrate that President Trump was a pop culture icon decades before *The Apprentice* was pitched. *See* ECF No. 9, ¶¶ 57-59.

Defendants' contention that the Book recognizes undisputed facts about President Trump that he is "a 'legendary billionaire' with 'the charisma' to 'dr[a]w eyeballs,' and that Burnett split profits '[f]ifty-fifty' in recognition of President 'Trump's stature'" does not dispel Defendants' reckless disregard for the truth. *See* ECF No. 44, p. 18. Such an argument would only hold up if the information that was

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

contrary to the wrongful conclusions reached by the Challenged Statements was unknown to the reader. But here, Craig, Buettner, and PRH's inclusion of these undisputed facts that are widely known is merely a distraction from their journalistic shortcomings and unlawful conduct.

*The Inheritance Statements (FAC ¶¶ 20(a), (c), (f), (g), (k), (l), (m), (q), (s), (t); 21(c), (g), (i))*. Defendants argue in sweeping fashion that the Amended Complaint contains no allegations of actual malice related to these Challenged Statements. *See* ECF No. 44, p. 19. Once again, however, Defendants overlook the well-pleaded allegations in the Amended Complaint. Here, President Trump alleges that Craig, Buettner, and PRH relied on convicted felon Littlejohn as a primary source for the Book and received stolen tax records from him. *See* ECF No. 9, ¶ 46. Defendants also ignore the correct statement that neither President Trump nor his father has ever been charged with or convicted of tax fraud. *See id*., ¶ 61. Nevertheless, Defendants incorrectly contend that President Trump has failed to allege actual malice as to these Challenged Statements.

For this conclusory argument, Defendants rely on legal gymnastics, stretching general principles of law to try and argue that the Court should conclude that Defendants' characterization of the lawful tax planning and structuring exhibited by President Trump and his father was done with due regard for the truth of the Challenged Statements. *See* ECF No. 44, pp. 19-20. However, the plain language of

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

these Challenged Statements directly undermines those arguments. Despite conceding that the tax planning and structuring exhibited by President Trump and his father was lawful (*see* ECF No. 44, p. 20), Defendants mischaracterize such activities as "fraudulent tax evasion schemes" and "likely tax fraud[.]" *See* ECF No. 9, ¶¶ 20(a), 20(f).

Defendants attempt to whitewash this contradiction by claiming that their false and defamatory statements about President Trump that were published in the Book are justified because they are allegedly a product of the reporting in a 2018 article published by the New York Times. *See* ECF No. 44, p. 19. However, that article is outside the four corners of the Amended Complaint. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (explaining that a court "may consider only the complaint itself and any documents referred to in the complaint which are central to the claims."). Here, the 2018 article is not central to President Trump's claims because that article is not in dispute. *See Purple Innovation, LLC v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule "A"*, 2024 WL 4652095, at *6 (S.D. Fla. Oct. 22, 2024), *report and recommendation adopted sub nom.* 2024 WL 4652096 (S.D. Fla. Nov. 1, 2024) (declining to consider documents or information outside the four corners of the complaint: "A document is 'central' to a claim when its contents are at 'the very heart' of the dispute.") (quoting *Healthier Choices Mgmt. Corp. v. Philip*

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

*Morris USA, Inc.*, 65 F.4th 667, 676 (Fed. Cir. 2023)). Consequently, the Court should not consider it to adjudicate Defendants' Motion to Dismiss.

Finally, Defendants contend that the Amended Complaint "does not identify a single fact suggesting Buettner or Craig disregarded anything in the tax records they had that conclusively 'prove[s] or disprove[s]' the legality of President Trump's inheritance." ECF No. 44, p. 21. However, the plain language of the Challenged Statements that wrongly describe President Trump as a beneficiary of "fraudulent tax evasion schemes," "a likely tax fraud that went unnoticed," a "sham layer to Fred [Trump's] business, one designed to evade the gift and estate taxes," and a beneficiary of "devices created to siphon off his father's wealth outside the gift and estate tax system" render Defendants' argument unworkable. Defendants' reliance on their alleged due diligence to discredit any allegation that these Challenged Statements were published with actual malice amounts to nothing more than a self-serving and pretextual justification to defame President Trump.

