UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PRESIDENT DONALD J. TRUMP,
an individual,

     Plaintiff,

v.                                  CASE NO. 8:25-cv-02487-SDM-NHA

NEW YORK TIMES COMPANY, et al.,

     Defendants.

_____/

## **ORDER**

A public figure, perhaps the world's most prominent public figure, whose actions and remarks routinely generate immediate global news coverage, sues a newspaper, perhaps the world's most prominent English-language newspaper, along with the world's largest trade book publisher and three authors. The plaintiff initiates in the Middle District of Florida an action for defamation arising from two articles and a book, researched, written, and edited in New York but published nationwide and abroad, including in the Middle District of Florida. The plaintiff, who resides in the Southern District of Florida but maintains a business presence in the Middle District of Florida, alleges that publication of the allegedly defamatory statements in the Middle District of Florida caused reputational and economic injury in the Middle District of Florida.

The defendants move (Doc. 43) both to dismiss the amended complaint for improper venue and, alternatively, to transfer the action to the Southern District of New York.  The plaintiff responds (Doc. 80) in opposition.

Under 28 U.S.C. § 1406(a), "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  The plaintiff argues that the Middle District of Florida is a proper venue because the defendants published the allegedly defamatory statements here, because the plaintiff sustained reputational and economic injury here, and because the plaintiff has a business here.  The defendants argue that the Middle District of Florida is not a proper venue because all the "relevant journalistic activities" — newsgathering, research, writing, editing, and the decision to publish the allegedly defamatory statements — occurred in the Southern District of New York.

## I.    Venue Under 28 U.S.C. § 1391(a)(2)

Under 28 U.S.C. § 1391(a)(2), venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  Section 1391(a)(2) "contemplates some cases in which venue will be proper in two or more districts," and "a plaintiff does not have to select the venue with the *most* substantial nexus to the dispute, as long as [the plaintiff] chooses a venue where a substantial part of the events giving rise to the claim occurred."  *Morgan v. N. MS Med. Ctr., Inc.*, 403 F. Supp. 2d 1115 (S.D. Ala. 2005), *aff'd sub nom. Morgan v. N. Mississippi Med. Ctr., Inc.*, 225 F. Appx. 828 (11th Cir. 2007) (emphasis in original).  *Jenkins Brick*

- 2 -

*Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003) (Tjoflat, J.), explains that when applying Section 1391(a)(2), "only the events that directly give rise to a claim are relevant" and "only those locations hosting a 'substantial part' of the events are to be considered." *Jenkins Brick*, 321 F.3d at 1371.

### a. *Jenkins Brick Co. v. Bremer*

Jenkins Brick Company, an Alabama-based employer, hired John Bremer to sell brick and block throughout a fifty-mile radius around Savannah, Georgia. 321 F.3d at 1368. The parties entered a non-compete agreement prohibiting Bremer for two years after the conclusion of Bremer's employment from competing with Jenkins Brick Company within a fifty-mile radius of any Jenkins Brick Company office or plant. 321 F.3d at 1368. The non-compete agreement selected Alabama law as the governing law. 321 F.3d at 1368. In February 2001, Bremer voluntarily resigned from Jenkins Brick Company and immediately joined a competitor in Savannah, Georgia. Jenkins Brick Company initiated in the Middle District of Alabama an action for breach of contract. 321 F.3d at 1368. The Alabama district court, "implicitly holding that venue was proper in Alabama and explicitly holding that the Georgia court would be a more convenient forum," transferred the case to the Southern District of Georgia. 321 F.3d at 1368–70. The Georgia district court, on a motion for summary judgment and to determine whether Alabama or Georgia's substantive law applied, held that the Middle District of Alabama was not a proper venue. 321 F.3d at 1369–70. Jenkins Brick Company appealed the summary judgment. 321 F.3d at 1370.

Judge Tjoflat explains that until 1990, Section 1391(a)(2) provided for venue only in the single district "in which the claim arose." *Jenkins Brick*, 321 F.3d at 1371. But Congress believed that "the old phrase was 'litigation breeding,' partly because it did not cover the situation 'in which substantial parts of the underlying events have occurred in several districts.'" *Jenkins Brick*, 321 F.3d at 1371 (citing H.R. Report of the Committee on the Judiciary, Rep. No. 101–734, at 23 (1990)). "The old language was problematic because it was oftentimes difficult to pinpoint the single district in which a 'claim arose.'" *Jenkins Brick*, 321 F.3d at 1371. In 1990, Congress amended Section 1391(a)(2) to provide for proper venue in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Jenkins Brick*, 321 F.3d at 1371. The new language "thus contemplates some cases in which venue will be proper in two or more districts." *Jenkins Brick*, 321 F.3d at 1371.

