**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION**

PRESIDENT DONALD J. TRUMP,

Plaintiff,

v.

NEW YORK TIMES COMPANY, a New York corporation, SUSANNE CRAIG, an individual, RUSS BUETTNER, an individual, PETER BAKER, an individual, and PENGUIN RANDOM HOUSE LLC, a Delaware company,

Defendants.

Case No. 8:25-cv-02487-SDM-NHA

# DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

## INTRODUCTION

After three attempts to submit a viable complaint—the last with the benefit of extensive briefing, the Court's questioning at oral argument, and the depositions of five witnesses involved in Defendants' publications—Plaintiff still fails to plead a plausible defamation claim as to the Challenged Statements.[1]

As to actual malice, the additions to Plaintiff's Second Amended Complaint ("2AC"), Doc. 99, taken alone or together with the entire 2AC, still fail to plausibly allege that Defendants were "highly aware" that any of the Challenged Statements was false or "entertained serious doubts" as to their truth. *Jacoby v. Cable News Network, Inc.*, 2021 WL 5858569, at *5 (11th Cir. Dec. 10, 2021). For most of the Challenged Statements, Plaintiff offers no new allegations of actual malice and instead reasserts allegations he no longer has a good faith basis to allege. For example, Plaintiff alleges again that, in the 2016 Jim Rutenberg article, The Times "admit[s] that [it] view[s] President Trump as a threat who does not deserve fair treatment," 2AC ¶ 218, even after this Court disputed that conclusion, observing that the article is instead "a rumination about the quandary of a journalist," Doc. 95 ("Hearing Tr.") at 60:7–22.

For the remaining Inheritance Statements and the Survey Statements, Plaintiff mainly alleges that Defendants did not reconfirm previously reported facts that had not been challenged. But there is nothing improper about Susanne Craig and Russ

[1] All capitalized terms are defined in Plaintiff's motion to dismiss the First Amended Complaint ("1AC") for failure to state a claim, Doc. 44. Per the Court's Order, Doc. 94, this brief incorporates and supplements that motion and accompanying declarations and exhibits.

Buettner relying on their unchallenged previous reporting, or about Peter Baker relying on the publications linked to in the Survey Article; the law is clear that such reliance does not support actual malice. Moreover, Plaintiff's allegations are contradicted by the publications and documents incorporated by reference in his 2AC. Plaintiff alleges, for example, that PRH and the authors "had reason to doubt the accuracy" of statements from the 2018 Article after Charles Littlejohn pled guilty to sharing President Trump's actual tax returns. But Littlejohn provided the tax returns in 2019, and they had nothing to do with the 2018 Article. In the end, whether considered alone or together, the allegations in the 2AC fail to allege actual malice. The Eleventh Circuit routinely rejects claims of actual malice based on multiple, individually insufficient allegations far more substantial than anything alleged here.

Plaintiff also has not remedied the other defects of his 1AC, even with the benefit of discovery. Most notably, on falsity, the new allegations largely amount to nothing more than self-congratulatory non-sequiturs; they are not inconsistent with the Challenged Statements or the extensive underlying reporting. And regarding the opinions, which cannot form the basis for a libel claim, Plaintiff still fails to challenge *any* of the underlying facts supporting the opinions, despite Defendants' spelling them out in their motion. For these reasons, and those set forth in Defendants' motion to dismiss, Doc. 44, the Court should dismiss the Complaint with prejudice.

## ARGUMENT

### I. PLAINTIFF DOES NOT PLAUSIBLY PLEAD ACTUAL MALICE

The 2AC's supplemental allegations fail to remedy the fatal flaw of Plaintiff's

earlier complaints: there is no plausible allegation that any Defendant made the Challenged Statements "with knowledge [they] were false or with reckless disregard of whether [they] were false or not." *Turner v. Wells*, 879 F.3d 1254, 1273 (11th Cir. 2018) (internal citation omitted.).[2] Rather, the allegations largely consist of precisely the type of failure-to-investigate allegations that courts routinely reject as insufficient. *See Michel v. NYP Holdings*, 816 F.3d 686, 703 (11th Cir. 2016); *Reed v. Chamblee*, 2025 WL 1874638, at *3 (11th Cir. 2025); *Jacoby*, 2021 WL 5858569, at *5.