***The Business Statements (FAC ¶¶ 20(c), (e), (h), (i), (j), (m), (p), (r), (s), (t), (v); 21(h))***. Defendants' false "litany of failure" thesis cherry-picks favorable quotes from the Book that are not at issue and ignores the well-pleaded allegations in the Amended Complaint that demonstrate Craig, Buettner, and PRH's actual malice. *See* ECF No. 44, pp. 21-22. Indeed, President Trump asserts that his demonstrated success as a pop culture icon and as a best-selling author—on the New York Times'

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

best seller list—unequivocally demonstrates his business success. *See* ECF No. 9, ¶¶ 57-60. The Book's intentional downplaying of these undisputed facts supports the inference that Craig, Buettner, and PRH exhibited a reckless disregard for the truth.

***The Penchant Statement (FAC ¶ 20(d))***. The false claim that Plaintiff is "drawn to men who displayed a penchant for violence" is a sweeping psychological characterization attempted to be supported only by isolated anecdotes about a specific classmate and one alleged *ad hoc* incident. *See* ECF No. 44, pp. 22-23. That mismatch is itself probative of reckless disregard: a publisher who makes a sweeping factual assertion about a plaintiff's general disposition while relying on thin, anecdotal support, as well as ignoring the breadth of contrary evidence about decades of professional and personal associations, plausibly acts with serious doubt as to the broader characterization. *See* ECF No. 9, ¶ 54.

### D. PRH's blind reliance on Craig and Buettner demonstrates that the Book was published with actual malice.

PRH's blind reliance on Craig and Buettner's reporting is *prima facie* evidence of PRH's actual malice behind its decision to publish the Book. As Plaintiff alleges in the Amended Complaint, the Book credits its findings to Craig and Buettner's reporting, which included substantial reliance on Littlejohn—a convicted felon. *See* ECF No. 9, ¶ 46. Moreover, the reporting that the Book relies so heavily

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

on was subject to the New York Times' anti-Trump policies, procedures, and biased reporting that Plaintiff details throughout the Amended Complaint. *See* ECF No. 9, ¶¶ 50-54. Because these policies and procedures governed Craig and Buettner's reporting throughout the Book, PRH's decision to publish the Challenged Statements in the Book is tainted with actual malice.

**E. The Adaptation Article was published with actual malice**.

The actual-malice analysis as to the Adaptation Article tracks the Book. *See supra* §§ (II)(B)-(D). Defendants concede that the Adaptation Article "was adapted from the chapters of the Book" and "based on the same underlying reporting." ECF No. 44, p. 6. The same indicia of actual malice that infect the Book apply to the Adaptation Article—reliance on Littlejohn stolen records, refusal to interview Burnett, internal New York Times practices designed to slant Trump coverage, the intentional omission that neither President Trump nor his father have ever been charged with or convicted of any crime concerning tax fraud, and ignored undisputed material facts about President Trump's business success and popularity as a pop culture icon. *See supra* §§ (II)(B)-(D). Accordingly, Plaintiff incorporates by reference herein the arguments in sections (II)(B)-(D) of this Opposition to explain why the Challenged Statements in the Adaptation Article were published with actual malice.

**F. The Survey Article was published with actual malice**.

As to the Survey Article, which was authored by Baker and published by the New York Times, Plaintiff plausibly alleges that Baker exhibited reckless disregard for the truth of the Challenged Statements therein. Defendants focus primarily on the *prima facie* evidence that Baker is biased against President Trump. *See* ECF No. 9, ¶ 48; *see also Lando*, 441 U.S. at 164 n.12 ("The existence of actual malice may be shown in many ways. As a general rule, any competent evidence, either direct or circumstantial, can be resorted to, and all the relevant circumstances surrounding the transaction may be shown[.]"). However, like Craig and Buettner, Baker was also subject to the New York Times' anti-Trump policies at the time that the Survey Article was published. *See* ECF No. 9, ¶¶ 50-54. Defendants' Motion to Dismiss ignores these well-pleaded allegations. *See* ECF No. 44, pp. 26-27.

Instead, Defendants broadly contend that because certain information in the Survey Article was allegedly "widely reported," the Challenged Statements in the Survey Article could not have been published with actual malice. *See id.*, p. 27. However, the Motion to Dismiss identifies only anecdotal references to purported, unverified sources that fail to meet the standard in the cases relied on by Baker and the New York Times. *See id.*, pp. 27-28. Worse, the Motion to Dismiss attempts to shoehorn a request for judicial notice by asking the Court to consider reference to a 2020 article from ABC News that was not included within the Book, is not central

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

to Plaintiff's claims, and is beyond the four corners of the Amended Complaint. Such a request is improper. *See supra Purple Innovation,* 2024 WL 4652095, at \*6, *report and recommendation adopted sub nom.* 2024 WL 4652096.