To explain the analytical framework for the new language of Section 1391(a)(2), Judge Tjoflat offers, as an exemplar, *Woodke v. Dahm,* 70 F.3d 983 (8th Cir. 1995), in which a designer and seller of semi-trailers in Iowa initiated in the Northern District of Iowa an action under the Lanham Act against his former business partners for the "reverse passing off" of trailers in Florida. *Jenkins Brick*, 321 F.3d at 1371–72; *Woodke*, 70 F.3d at 984–85. *Woodke* explains that "[t]he place where the alleged passing off occurred . . . provides an obviously correct venue . . . . Mr. Woodke, however, seems to have no evidence of any advertising or sales of the infringing advertisement in the Northern District of Iowa." 70 F.3d at 985. *Woodke* rejects the plaintiff's argument that because the parties executed a dealership

- 4 -

agreement in the Northern District of Iowa and because the defendants manufactured the infringing trailers in the Northern District of Iowa, the Northern District of Iowa is a proper venue. 70 F.3d at 985–86. *Woodke* states, "It is true that manufacturing the trailers was a necessary event, in a causal sense, to an attempt to pass them off, but we do not think that it is an event giving rise to Mr. Woodke's claim because it was not itself wrongful." 70 F.3d at 985–86.

Judge Tjoflat contrasts the analysis in *Woodke* with the analysis in *U.S. Surgical Corp. v. Imagyn Medical Technologies, Inc.,* 25 F. Supp. 2d 40 (D. Conn. 1998), in which a Connecticut-based employer initiated in the District of Connecticut an action for breach of a non-compete agreement against a California-based competitor and a California-based former employee. *Jenkins Brick*, 321 F.3d at 1372; *U.S. Surgical*, 25 F. Supp. 2d at 41. U.S. Surgical argued that the proper venue was the District of Connecticut because that is where the parties entered the employment agreement, that is where U.S. Surgical's principal place of business was located, and that is where the former-employee attended both a six-week training class and sporadic sales strategy meetings. *U.S. Surgical*, 25 F. Supp. 2d at 45. Although the parties intended performance under the employment agreement to occur in California and although the alleged breach of the employment agreement occurred in California, *U.S. Surgical* holds that the District of Connecticut is a proper venue. 25 F. Supp. 2d at 46. Disapproving the reasoning in *U.S. Surgical*, Judge Tjoflat explains:

> We think [*U.S. Surgical*] was incorrect because its flavor was that of a "minimum contacts" personal jurisdiction analysis rather than a proper venue analysis. We do not believe, for example, that a

defendant's attendance at sales meetings is an "event giving rise to a claim" for breach of a covenant not to compete. Accordingly, we disapprove of this line of cases.

321 F.3d at 1372.

After examining *Woodke* and *U.S. Surgical*, Judge Tjoflat concludes that the events "that gave rise to Jenkins Brick's claim occurred exclusively in Georgia." 321 F.3d at 1372. Bremer executed the non-compete agreement in Georgia, the parties intended Bremer to refrain from competition in Georgia, and "most importantly," Bremer breached the non-compete agreement in Georgia. 321 F.3d at 1372. Jenkins Brick Company raised additional facts — Bremer attended sales and training meetings in Alabama, Bremer's salary and benefits originated in Alabama, and Jenkins Brick Company originally sent Bremmer the non-compete agreement from Alabama. But these additional facts, like those wrongly considered in *U.S. Surgical*, "do not have a close nexus with the cause of action" and "are therefore irrelevant." 321 F.3d at 1373.