### A. The Allegations As To The 2018 Article Do Not Show Actual Malice

Most of Plaintiff's supplemental actual malice allegations focus on the Inheritance Statements in the Book and Adaptation Article, and especially the republication of statements from the 2018 Article. *See* 2AC ¶¶ 200–01, 205, 207–08.

*First*, Plaintiff fails to plausibly allege Defendants had any doubts, let alone serious doubts, concerning the accuracy of the Challenged Statements from the 2018 Article.[3] That Article was a Pulitzer Prize-winning publication based on a trove of Fred

---

[2] Now recognizing that "the state of mind required for actual malice [has] to be brought home" to each Defendant, *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964), Plaintiff's 2AC conclusorily pleads that Craig and Buettner's purported actual malice "is attributable to Penguin." 2AC ¶ 204. That is wrong. "[A]n employer is not responsible for the torts of an 'independent contractor.'" *Hunt v. Liberty Lobby*, 720 F.2d 631, 649 (11th Cir. 1983). As in *Hunt*, Craig and Buettner's "state of mind, for the purpose of finding actual malice, may not be imputed to the publisher because [they] we[re] [] independent contractor[s]." *Id.* at 648–49; *see* 2AC ¶¶ 8–9.

[3] The Challenged Statements that draw from the 2018 Article are set forth in paragraphs 20(a), 20(f), 20(g), 20(k), 20(l), 20(m), 20(p), 21(g), and 21(h) of the 1AC—as evidenced by the statements in full or the Book's endnotes. *See* Book at 5 (describing the "story, published in October 2018"); *id.* at 477, 487–89, 492 (citing 2018 Article in connection with Challenged Statements). Attached as **Exhibit A** is a chart comparing the paragraph numbers in the 1AC to those in the 2AC for each Challenged Statement. For ease of reference, Defendants refer to the Challenged Statements by the same 1AC paragraph numbers as in Defendants' motion that this brief supplements.

Trump's financial records obtained from Mary Trump. *See* Book at 5. Craig and Buettner "analyz[ed] about one hundred thousand pages of audited financial statements, tax returns, bank records, general records, and legal papers." *Id.* Their conclusions regarding tax fraud were informed by numerous experts. The 2018 Article quotes Lee-Ford Tritt, an "expert in gift and estate tax law," who said the Trumps' use of All County was "highly suspicious" and could constitute criminal tax fraud; Adam S. Kaufmann, "a former chief of investigations for the Manhattan district attorney's office," who said it "smells like a crime"; and Mitchell Gans, a tax law professor, who explained how gift tax returns can evade IRS scrutiny. Doc. 44-4 at 6, 25, 27.[4] Reliance on experts controverts actual malice—particularly when, as here, Plaintiff makes no effort to challenge such reliance. *See, e.g.*, *Levan v. Cap. Cities/ABC, Inc.*, 190 F.3d 1230, 1241-44 (11th Cir. 1999) (reliance on "numerous objective experts" and "industry professionals" defeated actual malice); *Silvester v. Am. Broad. Cos., Inc.*, 839 F.2d 1491, 1498 (11th Cir. 1988) (no actual malice where challenged publication "was thoroughly researched through interviews with experts") (citation omitted).

*Second,* the intervening six years between the 2018 Article and the Book further confirmed the accuracy of the reporting. During that period, President Trump never came forward to refute specific findings, and, when he sued over the 2018 Article, he

[4]The Book also thanks Jim Ledley, "one of the most prominent estate and trust lawyers in New York," and Joel Rosenfeld, a real estate accountant, who provided expertise help. Book at 451–52. And, as relevant to Statements 20(k) and 20(l), the 2018 Article and Book cite the deposition testimony of John Walter, Fred Trump's nephew, who generated the All County invoices, describing how the invoices were padded. Doc. 43-2 at 24; Book at 488; *see, e.g.*, *Michel*, 816 F.3d at 705 (no actual malice where article's "characterization was based on sources inside the Foundation").