**G. Defendants' misapplication of established law does not cure the deficiencies in their actual malice arguments**.

The cases on which Defendants principally rely upon are factually and procedurally inapplicable. *Michel*, 816 F.3d at 702–05, *Reed v. Chamblee*, 2025 WL 1874638 (11th Cir. July 8, 2025), and *Jacoby v. CNN*, 2021 WL 5858569, at \*5 (11th Cir. Dec. 10, 2021) affirmed dismissal of defamation complaints because they alleged only conclusory allegations that did not support an inference of actual malice. *Berisha v. Lawson*, 973 F.3d 1304, 1313 (11th Cir. 2020), which was decided on summary judgment, concerned the extreme departure from journalistic ethics.

Plaintiff's Amended Complaint pleads much more than conclusory allegations—it contains well-pleaded allegations that: (a) Defendants relied on stolen documents and information from convicted felon Littlejohn; (b) Defendants refused to interview Burnett, whose public conduct contradicted the narrative in the Challenged Statements; (c) Craig, Buettner, and Baker's reporting—all of which were the source of the newsgathering for the Book, Adaptation Article, and the Survey Article—were subject to documented anti-Trump policies harboring bias against him; (d) the intentional omission that neither President Trump nor his father

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

have ever been charged with or convicted of any crime concerning tax fraud; and (e) omission of the undisputed facts regarding President Trump's demonstrated business success and global brand recognition as a pop culture icon. Taken together, these allegations support a plausible inference that the Challenged Statements were published with actual malice. *See supra* §§ (II)(B)-(D).

**III.    The Challenged Statements in the Book are actionable**.

Defendants' arguments regarding the Challenged Statements in the Book are unavailing because the statements are false, they do not constitute an expression of opinion, and they are capable of defamatory meaning.

**A. The Challenged Statements in the Book are false**.

Defendants' falsity argument rests on the proposition that Plaintiff must "identify how" each statement is false on a statement-by-statement basis. *See* ECF No. 44, pp. 30-31. The Complaint does precisely that. The Amended Complaint quotes the Challenged Statements verbatim (*see* ECF No. 9, ¶¶ 20–22), pleads an affirmative factual narrative directly contradicting the central theses advanced by the Book, the Adaptation Article, and the Survey Article demonstrating that President Trump is a renowned businessman, pop-culture icon, and best-selling author (*see* ECF No. 9, ¶¶ 23–29, 57-60), that Burnett specifically sought out President Trump for *The Apprentice* (*see* ECF No. 9, ¶¶ 30–37), and identifies specific factual contradictions going to the gist of each statement (*see* ECF No. 9, ¶¶ 55–61).

22

As to the *Apprentice Statements*, Defendants' argument that the Amended Complaint does not dispute "the skill of *The Apprentice* producers," the office descriptions, or the dollar figures that Plaintiff earned misses the mark. *See* ECF No. 44, p. 31. The Amended Complaint pleads facts that directly contradict the Challenged Statements in the Book that the producers "created a version of Donald Trump" that "might have been nonexistent" (*see* ECF No. 9, ¶ 20(b)), that *The Apprentice* was a "second inheritance" requiring no work (*see* ECF No. 9, ¶ 20(q)), and that the show made Plaintiff "national and bankable in ways that Trump never did on his own" (*see* ECF No. 9, ¶ 20(u)).

Specifically, President Trump pleaded facts that Burnett "co-created" the show with him (ECF No. 9, ¶ 30); that Burnett sought Plaintiff out because he was "a globally celebrated businessman" possessing "unique charisma" (ECF No. 9, ¶ 31); that *The Apprentice* "instantly became a top-rated television show" "[b]ecause of President Trump" (ECF No. 9, ¶ 34); and that the show was "a monumental success because of President Trump" (ECF No. 9, ¶ 36). Burnett's 50/50 profit split (*see* ECF No. 9, ¶ 56)—which the Book itself reports—directly contradicts the Book's thesis that Plaintiff was a passive beneficiary of producer-created artifice. *See supra Toyota Motor Sales U.S.A., Inc.*, 2023 WL 2631467, at *2.