*Jenkins Brick* clarifies that when applying Section 1391(a)(2), "only the events that directly give rise to a claim are relevant." 321 F.3d at 1371. Both *Jenkins Brick* and *Woodke*, which *Jenkins Brick* explicitly approves, reason that a district in which an act satisfying an essential element of a claim occurred is a proper venue. *See Jenkins Brick,* 321 F.3d at 1372 ("Finally, and most importantly, the contract was breached when Bremer failed to perform his post-employment obligation to refrain from competing against Jenkins Brick—conduct that occurred only in Georgia."); *see Woodke,*

70 F.3d at 985 ("The place where the alleged passing off occurred therefore provides an obviously correct venue.") (internal citations omitted).

To determine which events directly result in a claim for defamation, the elements required to state a claim for defamation are instructive. A plaintiff must show (1) publication by the defendant of a (2) false and (3) defamatory statement (4) with knowledge of, or reckless disregard as to, the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person, and (5) actual damages. *See Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (internal citations omitted). Publication is the first element of defamation. In the same way that an act constituting a breach directly and immediately precedes the claim for breach of contract in *Jenkins Brick*, and in the same way that an act constituting "passing off" results in the claim for false designation of origin in *Woodke*, an act constituting publication of libel results in a claim for defamation. *See Cummings v. W. Trial Laws. Ass'n*, 133 F. Supp. 2d 1144 (D. Ariz. 2001) ("a substantial part of the events giving rise to Plaintiff's defamation claim against Bragg clearly occurred within Arizona. Bragg directed approximately four letters into Arizona which at least partially caused Plaintiff's defamation injury."); *Wachtel v. Storm*, 796 F. Supp. 114 (S.D.N.Y. 1992), ("Defendant acknowledges that he mailed the letter to Footwear News's offices in this District and that the letter was published here . . . . Because these events are crucial to plaintiff's cause of action for defamation, venue in the Southern District of New York is proper under [Section] 1391(a)(2)."); *Smartmatic USA Corp. v. Herring Networks, Inc.*, 610 F. Supp. 3d 92 (D.D.C. 2022) ("In particular,

- 7 -

Smartmatic asserts that OAN disseminated allegedly false and defamatory statements in the District . . . . As a result, venue . . . lies in the District."); *Stern v. O'Quinn*, No. 07-60534-CIV, 2008 WL 11401793 (S.D. Fla. July 14, 2008) ("The Court agrees with the cases cited by the Plaintiff holding that venue is proper under 28 U.S.C. § 1391(a)(2) in the jurisdiction where the defamatory statements were uttered and published . . . . Because the defamation was published here in Broward County, and therefor a substantial portion of the events giving rise to the claim occurred here, the Court holds that venue is proper and the case is properly before this Court."); *Comaford v. Wired USA, Ltd.*, 1995 WL 324564 (N.D. Ill. May 26, 1995) ("Where publication is alleged to have been done in the district in which plaintiff has brought his action, such publication constitutes a substantial part of the events giving rise to the claim.").

### b. The Middle District of Florida is a proper venue

The plaintiff claims that venue in the Middle District of Florida is proper and bases the claim on publication in the Middle District of Florida of allegedly defamatory statements,[1] consequent reputational and business injuries in the Middle District

---

[1] The stipulated facts establish that the defendants distributed approximately 3,000 print copies of the allegedly defamatory articles in this district, that the defendants distributed approximately 2,200 copies of the allegedly defamatory book "in or around" this district, and that approximately 45,000 "unique online readers" in this district viewed the allegedly defamatory articles. (Doc. 80-1)

of Florida,[2] and a business presence in the Middle District of Florida.[3]  The defend-ants claim that venue in the Middle District of Florida is improper and base the claim primarily on the location of the "relevant journalistic activities" (the defend-ants' summary phrase), including researching, interviewing, writing, editing, and the like, almost all of which occurred in New York and the balance of which occurred in New Jersey.  The defendants' claim is based on events that occurred before publica-tion, that is, before the claim for defamation accrued.  These "relevant journalistic activities" were not — either individually or cumulatively — themselves actionable as defamation (or for any other reason that appears) in Florida or New York or else-where.  Under Judge Tjoflat's governing logic in *Jenkins Brick*, these "relevant jour-nalistic activities" are not the events most directly, that is, most immediately and causally, connected to an actionable defamation (or, more exactly, a claim of defama-tion).  Publication plus reputational and business damage are the events most directly connected to the alleged claim and, therefore, most determinative of a proper venue.[4]