"d[id] not specifically dispute the truth of any statements" therein. *Trump v. Trump*, 79 Misc. 3d 866, 868 (N.Y. Sup. Ct. 2023).[5] Moreover, nothing changed concerning the decades-old events that formed the foundation for the 2018 Article, including the All County fraud or the "likely fraud" associated with Fred Trump giving his son "taxable gifts masquerading as loans." 2AC ¶ 55. The *only* intervening event Plaintiff cites is the 2023 conviction of Littlejohn, but Littlejohn had nothing to do with the 2018 Article. As Littlejohn testified, he gave President Trump's tax records to Craig and Buettner in October 2019, a year *after* the 2018 Article ran. *See* 2AC ¶¶ 35, 197; Ex. B at 160:16.[6]

Plaintiff now alleges Craig and Buettner should have *also* obtained "copies of trust instruments" and interviewed the trustee. 2AC ¶ 206. But identifying specific matters that an investigation did not reach does not plausibly allege actual malice, *Michel*, 816 F.3d at 703; *Reed*, 2025 WL 1874638, at *3, and Plaintiff "is not entitled to have Defendants credit his preferred sources of information or structure [their] articles in the manner that he desires," *Jacoby*, 2021 WL 5858569, at *5. Similarly,

---

[5] Far from evidencing actual malice, reasonable reliance on "prior reports" *disproves* the "awareness of falsity" required for actual malice. *Reed v. Chamblee*, 2025 WL 1874638, at *3 (11th Cir. July 8, 2025); *see Tobinick v. Novella*, 848 F.3d 935, 947 (11th Cir. 2017) (no actual malice where defendant "looked to trustworthy sources," principally a *Los Angeles Times* article); *Moore v. Cecil*, 109 F.4th 1352, 1367 (11th Cir. 2024) ("widely published" prior report "tends to preclude a finding of actual malice").

[6] Documents cited and linked to in the 2AC, including the 2018 Article, Doc. 44-4. and the transcript of Littlejohn's deposition, attached hereto as **Exhibit B,** are incorporated by reference. 2AC ¶¶ 35, 197; *see, e.g.*, *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (documents central to a plaintiff's claim whose authenticity is undisputed may be incorporated by reference, even if not "physically attached to a pleading"); *see also* Hearing Tr. at 60:1-9. And when exhibits incorporated by reference "contradict" the allegations in the complaint, *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007), that is not an issue of fact for discovery, as Plaintiff appears to believe, *see* Hearing Tr. at 44:18–45:2. Rather, "the exhibits govern." *Griffin Indus*, 496 F.3d at 1206; s*ee also Horsley v. Feldt*, 304 F.3d 1125, 1133–35 (11th Cir. 2002) (documents incorporated by reference "determine what the alleged facts are" and do not convert the motion into one for summary judgment.)

Plaintiff alleges that Craig and Buettner should have had doubts about re-reporting the 2018 Article allegations because they knew Plaintiff and his father were never charged or convicted of criminal tax fraud. 2AC ¶ 198. But neither the 2018 Article nor the Book says they were. To the contrary, Statement 20(f) says the likely fraud in the form of gifts masquerading as loans went "unnoticed." 2AC ¶ 55. As the 2018 Article explained, "evasion of gift taxes is … rarely prosecuted" and that the "statute of limitations" on "the Trumps' use of All County," beginning in 1992, "has long since lapsed." Doc. 44-4 at 4; *see* 27 U.S.C. § 6531 (6-year statute of limitations for criminal tax fraud). Tellingly, President Trump does not even affirmatively allege that neither he nor his father ever engaged in tax fraud. Nor does the 2AC challenge any of the underlying details supporting the conclusion that All County or Fred's gifts amount to fraud or likely fraud, respectively, even after Defendants made the factual basis clear. *See* Doc. 44 at 32–33.

*Finally*, the allegations that the 2018 Article "is all that Buettner and Craig relied on for the Book," 2AC ¶ 205, or that the Adaptation Article "relied heavily" on the 2018 Article, *id.* ¶ 207, are belied by the documents incorporated by reference. The 2018 Article relates only to the Inheritance Statements. The remaining Challenged Statements are based on extensive new reporting, as set forth in both the Book and Adaptation Article, including "hundreds of new interviews" for the Book and "additional documents, including confidential correspondence, internal business records from *The Apprentice*, and unpublished memoirs," Book at 5; Doc. 44-2 at 2. Despite having now deposed the authors about their reporting process, Plaintiff alleges

no facts challenging what is evident on the face of the Book and Adaptation Article. [7]