As to the *Inheritance Statements*, the Amended Complaint does not challenge the dollar figures in the abstract. It specifically challenges the Book's factual

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

characterizations of those figures: that Plaintiff received them through "fraudulent tax evasion schemes" (ECF No. 9, ¶ 20(a)), that they constituted "likely tax fraud" (ECF No. 9, ¶ 20(f)), that they were "designed to evade the gift and estate taxes" (ECF No. 9, ¶ 20(k)), and that Plaintiff "did not earn most of those good things" (ECF No. 9, ¶ 20(t)). Those are concrete and false claims of facts about specific allegedly criminal conduct. The Amended Complaint pleads facts directly contradicting them: neither Plaintiff nor his father has ever been "investigated for, charged with, or convicted of tax fraud" (ECF No. 9, ¶ 61), and Plaintiff's independent business activities have generated "hundreds of millions of dollars in revenue" (ECF No. 9, ¶¶ 28–29, 34).

As to the *Business Statements*, Defendants once again conflate disclosed historical details (e.g., the Plaza Hotel price, specific bankruptcy events) with the Book's broader false, malicious, and defamatory assertions of fact: that Plaintiff lacks genuine business skill, that his commercial success is "illus[ory]," and that "there is no evidence that in fifty years of labor [he] added to his lucky fortunes." *See* ECF No. 9, ¶¶ 20(t), (v). The Amended Complaint pleads facts contradicting those false, malicious, and defamatory assertions, including Plaintiff's longstanding national recognition as a businessman (ECF No. 9, ¶ 23), stewardship of the Trump Organization (ECF No. 9, ¶ 24), the development of a "long list of projects and brands" that succeeded due to his "unique brand" (ECF No. 9, ¶ 25), bestselling

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

business books (ECF No. 9, ¶ 26), the success of *The Apprentice*, generating hundreds of millions of dollars in revenue (ECF No. 9, ¶ 34), his cultural prominence having appeared in dozens of movies and television shows before *The Apprentice* (ECF No. 9, ¶¶ 57-59), and his stature as a best-selling author (ECF No. 9, ¶ 60).

As to the *Penchant Statement*, the Amended Complaint alleges that President Trump has an established reputation for high standards, excellence, and consumer satisfaction. This reputation, and the traits required to establish and maintain it, directly contradict the *Penchant Statement*. *Compare* ECF No. 9, ¶ 20(d); *with id.*, ¶ 29.

### B. The Challenged Statements in the Book are not pure opinion.

Defendants argue that fourteen Book Statements (ECF No. 9, ¶¶ 20(b)–(m), (q), (u)) are non-actionable opinions. *See* ECF No. 44, p. 34. They are not. "Both pure opinions and mixed expressions of opinion are actionable if the facts underlying them are false or inaccurately represented." *Pollock*, 2025 WL 1148677, at *7 (citing Zimmerman v. Buttigieg, 521 F. Supp. 3d 1197, 1213 (M.D. Fla. 2021)); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990) ("even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact."). The dispositive inquiry is whether the statement is "sufficiently factual to be susceptible of being proved true or false." *Id.* at 21. The

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Eleventh Circuit applies that principle rigorously. *See supra Turner,* 879 F.3d at 1262.

Applying these principles, the Challenged Statements are not opinion. The Book's wrongful descriptions of "fraudulent tax evasion schemes," "likely tax fraud," and conduct "designed to evade" taxes (ECF No. 9, ¶¶ 20(a), (f), (k)) are concrete factual assertions about specific allegedly criminal conduct—susceptible to proof or disproof through reference to investigatory and prosecutorial records, IRS audits, and the like. *See Milkovich*, 497 U.S. at 21.

The same is true of the false statements describing Plaintiff's success as "mostly luck" or a "lucky windfall," and those wrongly asserting that the producers had to "invent a version of Donald Trump that did not actually exist." ECF No. 9, ¶¶ 20(b); 21(d), (e), (f), (i). These are not abstract value judgments. They are causal and false claims about what produced Plaintiff's success and whether his public persona reflects reality—propositions capable of being tested against objective evidence. *See Milkovich*, 497 U.S. at 21-22.