---

[2] To establish reputational and economic injury in this district the plaintiff alleges, "Defend-ants used their false and defamatory publications to disparage President Trump and impugn his rep-utation . . . . Defendants' false publications about President Trump also led directly to a precipitous decline in the stock price of TMTG, significantly injuring the President given his ownership stake." (Doc. 9 at ¶¶ 72–73)

[3] The plaintiff is the co-founder of Trump Media & Technology Group, Corp., a media and technology company headquartered in Sarasota, Florida, and the plaintiff "was TMTG's majority shareholder at the time his claims accrued."  (Doc. 9 at ¶ 19)

[4] See *Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n, Inc.*, 525 F. Supp. 2d 1039 (N.D. Ill. 2007) ("Economic and reputational injury, in conjunction with other activities such as the dissemi-nation of allegedly defamatory newsletters within the district qualify as substantial parts of the events giving rise to MGP's [defamation] claim.") (collecting cases); *DaimlerChrysler Corp. v. Askinazi*, 2000 WL 822449 (E.D. Pa. June 26, 2000) ("In defamation cases, for example, courts have repeatedly held that venue is proper in a district in which the allegedly defamatory statement was published, particularly if injury was suffered in the same district.") (collecting cases).

The Middle District of Florida is the largest district in the third largest state (behind only California and Texas and ahead of New York) in the United States. The argument that publication in the Middle District of Florida plus reputational and business injury in the Middle District of Florida — the events most directly connected to the plaintiff's claim for defamation by the defendants, including the largest newspaper (that is not a specialized financial newspaper) in the United States and the largest seller of trade books — are not a "substantial portion" of the events directly resulting in the plaintiff's claim for defamation is, to say the least, an untenable argument under *Jenkins Brick* and under Section 1391(a)(2), which since the 1990 amendment contemplates instances of proper venue in two or more districts. The Southern District of New York is a proper venue, the Southern District of Florida is a proper venue, and the Middle District of Florida is a proper venue. The plaintiff chose the Middle District of Florida, a choice to which the law tends to defer, absent an important, manifest, and imbalanced inconvenience to the defendant.

### c.  The defendants' supporting authority is unpersuasive

*Capital Corp. Merch. Banking v. Corp. Colocation, Inc.*, No. 6:07-CV-1626-19-KRS, 2008 WL 4058014 (M.D. Fla. Aug. 27, 2008) (Fawsett, J.), explains that "in the context of defamation and other non-physical torts," venue under Section 1391(a)(2) is generally proper "in the district where the injured party resides and the defamatory statements were published." 2008 WL 4058014 at *3. The defendants argue that *Capital Corp.* is inapplicable because the plaintiff does not reside in the Middle District of Florida. *Capital Corp.* clarifies that the combination of a plaintiff's residence

- 10 -

and a defendant's publication in a single district is sufficient to establish proper venue, but a plaintiff's residence in the district is not necessary if the plaintiff suffered harm there. *Eakin v. Rosen*, No. CV215-42, 2015 WL 8757062, *6 (S.D. Ga. Dec. 11, 2015) (Wood, J.) (discussing *Capital Corp. Merch. Banking,* 2008 WL 4058014, and *Morton Grove Pharms.,* 525 F. Supp. 2d 1039, "[T]hese cases do not address, much less rule out, the possibility of venue lying in another judicial district where the plaintiff does not reside, but nevertheless has suffered economic or reputational injury, and where publication has occurred.  Indeed, the holdings in these cases appear to be consistent with the prevailing approach in the defamation context that 'venue is proper in a district in which the allegedly defamatory statement was published, particularly if injury was suffered in the same district.'").

The defendants rely on *Nunes v. Cable News Network, Inc.*, 2023 WL 2468646 (M.D. Fla. Mar. 1, 2023) (Bucklew, J.).  After a 2022 attack on Paul Pelosi, husband of Speaker of the House Nancy Pelosi, CNN aired a segment of *CNN Tonight with Jake Tapper* in which Tapper commented on the "spreading" and "traffic[king]" of "offensive and false conspiracy theories."  2023 WL 2468646 at *1–2.  Devin Nunes, a former United States Congressman and then-CEO of Trump Media & Technology Group, initiated in the Middle District of Florida an action for defamation against CNN and Jake Tapper.  2023 WL 2468646 at *1.  Nunes argued that venue was proper in the Middle District of Florida because the "defamation which is the basis of the lawsuit was committed in the Middle District of Florida in addition to all over the world."  2023 WL 2468646 at *5 (emphasis omitted).  After citing *Jenkins Brick*