**B. The Allegations As To Littlejohn Do Not Show Actual Malice**

Only two Challenged Statements tangentially relate to records provided by Littlejohn: Statements 20(t) and 21(i). There is no "allegation of reliance on some statement by Littlejohn apart from the contents of the purloined tax returns." Hearing Tr. 50:23-51:3; *see id.* at 52:4-8.[8] Plaintiff further acknowledges that, with respect to those tax returns, "we're not quibbling over the dollar figures." *Id.* at 71:21-22. Plaintiff thus does not dispute the Apprentice earnings or earnings from licensing his name, as reflected in the Challenged Statements. Moreover, the new allegations that Defendants "never received or reviewed authentic copies of President Trump's tax returns" or did not know the returns were "accurate" and "legitimate," 2AC ¶¶ 199, 203, are contradicted by Plaintiff's allegations and admissions elsewhere, as well as by Littlejohn's prosecution and testimony.[9] Plaintiff alleges that Littlejohn "was charged with unlawfully stealing and disclosing President Trump's tax returns," not with falsifying tax records. *Id.* ¶ 202. He similarly admitted at oral argument that Littlejohn

[7] In addition, after the 2018 Article, the authors obtained the tax records for their 2020 reporting about Trump's tax avoidance, attached hereto as **Exhibit C**. *See* Book at 422 & 498 (citing Russ Buettner, Susanne Craig & Mike McIntire, "Long-Concealed Records Show Trump's Chronic Losses and Years of Tax Avoidance," N.Y. Times (Sept. 27, 2020) ("2020 Article")).

[8] Plaintiff stated that he needed discovery into "whether or not there was any reliance by the defendant upon any statements made by Mr. Littlejohn" before he could plead that in his complaint. Hearing Tr. at 50:23-52:12. But in the 2AC, even after Plaintiff took depositions of Craig and Buettner, there still is no allegation that Defendants relied on any statements by Littlejohn.

[9] Plaintiff does not challenge the authors' well-documented efforts to authenticate the tax returns provided by Littlejohn. *See, e.g.*, 2020 Article (explaining tax returns authenticated by "comparing" them "with publicly available information and confidential records previously obtained by The Times"—for example, "by comparing the confidential tax records to the financial disclosures Ivanka Trump filed when she joined the White House staff in 2017").

"criminally and unlawfully disclosed President Trump's private tax returns," conceding the actual returns were disclosed. Hearing Tr. at 47:18–24. In short, Littlejohn's conviction and the allegations and admissions related thereto negate rather than prove actual malice.

### C. The 2AC Pleads No New Factual Allegations As To The Business Statements, Penchant Statement, Or Apprentice Statements

The 2AC includes no new factual allegations of actual malice relating to the remaining Challenged Statements in the Book or Adaptation Article—namely, the Business Statements, the Penchant Statement, and the Apprentice Statements.

Defendants' motion to dismiss documented the extensive reporting supporting those Challenged Statements. *See* Doc. 44 at 17–18, 22–23. Plaintiff's 2AC does not challenge *any* of those incorporated disclosures and instead, with regard to the Apprentice Statements, simply realleges that Defendants published them "without first securing an interview with primary, senior sources involved in the production of *The Apprentice,* such as Burnett." 2AC ¶ 226. But Plaintiff knows this is false. The publications facially document the *numerous* producers and executives with whom the authors spoke. *E.g.*, Book at 490–97; Doc. 44-2 at 2, 4–6, 8–10, 13–14. They also document that the authors indisputably strived to interview Burnett. When he rejected their efforts, they went to great lengths to have his perspective included in the book, including tracking down a keynote presentation he gave in 2013 explaining why he hired Trump, reviewing two books written by Burnett and one by his ex-wife, interviewing another ex-wife, and obtaining governance documents for the Burnett

Financial Group, financial records of Mark Burnett Productions, court records, and other reporting in which Burnett was quoted. Book at 340, 490–94.[10]

**D. The Allegations As To The Survey Article Do Not Show Actual Malice**

The 2AC also fails to plead actual malice as to the Survey Article. Plaintiff criticizes Baker for not independently re-reporting the information in the dozens of previously published articles and records his article discussed. 2AC ¶¶ 210–17. That allegation is insufficient for actual malice, *Michel*, 816 F.3d at 703, and mistakes the article's purpose, which was to examine how no presidential candidate had ever been dogged by so many publicly reported scandals. Doc. 44-3.