Defendants rely on *Turner*, 879 F.3d at 1264, and *Trump v. Cable News Network, Inc.*, 2025 WL 3213203, at *1 (11th Cir. Nov. 18, 2025) for the proposition that their subjective assessment of President Trump is not readily capable of being proven false. *See* ECF No. 44, p. 35-36. However, this argument is directly contradicted by the plain language of the Challenged Statements in the Book—many

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

of which demonstrate Defendants' subjective bias and contempt for President Trump by passing off as fact the false, malicious, and defamatory allegation that he benefitted from fraudulent tax schemes (ECF No. 9, ¶¶ 20(a), 20(f), 20(k), 20(m)), that the less involved he is in his businesses, the more successful he becomes (ECF No. 9, ¶ 20(c)), and that he did not engage in any deliberate planning or analyze risk associated with his investments or businesses (ECF No. 9, ¶¶ 20(e), 20(i), 20(j), 20(p)).

**C. The Challenged Statements in the Book are capable of defamatory meaning**.

"A publication rises to the level of defamation *per se* 'if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession.'" *Loomer*, 2025 WL 756549, at *3.

Here, nearly all the Challenged Statements in the Book constitute defamation *per se*. Several of the Challenged Statements falsely charge President Trump with committing tax fraud. *See* ECF No. 9, ¶¶ 20(a), 20(f), 20(k), 20(m). Several of the Challenged Statements tend to subject President Trump to hatred, distrust, ridicule, contempt, or disgrace because they cast false aspersions on his character and as someone who has misrepresented his abilities and achievements. *See id.*, ¶¶ 20(d), 20(g), 20(s), 20(t), 20(u), 20(v). Several of the Challenged Statements tend to injure

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

President Trump's trade or profession because they falsely portray him as lacking genuine business skill and as someone whose public persona is a fabrication. *See id.*, ¶¶ 20(b), 20(c), 20(e), 20(h), 20(i), 20(j), 20(l), 20(o), 20(p), 20(q), 20(r). Because these Challenged Statements are readily capable of being proven false with objective evidence, Defendants cannot re-label them as opinions to avoid liability. *See Milkovich v. Lorain Journal Co.*, 497 U.S. at 21. The Challenged Statements are false, malicious, and defamatory assertions of facts.

## IV.   The Challenged Statements in the Adaptation Article are actionable.

Defendants' arguments regarding the Challenged Statements in the Adaptation Article are defective for the same reasons as the Challenged Statements in the Book. As to why the Challenged Statements in the Adaptation Article are false and cannot be labeled as opinions, Plaintiff reincorporates by reference herein the arguments raised in section (III)(A)-(B).

Moreover, contrary to Defendants' contentions, each of the Challenged Statements in the Adaptation Article is defamatory. Several of the Challenged Statements tend to subject President Trump to hatred, distrust, ridicule, contempt, or disgrace because they falsely describe him as a filthy, self-absorbed individual who fabricated his success by relying on the efforts of others and betrayed his family for his own pecuniary benefit. *See* ECF No. 9, ¶¶ 21(a), 21(b), 21(c), 21(d), 21(e), 21(f), 21(g). The remaining Challenged Statements injure President Trump's trade or

profession because they directly undermine his established business success and acumen, and falsely imply that his success is a byproduct of sheer luck and not a result of his painstaking efforts. *See id.*, ¶¶ 21(h), 21(i).

## V.    The Challenged Statements in the Survey Article are false and non-privileged.

*The Challenged Statements in the Survey Article are false*. The first Challenged Statement from the Survey Article falsely alleges that Plaintiff "knowingly borrowed a friend's dress jacket with a dozen medals attached … in effect appropriating medals that he did not win himself." ECF No. 9, ¶ 22(a). The second Challenged Statement from the Survey Article falsely alleges that President Trump cheated to get into college by paying someone to take the SAT for him. *See id.*, ¶ 22(b). The third Challenged Statement from the Survey Article falsely alleges that President Trump was deemed to have violated money laundering laws and avoided compliance with stock trading regulations. *See id.*, ¶ 22(c).

President Trump has pleaded facts that directly undermine and disprove each of these false statements, confirming that they are false. *See id.*, ¶ 29 ("President Trump prides himself on having a reputation for high standards, excellence, and consumer satisfaction; statements falsely casting aspersions on President Trump's reputation as a businessman or the Trump Organization's legitimacy therefore cause

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

direct and easily foreseeable harm to these businesses' value, revenue, and profitability.").