- 11 -

for the proposition that Section 1391(a)(2) requires courts to focus on relevant activities of the defendant,[5] *Nunes* reasons that "CNN and Tapper did nothing relevant . . . in Florida" and dismisses the action for improper venue. 2023 WL 2468646 at *6. *Nunes* focuses only on whether the segment "specifically pertained to Florida" and whether Jake Tapper traveled to Florida "in relation to the segment." 2023 WL 2468646 at *5–6. The analysis in *Nunes*, like the analysis in *U.S. Surgical*, has the "flavor" of a "'minimum contacts' personal jurisdiction analysis rather than a proper venue analysis." *Jenkins Brick*, 321 F.3d at 1372. Because publication directly results in a claim for defamation, venue is proper in a district in which substantial publication occurred, particularly if the plaintiff suffered injury there. *Nunes* is unpersuasive (and likely wrong).

The defendants argue for disregarding the plaintiff's business presence in the Middle District of Florida because "a plaintiff's activities unrelated to the publications at issue are irrelevant." The defendants cite as an example *Waste Pro USA, Inc. v. Adams Sanitation Holding Co.*, LLC, 2022 WL 19842681, at *2 (M.D. Fla. July 18, 2022), in which the parent corporation for companies that provide waste collection, waste disposal, and recycling services initiated in the Middle District of Florida and

---

[5] Also *Nunes* cites *Montgomery v. Risen*, 2016 WL 4119865, at *2 (S.D. Fla. Jan. 26, 2016) (Martinez, J.) and attributes to *Montgomery* the following explanatory parenthetical: "(venue improper where defendant's newsgathering related to challenged statements occurred in Washington, D.C., not Florida)." 2023 WL 2468646, at *6. *Montgomery* does not hold that venue in the Southern District of Florida was improper but rather assumes that the Southern District of Florida is a proper venue. 2016 WL 4119865. *Montgomery* transfers the action under 28 U.S.C. § 1404(a) for convenience — to make "the trial of the case easy, expeditious, and inexpensive." 2016 WL 4119865 at *2.

- 12 -

against the direct competitor of a subsidiary an action for cybersquatting, trademark infringement, unfair competition, false designation of origin, trademark dilution, and civil conspiracy.  2012 WL 4321985, at *1.  Relying on *Jenkins Brick*'s instruction to "focus on the actions of the defendant" and on persuasive precedent from the Middle District of Florida holding "that trademark infringement and unfair competition occur not where the plaintiff suffers an injury but rather where the defendant sells an allegedly infringing product," *Waste Pro* "declines . . . to consider or rely on the actions of Plaintiff or others in determining if venue is proper in this District."  2012 WL 4321985, at *2.  Unlike a claim for trademark infringement and a claim unfair competition, the situs of the plaintiff's injury bears significantly on the venue analysis under Section 1391(a)(2) for a defamation claim.  *Waste Pro* is therefore inapposite.

The defendants cite *Trump v. Simon & Schuster, Inc.*, No. 3:23-CV-2333-MCR/ZCB, 2023 WL 5000572 (N.D. Fla. Aug. 4, 2023) (Rodgers, J.), in which the plaintiff requested declaratory relief "regarding ownership of copyrights" and asserted a claim for an accounting, a claim for unjust enrichment, a claim for promissory estoppel, a claim for violation of the Florida Deceptive and Unfair Trade Practices Act, a claim for breach of contract, and a claim for breach of the covenant of good faith and fair dealing.  2023 WL 5000572 at *2.  Because the situs of the plaintiff's injury bears significantly on the venue analysis under Section 1391(a)(2) for a defamation claim, *Simon & Schuster* is inapposite.

The defendants argue that the Middle District of Florida is an improper venue because "there is no evidence that Defendants specifically targeted this District."