Further undercutting the 2AC's allegations of actual malice, the Survey Article cites dozens of "published reports from reputable sources," *Reed*, 2025 WL 1874638, at *3, to present a "full record" of the scandals President Trump faced. Doc. 44-3. The Article links to 97 sources, including C-SPAN footage, a federal agency press release, and news outlets such as ABC and Politico. *Id.*; 2AC ¶ 212 (discussing hyperlinks in Survey Article).[11] Actual malice is "absent when the publisher's claims are reasonably supported by numerous prior reports, as is the case here." *Reed*, 2025 WL 1874638, at

[10] Similarly dogged investigative efforts and unchallenged reporting support the Penchant Statement and Business Statements—for instance, former Trump Organization senior executive Norman Levin, recounted that Trump was "not reviewing the pros and cons," "not balancing the risk-reward," "not looking at the technical viability," and not moved by any of "the facts and figures that we presented," Book at 225, or President Trump's own statement that things "never work out very well" when he "do[es] research," Book at 248-48. Again, Craig and Buettner's research and reliance on credible sources defeats actual malice.

[11] *See, e.g.*, *Day*, 400 F.3d at 1276 (documents central to a plaintiff's claim whose authenticity is undisputed may be incorporated by reference, even if not "physically attached to a pleading").

*3 (quoting *Rosanova v. Playboy Enters., Inc.*, 580 F.2d 859, 862 (5th Cir. 1978)); *see supra* note 5. Plaintiff's observation that the print article did not contain hyperlinks, 2AC ¶ 213, is beside the point. Actual malice is measured by the author's state of mind at the time of publication, *Hunt*, 720 F.2d at 647, and Baker's disclosed reliance on the linked reports defeats any claim of actual malice. *See Rosanova*, 580 F.2d at 862.

Further, the Survey Article contradicts the allegations that Baker's reliance on prior reports was "blind" or that he purposefully avoided the truth. 2AC ¶¶ 212, 216. For example, after recounting Mary Trump's allegation that Plaintiff cheated on the SAT, the Survey Article stated that a spokeswoman for Plaintiff denied the allegation and that "the widow of … the test-taking friend said that she was confident her husband did no such thing," and then linked to an article containing the widow's statements. Doc. 44-3 at 6–7.

**E. Insufficient Allegations Taken Together Do Not Show Actual Malice**

Conceding that factors like "failure to investigate will not alone support a finding of actual malice," Plaintiff tosses out "contextual factors" he hopes add up to "purposeful avoidance," namely (1) "reliance on a convicted felon," *see supra* Section I.B, (2) "failure to interview or acknowledge previous statements from" Mr. Burnett, *see supra* Section I.C, (3) The Times's "depart[ure] from journalistic standards," *see supra* Section I.D, and (4) "failure to verify certain statements" about "tax fraud," *see supra* Section I.A; Hearing Tr. at 55:11–19, 77:16-78:23. At a minimum, each factor must be supported by specific factual allegations creating a plausible inference of actual malice. Here, there are none.

*Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989), explicates the weight of collective evidence necessary to support actual malice. As this Court noted, "[t]here are a lot of facts in *Harte-Hanks*," Hearing Tr. at 28:4, that support the inference of actual malice, including the paper's deliberate decision *not* to interview the one witness who could disprove the blackmail allegations; the inexplicable choice *not* to listen to tape recordings in their possession, knowing they could verify or disprove the claims at issue; the fact that six witnesses, several of whom other reporters considered credible, denied that any promises or offers were made; ignoring indicia of the source's unreliability such as her history of "prior criminal convictions and reported psychological infirmities"; and disregarding multiple facts, such as Connaughton's arranging a polygraph and filing a formal complaint, that refuted the source's accusation of private blackmail. *Harte-Hanks*, 491 U.S. at 668, 674, 678–79, 682–83, 689 n.36 & 692.[12]

Here, by contrast, there are *no* concrete facts supporting any inference of actual malice. Neither conclusory allegations, nor allegations flatly contradicted by the incorporated documents, no matter how numerous, can add up to a plausible claim Defendants knew the Challenged Statements were likely false. *See, e.g.*, *Tobinick*, 848

[12] In *Harte-Hanks*, there was also compelling evidence of the newspaper's bias and its "bitter rivalry" with another newspaper, whose report it "was effectively impugning" to "undermin[e] its market share." *Harte-Hanks*, 491 U.S. at 664–65 & n.6. Nothing similar is alleged here—again, even after Plaintiff took discovery. *Harte-Hanks* also rejects any suggestion that the timing of a publication shortly before an election could support actual malice; to the contrary, it emphasizes that "'public discussion of the qualifications of a candidate for elective office,'" as in the Book and Articles, "is necessary for the optimal functioning of democratic institutions and central to our history of individual liberty." *Id.* at 686–87 (citation omitted).