***The Challenged Statements in the Survey Article are not privileged***. Defendants claim that the third Challenged Statement in the Survey Article is protected by Florida's fair report privilege. *See* ECF No. 44, p. 43. However, that privilege protects only fair and accurate reports of an official proceeding or document. *See Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 502 (Fla. 3d DCA 1993). The Survey Article does not explicitly or implicitly mention any official document or proceeding concerning President Trump, his companies, or FinCEN. Thus, Defendants cannot avail themselves of the fair report privilege.

## VI.   Plaintiff adequately pleaded special damages.

Defendants argue Counts II, IV, and VI must be dismissed for failure to plead special damages. See ECF No. 44, § IV. That argument is wrong. Indeed, President Trump alleges that Defendants' Challenged Statements caused "a precipitous decline in the stock price of TMTG, significantly injuring the President given his ownership stake." *See* ECF No. 9, ¶ 73. President Trump also alleges that the Challenged Statements caused "injury to President Trump's business and personal reputation," and "massive economic damage to his brand value and significant damage and injury to his future financial prospects." *Id*., ¶ 74. President Trump further alleges that his "damages take the form of direct harm to his professional and

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

occupational interests, including, without limitation, the value of his brand, properties, and businesses, and severe diminishment and tarnishing of his reputation as a businessman in the eyes of the American public and around the world." *Id.*, ¶ 75.

Altogether, these are sufficient factual allegations to substantiate a claim for defamation *per quod. See Show Plus Promotions, LLC v. Valley Nat'l Bancorp.,* 2024 WL 3745213, at \*9 (S.D. Fla. May 13, 2024) (finding allegations of lost profits and loss of reputation sufficient to survive dismissal), *report and recommendation adopted,* 2024 WL 3791896 (S.D. Fla. Aug. 13, 2024); *see also Yergey v. Brinker Florida, Inc.,* 2020 WL 10817751, at \*2 (M.D. Fla. 2020) (stating that plaintiff need only allege the types of special damages he or she seeks, such as "lost support and services," in order to put the defendant on notice of the claim).

Defendants' reliance on *Braun v. Buyers Choice Mortg. Corp.*, 851 So. 2d 199, 203 (Fla. 4th DCA 2003), is inapposite because it concerned derivative claims for breach of fiduciary duty against the company in which he was a shareholder of. Here, Plaintiff's damages theory concerning the decline in TMTG's stock price is alleged as a market indicator of that personal brand harm.

Because President Trump's damages are identifiable and computable in money, he has stated a claim under Counts II, IV, and VI of the Amended Complaint.

**VII.    Request for leave to amend**.

While Plaintiff maintains his position that Defendants' Motion to Dismiss should be denied, in the event the Court is inclined to consider the Complaint to be somehow deficient, Plaintiff, in the alternative, respectfully requests that the Court grant him leave to amend his Complaint to cure any such deficiencies.

"[A] district court's discretion to dismiss a complaint without leave to amend is 'severely restrict[ed]' by Fed. R. Civ. P. 15(a), which directs that leave to amend 'shall be freely given when justice so requires.'" *Thomas v. Town of Davie,* 847 F.2d 771, 773 (11th Cir. 1988). "In the absence of any apparent or declared reason – such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be freely given." *Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1270 (11th Cir. 2006) (internal quotation and citations omitted). None of these reasons are apparent here.

Plaintiff submits that the substance of his amendment, should the Court be inclined to grant Defendants' Motion to Dismiss, which should not happen, would include additional facts to demonstrate why the Challenged Statements are not substantially true, along with additional facts and innuendo by Defendants to show why the Challenged Statements are defamatory, and additional evidence of actual

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

malice for each Defendant. Accordingly, Plaintiff's request should be granted. *See, e.g., Wallis v. Cueto*, 2017 WL 6388914, at *7 (S.D. Fla. Aug. 9, 2017) (granting Plaintiff's request for leave to amend defamation claim following dismissal of claim); *Jetaire Aerospace, LLC v. AerSale, Inc.,* 2024 WL 193518, *3 (S.D. Fla. Apr. 17, 2024); *Log Creek, LLC v. Kessler,* 717 F. Supp. 2d 1239, 1251 (N.D. Fla. 2010); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 707 (11th Cir. 2016) (granting plaintiff's motion for leave to amend in a defamation action); *Aflalo v. Weiner*, 2018 WL 3235529, at *5 (S.D. Fla. July 2, 2018) (granting leave to amend in a defamation action); *XTec, Inc. v. Hembree Consulting Services, Inc.*, 2014 WL 12729173, at *4 (S.D. Fla. Aug. 1, 2014) (dismissing defamation counterclaim with leave to amend).