- 13 -

(Doc. 43 at 16)  The defendants cite as an example *Seminole Transp. Specialists, Inc. v. PDM Bridge, LLC*, 2009 WL 3822773, at *2 (M.D. Fla. Nov. 16, 2009) (Merryday, J.), which holds that venue in Florida is proper because "[t]he plaintiff alleges that Mizerk communicated false and damaging information to subcontractors and potential clients of the plaintiff" and because "Mizerk allegedly intentionally damaged the plaintiff's reputation in Florida and intentionally interfered with the plaintiff's business relationships in Florida."  2009 WL 3822773, at *3.  *Seminole* in no way contravenes a holding that publication in this district of allegedly defamatory statements, an act directly resulting in a claim for defamation, renders the Middle District of Florida a proper venue.  Further, the defendants stipulated that "the New York Times, Craig, and Beutner, knew that the allegedly defamatory statements were scheduled for publication, distribution, and sale nationally, including in the Middle District of Florida."  (Doc. 80-1 at ¶¶ 30–32)  The allegedly defamatory publications in the present action were not directed exclusively at the Middle District of Florida but nonetheless were directed knowingly, purposefully, and intentionally at the Middle District of Florida with full knowledge that the plaintiff is well-known in the Middle District of Florida and has an important business interest in the Middle District of Florida.

Finally, the defendants contend that "[w]hen courts have found venue based on distribution of a work in this District, the cases involved private individuals or small businesses operating 'exclusively within this District,' whose reputations did not stretch beyond this District."  (Doc. 43 at 17)  The defendants provide only one

- 14 -

example, *Tobinick v. Novella*, 2015 WL 328236, *3 (S.D. Fla. Jan. 23, 2015) (Rosenberg, J.).  Although *Tobinick* states that "Plaintiffs do business in Florida, and their business in Florida occurs exclusively within this District," the opinion also states:

> "Plaintiff Edward Tobinick ("Plaintiff Tobinick") is a doctor who provides medical treatment to patients with "unmet medical needs" via two institutions—"Edward Lewis Tobinick M.D.," a California medical corporation (hereinafter "the California Institute"), and "INR PLLC," a Florida professional limited liability company (hereinafter "the Florida Institute")—both doing business as the "Institute of Neurological Recovery" (collectively "Plaintiffs").

2015 WL 328236, at *1 and *3.  Therefore, *Tobinick* is not about a private individual or small business operating exclusively within this district.  2015 WL 328236, at *1 and *3.  *Tobinick* holds only that venue in the Southern District of Florida is proper because the defendant was "aware at the time he published his article that Plaintiff Tobinick resided in Florida and did business in the state."  2015 WL 328236, at *3 (citing *Seminole Transp. Specialists, Inc. v. PDM Bridge, LLC,* No. 8:09–CV–1885–T–23–MAP, 2009 WL 3822773, at *3 (M.D. Fla. Nov.16, 2009) and *Capital Corp. Merch. Banking,* 2008 WL 4058014, at *3).

## II.   Transfer Under 28 U.S.C. § 1404(a)

The defendants argue that under 28 U.S.C. § 1404(a) an order should transfer the action to the Southern District of New York.  Under Section 1404(a), "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  The transferee court must have personal jurisdiction and subject matter jurisdiction and must

- 15 -

offer a proper venue. *Miot v. Kechijian*, 830 F. Supp. 1460, 1465 (S.D. Fla.1993) (Highsmith, J.). The Southern District of New York is an eligible transferee, but "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253 (11th Cir. 1996) (Dyer, J.) (internal citations omitted). "Other considerations" include:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (Birch, J.).

The defendants argue that the convenience of non-party witnesses strongly supports transfer. "The party seeking the transfer must support its motion by clearly specifying the key witnesses to be called and particularly stating the significance of their testimony." *Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149 (S.D. Fla. 2017) (Ungaro, J.) (citing *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1362 (S.D. Fla. 2001)). The defendants identify as key non-party witnesses (1) "for the Apprentice Statements . . . President of NBC Entertainment Jeff Zucker and advertising executive Alan Blum"; (2) "for the Inheritance Statements . . . Mary Trump (who provided the underlying estate documents), trust and estate lawyer Jim Ledley, accountant Joel Rosenfeld, and Michael Bailkin . . . counsel for the New York City Mayor's Office of Lower Manhattan Development"; and (3) "for the Business

- 16 -

Statements . . . Peter Goldmark, who served as the executive director of the New York and New Jersey Port Authority, former Trump Organization executives Barbara Res and Abraham Wallach, and environmental consultant Tim Miller." According to the defendants, Jeff Zucker, Alan Blum, Mary Trump, Jim Ledley, Joel Rosenfeld, Michael Bailkin, Peter Goldmark, Barbara Res, Abraham Wallach, and Tim Miller are in New York, are beyond the subpoena power of the Middle District of Florida and are likely "key witnesses" if the action proceeds to trial.