F.3d at 946–47 (combination of factors including reliance on superseded information, discrepancies between the defendant's articles and deposition testimony, and ill will not sufficient); *Jacoby*, 2021 WL 5858569, at *5 (allegations of common law malice, failure to consider publicly available information, and pre-publication denial were insufficient); *Reed v. Chamblee*, 2023 WL 6292578, at *24 (M.D. Fla. Sept. 27, 2023) (allegations of ill will, omission of exculpatory information, failure to print a retraction, and deliberate choice not to speak to witnesses who could have refuted the statements were insufficient), *aff'd*, 2025 WL 1874638, at *3; *see also Berisha v. Lawson*, 973 F.3d 1304, 1312 (11th Cir. 2020) (rejecting argument that considering certain evidence "in the aggregate," including source credibility issues, a pattern of dishonesty, a determination to publish a preconceived story, an allegedly fabricated detail, and an acknowledged inability to verify certain information, showed actual malice). The 2AC does not plead facts that, alone or together, support the conclusion that Defendants subjectively doubted the truth of any of the Challenged Statements.

## II. PLAINTIFF DOES NOT PLAUSIBLY PLEAD THE OTHER ELEMENTS OF A DEFAMATION CLAIM

### A. Failure to Plead Defamatory Meaning

Whether a statement is reasonably capable of a defamatory interpretation is a question of law for the Court. *See, e.g.*, *Keller v. Miami Herald Pub. Co.*, 778 F.2d 711, 714–15 (11th Cir. 1985). Plaintiff "cherry picks statements in the [Book and Articles] out of context." *Turner*, 879 F.3d at 1267. But in determining the gist of a challenged statement, the Court must look to "the entire context" of the publication. *Rubin v. U.S.*

*News & World Report, Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001). As one example, what Plaintiff identifies as the sting of the challenged Business and Apprentice Statements—that Plaintiff "never really had this business success that he actually did have," Hearing Tr. at 55:1-6—is belied by the Book's extensive documentation of his business successes. *E.g.*, Book at 142, 163, 189–90, 198, 245–46. The Book's comprehensive, nuanced account of his business career, or what Plaintiff calls "speaking out of both sides of their mouth," Hearing Tr. 56:25–57:7, is not actionable as a matter of law. *See, e.g.*, *Croce v. N.Y. Times Co.*, 930 F.3d 787, 795 (6th Cir. 2019).

**B. Failure to Plead a False Statement of Fact**

Plaintiff's new allegations of falsity do not actually contradict the Challenged Statements of fact. Indeed, many of the allegations *support* the Challenged Statements and render them non-actionable. For example, that Plaintiff borrowed Michael Scadron's jacket with his permission effectively confirms that Plaintiff wore the jacket and presented himself in his New York Military Academy yearbook photo wearing medals "that he did not win himself." 2AC ¶¶ 162–63. Likewise, that Mark Burnett's product placement model made Plaintiff a fortune is not inconsistent with the allegations that he is "a billionaire many times over." *Id.* ¶¶ 101, 109, 113, 117.

In other cases, the allegations ignore the text of the Challenged Statements. For example, Plaintiff alleges that the statement recounting Mary Trump's cheating allegation is false because "Joseph Shapiro, the friend identified in this … allegation, met President Trump *after* he matriculated at Wharton Business School," *id.* ¶ 167. But the Survey Article did not state that Shapiro took the SAT for President Trump.

Rather, it accurately reported *both* Mary Trump's allegation and the fact that "the widow of a man with the name cited by Ms. Trump as the test-taking friend said that she was confident her husband did no such thing." Doc. 44-3 at 7. Similarly, Plaintiff alleges that Statement 22(c) is false because he personally "was not charged with violating any money laundering laws, rules or regulations," only the Trump Taj Mahal was. 2AC ¶ 171. Yet the Survey Article not only does not say that Plaintiff was personally charged with these violations, it links to the Treasury Department press release announcing the penalty against his company. And he does not disclaim his control of the company at the time of the FinCEN settlement.