## CONCLUSION

WHEREFORE, Plaintiff President Donald J. Trump respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety and award any other relief the Court deems proper, or, if it chooses to grant Defendants' Motion to Dismiss, which should not occur, do so without prejudice and allow Plaintiff leave to amend the Amended Complaint and award any other relief the Court deems proper.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Dated April 29, 2026                              Respectfully submitted,

                                                  */s/ Alejandro Brito*
                                                  Alejandro Brito
                                                  Florida Bar No. 098442
                                                  Jalaine Garcia
                                                  Florida Bar No. 58632
                                                  Ian Michael Corp
                                                  Florida Bar No. 1010943
                                                  BRITO, PLLC
                                                  2121 Ponce de Leon Boulevard
                                                  Suite 650
                                                  Coral Gables, FL 33134
                                                  Tel:  305-614-4071
                                                  Fax:  305-440-4385
                                                  abrito@britopllc.com
                                                  jgarcia@britopllc.com
                                                  icorp@britopllc.com
                                                  apiriou@britopllc.com

                                                  Edward Andrew Paltzik
                                                  Taylor Dykema PLLC
                                                  914 E. 25th Street
                                                  Houston, TX 77009
                                                  Tel: 516-526-0341
                                                  edward@taylordykema.com
                                                  (*pro hac vice* admitted)

                                                  Daniel Zachary Epstein
                                                  Epstein & Co. LLC
                                                  8903 Glades Rd
                                                  Ste A8 #2090
                                                  Boca Raton, FL 33434
                                                  Tel: 202-240-2398
                                                  dan@epsteinco.co
                                                  (*pro hac vice* admitted)

                                                  *Counsel to Plaintiff*
                                                  *President Donald J. Trump*

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 29, 2026, the foregoing was served via

the Court's CM/ECF System upon:

William J. Schifino, Jr., Esq.
Justin P. Bennett, Esq.
Gregory L. Pierson, Esq.
Gunster, Yoakley & Stewart, P.A.
401 E. Jackson Street
Suite 1500
Tampa, Florida 33602
wschifino@gunster.com
jbennett@gunster.com
gpierson@gunster.com
cwarder@gunster.com
*Counsel for Defendants Penguin
Random House LLC,
Susanne Craig, and Russ Buettner*

George S. LeMieux, Esq.
Eric C. Edison, Esq.
Gunster, Yoakley
& Stewart, P.A.
450 East Las Olas Blvd.
Suite 1400
Fort Lauderdale, Florida 33301
glemieux@gunster.com
eedison@gunster.com
*Counsel for Defendants Penguin
Random House LLC,
Susanne Craig, and Russ Buettner*

Williams & Connolly, LLP
Thomas G. Hentoff, Esq.*
Nicholas G. Gamse, Esq.*
Kimberly Broecker, Esq.*
680 Main Avenue S.W.
Washington, D.C. 20024
thentoff@wc.com
ngamse@wc.com
kbroecker@wc.com
*Counsel for Defendants New York
Times Company,
Susanne Craig, Russ Buettner, and
Peter Baker*

Elizabeth A. McNamara, Esq.* (lead
counsel)
John M. Browning, Esq.*
Alexandra Perloff-Giles, Esq.*
Alexandra M. Settelmayer, Esq.*
Davis Wright Tremaine, LLP
1251 Avenue of the Americas
New York, New York 10020
lizmcnamara@dwt.com
jackbrowning@dwt.com
alexandraperloffgiles@dwt.com
alexandrasettelmayer@dwt.com
*Counsel for Defendants Penguin
Random House LLC,
Susanne Craig, and Russ Buettner*

Thomas & LoCicero, PL
Carol Jean LoCicero, Esq.
James J. McGuire, Esq.

35

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Linda R. Norbut, Esq.
601 South Boulevard
Tampa, FL 33606
clocicero@tlolawfirm.com
jmcguire@tlolawfirm.com
lnorbut@tlolawfirm.com
*Counsel for Defendants New York
Times Company,
Susanne Craig, Russ Buettner, and
Peter Baker*

          */s/ Alejandro Brito*

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071