The defendants cite *Brennan v. Roman Catholic Diocese of Syracuse N.Y., Inc.*, 2009 WL 10671159, at *3–4 (M.D. Fla. Sept. 4, 2009) (Merryday, J.). In 2001, Dennis Brennan allegedly recovered a suppressed memory of his childhood molestation in Syracuse by a Roman Catholic Priest. *Brennan*, 2009 WL 10671159, at *1. In 2002, Brennan contacted the Diocesan Bishop Thomas Costello "who verbally agreed that the [Diocese] would pay for counseling for Brennan, in the State of Florida." *Brennan*, 2009 WL 10671159, at *1. In 2007, after the Diocese declined to reimburse Brennan for certain treatment, Brennan initiated in the Middle District of Florida an action for breach of contract, fraud, and intentional infliction of emotional distress. *Brennan*, 2009 WL 10671159, at *1–2. In support of transfer under Section 1404(a), Bishop Costello averred that he required "significant medical care and treatment and would not be able to tolerate traveling [to Florida]." *Brennan*, 2009 WL 10671159, at *3. Another witness, Bishop James Moynihan, had "cement spacers rather than knees" and suffered from debilitating arthritis that forced him to retire and substantially limited his ability to travel. *Brennan*, 2009 WL 10671159, at

*3. Because Brennan evidenced no physical obstacle to travel to New York, the convenience of the witnesses favored transfer. *Brennan*, 2009 WL 10671159, at *3.

The defendants in the present case identify no physical obstacle impeding any non-party witness's ability to travel to Florida. And although the defendants clearly identify the non-party witnesses, the defendants fail to particularly state the significance of each non-party witness's individual testimony. The defendants provide insufficient detail to determine, for example, the extent to which of each non-party witness's individual testimony is cumulative or otherwise unnecessary. The defendants state that each identified non-party witness is beyond the subpoena power of the Middle District of Florida, but transfer may be denied "where the movant does not show that the witnesses would be unwilling to testify, and that compulsory process would be necessary." *Mason v. Smithkline Beecham Clinical Lab'ys*, 146 F. Supp. 2d 1355 (S.D. Fla. 2001). The defendants fail to show that any non-party witness is unwilling to testify or that compulsory process might be necessary. Further, the inconvenience to non-party witnesses is mitigated if, in an action such as this, the parties' robust financial means are more than sufficient to pay for witnesses' travel, lodging, and sustenance, and to present at trial by video recording the testimony of any witness unable or unwilling to attend trial. The convenience of the non-party witnesses weighs only slightly, if at all, in favor of transfer.

The defendants argue that the convenience of the parties weighs in favor of transfer because the defendants and the defendants' employees reside in New York, New Jersey, and Washington, D.C. According to the defendants, "[i]f this matter

- 18 -

proceeds to trial, their testimony will be required to decide actual malice." But the significance of convenience to witnesses "is diminished when the witnesses, although in another district, are employees of a party and their presence at trial can be obtained by that party." *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322 (M.D. Fla. 2010) (Wilson, J.). Because the plaintiff maintains a physical presence in Florida, transfer to the Southern District of New York would only shift the inconvenience from the defendants to the plaintiff. *Trinity Christian*, 761 F. Supp. 2d 1328–29 ("In all events, when a transfer of venue would merely shift the inconvenience from the defendant to the plaintiff, the plaintiff's choice of forum should not be disturbed."). Therefore, the convenience of the parties is neutral.

The defendants argue that the location of relevant documents and the relative ease of access to sources of proof weigh in favor of transfer. According to the defendants, "the relevant evidence is almost exclusively located in New York or Washington D.C., where the Book and Articles were largely researched, written, edited, and published." But the defendants stipulate that the "documentary evidence related to this action is accessible and can be transmitted electronically." (Doc. 80-1 at ¶¶ 26–27) Therefore, this factor is neutral.