The remaining allegations of falsity are vague and conclusory. For example, Plaintiff alleges that the Statement that Plaintiff "tried to erase his father's accomplishments" is false because he "continuously celebrat[ed] and honor[ed] his father's accomplishments," 2AC ¶¶ 59–60, but he does not challenge the numerous concrete examples in the Book where Plaintiff effectively erased his father's achievements. *E.g.*, Book at 8, 107, 110, 114, 133, 185. Likewise, he conclusorily alleges he "did analyze and consider the risks" of investments, 2AC ¶¶ 67–68, but does not challenge the multiple examples and sources cited in the Book (including his own admission) to the contrary. *E.g.,* Book at 205, 212, 216, 246–48, 252, 271, 299, 324, 332–33, 402. Perhaps most notably, Plaintiff disputes that he sold the bulk of his father's empire for almost $250 million less than it was worth but does not plead what he believes to be the actual value of the assets or the basis for any such estimation. Any such facts, of course, would be in Plaintiff's possession. The failure to plead the falsity

of any statement of fact compels dismissal of the claims.

As to the statements of opinion based on disclosed facts, 1AC ¶¶ 20(b)–20(m), 20(q), 20(u), 21(d), 21(i), 21(e)–21(f), Plaintiff's conclusory allegation that they are "not an expression of an opinion" is entitled to no weight. *See Turner*, 879 F.3d at 1262-63 ("Whether the statement is one of fact or opinion…[is] question[] of law for the court."). Plaintiff does not dispute the facts upon which the opinions are based—even after Defendants set them forth in detail in their motion. For example, the 2AC leaves unchallenged the bases for the subjective characterization that he was "drawn to men who displayed a penchant for violence," 1AC ¶ 20(d), including his choosing to hire a former classmate who brutally beat another child and a security guard who "knocked … around and shoved" two young men. Book at 63, 69, 174. While Plaintiff may disagree with Defendants' opinions, opinions based on unchallenged disclosed facts are not actionable as a matter of law.

### C. Damages

Plaintiff no longer specifies which statements are defamation per se and which are defamation per quod, but the latter—at minimum, 1AC ¶¶ 20(d), 20(g), 20(h), 20(n), 20(q), and 20(s)—must be dismissed for failure to plead special damages.

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' motion, Doc. 44, the 2AC should be dismissed. And, because Plaintiff has now had three opportunities to try to state a claim, including with the benefit of five depositions, dismissal should be with prejudice.

Dated: September 17, 2026

Respectfully submitted,

_/s/Carol Jean LoCicero_
Carol Jean LoCicero
Florida Bar No. 603030
Linda Norbut
Florida Bar No. 1011401
**THOMAS & LOCICERO**
601 S. Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060
clocicero@tlolawfirm.com
lnorbut@tlolawfirm.com

Thomas G. Hentoff* (lead counsel)
Nicholas G. Gamse*
Kimberly Broecker*
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5804
thentoff@wc.com
ngamse@wc.com
kbroecker@wc.com

*Admitted *pro hac vice*

***Attorneys for Defendants New York Times Company, Peter Baker, Susanne Craig, and Russ Buettner***

_/s/ William J. Schifino, Jr._
William J. Schifino, Jr.
Florida Bar No. 564338
Justin P. Bennett
Florida Bar No. 112833
Gregory L. Pierson
Florida Bar No. 123905
**GUNSTER, YOAKLEY & STEWART, P.A.**
401 E. Jackson Street, Suite 1500
Tampa, Florida 33602
Telephone: (813) 228-9080
wschifino@gunster.com
jbennett@gunster.com
gpierson@gunster.com

George S. LeMieux
Florida Bar No. 16403
Eric C. Edison
Florida Bar No. 10379
**GUNSTER, YOAKLEY & STEWART, P.A.**
450 East Las Olas Blvd., Suite 1400
Fort Lauderdale, Florida 33301
Telephone: (954) 462-2000
glemieux@gunster.com
eedison@gunster.com

Elizabeth A. McNamara* (lead counsel)
Alexandra Perloff-Giles*
**DAVIS WRIGHT TREMAINE LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 489-8230
lizmcnamara@dwt.com
alexandraperloffgiles@dwt.com

*Admitted *pro hac vice*

*Attorneys for Defendants Penguin Random House LLC, Susanne Craig, and Russ Buettner*