The defendants argue that the Southern District of New York presents the locus of operative facts. "[C]ourts routinely transfer cases when the principal events occurred and the principal witnesses are located in another district . . . . However, where there is no single locus of the operative facts, this factor is neutral and does not support a transfer." *Gubarev,* 253 F. Supp. 3d at 1167. This action involves more than

- 19 -

one locus of operative facts because a substantial part of the acts or omissions directly resulting in the alleged defamation occurred in Florida.  Therefore, this factor is either neutral or tends mildly to favor transfer.

The defendants concede that the venue's familiarity with the governing law is neutral.  Also, because each party has the financial means to litigate in either venue, the relative means of the parties is neutral.

The defendants argue that the plaintiff's choice of venue carries no weight because "the plaintiff was forum shopping," because "the selected forum has little to no connection with the parties or the subject matter," and because the plaintiff initiated the action "in a district other than his home district."  (Doc. 43) *Simon & Schuster*, 2023 WL 5000572, at *7 n.4; *North Am. Underwriters, Inc. v. Am. Nat'l Ins. Co.*, 2008 WL 11336262, *2 (M.D. Fla. May 12, 2008) (Merryday, J.)  "The plaintiff's choice of forum is generally a factor that heavily weighs against transfer."  *Gubarev*, 253 F. Supp. 3d at 1167 (citing *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)).  The plaintiff does not appear to have engaged in unwholesome "forum shopping." Although the plaintiff selected a forum; every plaintiff in every action necessarily selects a forum.  Although the Middle District of Florida is not the plaintiff's home district, the Middle District of Florida is in the plaintiff's home state and is near his home and the plaintiff maintains a business presence here and alleges that reputational harm and economic injury occurred here.  Because the Middle District of Florida bears a substantial connection to the parties and to the plaintiff's claim for defamation, the plaintiff's choice of venue heavily weighs against transfer.

- 20 -

Finally, the defendants argue that because the action's locus of operative facts is New York and because "most of the material witnesses" reside in or around New York, trial efficiency and the interests of justice weigh in favor of transfer. But "[c]ourts require a significant difference between districts before finding that congestion merits transfer." *Gubarev,* 253 F. Supp. 3d at 1167 (citing *Nat'l Tr. Ins. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1247 (M.D. Fla. 2016) (Howard, J.)). According to data compiled by the Administrative Office of the United States Courts, cases in the Middle District of Florida reach trial with much greater efficiency than cases in the Southern District of New York.[6] Tampa is easily accessible to all parties and witnesses, more economical than either New York or Miami, and offers neither side a "home game." Trial efficiency and the interests of justice do not support transfer.

**CONCLUSION**

The Middle District of Florida is a proper venue under 28 U.S.C. § 1391(a)(2), and the plaintiff's choice of venue is not clearly outweighed by other considerations. The motion both (Doc. 43) to dismiss the amended complaint for improper venue and, alternatively, to transfer the action to the Southern District of New York is **DENIED**. The defendants request (Doc. 45) oral argument and move (Doc. 83) for

---

[6] In 2025, the median time interval in months for cases reaching a jury trial in the Middle District of Florida is 28.3, while the median time interval in months for cases reaching a jury trial in the Southern District of New York is 44.4. Administrative Office of the United States Courts, Statistical Tables for the Federal Judiciary tbl. T-3 "U.S. District Courts—Median Time From Filings To Trial For Civil Cases In Which Trials Were Completed—During the 12-Month Periods Ending December 31, 2024 and 2025." https://www.uscourts.gov/data-news/data-tables/2025/12/31/statistical-tables-federal-judiciary/t-3

leave to reply.  Alexandra Settelmayer moves (Doc. 86) to withdraw as counsel for Penguin Random House LLC, Susanne Craig, and Russ Buettner.  The motion (Doc. 45) for oral argument is **DENIED**.  The motion (Doc. 83) for leave to file a reply brief in further support of the motion is **DENIED**.  Alexandra Settelmayer's motion (Doc. 86) to withdraw as counsel for Penguin Random House LLC, Susanne Craig, and Russ Buettner is **GRANTED**.  Alexandra Settelmayer is **WITHDRAWN**, and the clerk must remove Alexandra Settelmayer from the service list.

ORDERED in Tampa, Florida, on July 6, 2026.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE