**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

PRESIDENT DONALD J. TRUMP, an individual,

Plaintiff,

v.

NEW YORK TIMES COMPANY, a New York corporation, SUSANNE CRAIG, an individual, RUSS BUETTNER, an individual, PETER BAKER, an individual, and PENGUIN RANDOM HOUSE LLC, a Delaware company,

Defendants.

Case No. 8:25-cv-02487-SDM-NHA

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Plaintiff, President Donald J. Trump ("President Trump" or "Plaintiff"), responds in opposition to the Supplemental Brief in Support of Their Motion to Dismiss the Second Amended Complaint [ECF No. 103] (the "Supplement") filed by Defendants, The New York Times Company ("New York Times"), Susanne Craig ("Craig"), Russ Buettner ("Buettner"), Peter Baker ("Baker"), and Penguin Random House LLC ("Penguin"), and states:[1]

**PRELIMINARY STATEMENT**

During the oral argument on July 22, 2026, Defendants' counsel presented to the Court the type of allegations of actual malice that survive a motion to dismiss. The complaint in *Project Veritas v. Cable News Network, Inc.,* 121 F.4th 1267, 1283–84 (11th Cir. 2024), survived because it alleged "actual facts . . . that presented plausible evidence that the defendant either knew the statement was false or had serious doubts." ECF No. 95 ("Hearing Tr.") at 23. There, the defendant's own earlier statement contradicted what it later broadcast. Here, the Second Amended Complaint ("SAC"), ECF No. 99, asserts the same thing at least three times: in each instance, Defendants' own materials contradicted what they published.

*First,* Peter Baker's October 20, 2024, New York Times article (the "Survey Article") wrongly stated to readers that authorities had "found violations of money laundering rules," even though the linked FinCEN announcement concerned Trump

[1] Capitalized terms not defined herein have the meanings given in Defendants' Supplement. The SAC's "First Article" is Defendants' "Adaptation Article"; the SAC's "Second Article" is Defendants' "Survey Article." Because the Supplement incorporates Defendants' original motion, ECF No. 44, President Trump likewise incorporates his opposition to it, ECF No. 81.

Taj Mahal Associates, and did not mention President Trump. ECF No. 99 ¶¶ 4, 170–73. The Survey Article also falsely alleged that President Trump paid a friend to take the SAT, *id.* ¶ 166, yet it linked to a report containing the friend's widow's allegations, and the SAC asserts that the two first met at the University of Pennsylvania, *after* Plaintiff took the SAT test, which is administered during high school. *Id.* ¶ 167.

*Second,* the Book incorrectly told readers that on *The Apprentice,* "other people would do all the work." *Id.* ¶ 100. The Book itself reports, however, that Mark Burnett agreed to split the show's profits 50/50 with President Trump, *id.* ¶ 227, a split Defendants described to this Court as made in recognition of President Trump's "stature." ECF No. 44 at 18.

*Third,* the Book's false tax fraud accusations rest on six-year-old reporting that, the SAC asserts, the authors did not verify. ECF No. 99 ¶¶ 200–01, 205. One such falsehood was the claim that Fred Trump's loans were "a likely tax fraud that went unnoticed." *Id.* ¶ 55. The Court asked, at argument, "how would anyone be able to say that these things were corrupt yet unnoticed?" Hearing Tr. at 18. Defendants had a specific reason to doubt this allegation. Their own 2018 Article reported that President Trump's counsel said the relevant taxing authorities had examined the challenged positions "in real time," and "fully approved all of the tax filings." ECF No. 44-4 at 3, 35. Taken together, these allegations provide compelling support for an inference of actual malice. The Court recognized as much at oral argument, stating that although many decisions say that a given factor "is insufficient on its own," "the 'on its own' is often not the case. It's not on its own, as it was not on its own in *Harte-*

*Hanks* and in other cases." Hearing Tr. at 33.

The SAC also complies with the Court's Order. ECF No. 94 at 1. It pleads falsity and defamatory meaning statement by statement, actual malice by defendant and by publication, and damages in each *per quod* count. ECF No. 99 ¶¶ 32–173, 196–217, 267, 284, 301. The Motion to Dismiss, as supplemented, should be denied.

## ARGUMENT

### I. The SAC plausibly alleges actual malice.

A complaint pleads actual malice when it alleges "facts sufficient to give rise to a reasonable inference" that the defendant knew its statement was false or recklessly disregarded its truth. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016). In *Project Veritas,* the Eleventh Circuit applied that standard to reverse the dismissal of a complaint alleging that the defendant's reporter had stated the true facts, days before the network broadcast a false account. 121 F.4th at 1283–84. The inference may rest on "any competent evidence, either direct or circumstantial." *Herbert v. Lando,* 441 U.S. 153, 164 n.12 (1979). Recklessness may be found when a publisher has "obvious reasons to doubt" the source's veracity or the accuracy of the reports. *St. Amant v. Thompson,* 390 U.S. 727, 732 (1968). "[P]urposeful avoidance of the truth," including a "deliberate decision not to acquire knowledge of facts that might confirm the probable falsity" of the charge, supports a finding of actual malice. *Harte-Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657, 692 (1989). So does evidence of the defendant's motive and the care it took. *Id.* at 668. The SAC pleads these facts.

**A. The Survey Article: Baker's own sources contradicted him.**

Defendants try to defend the Survey Article by pointing to "published reports from reputable sources." ECF No. 103 at 9. But Baker's own sources contradicted the statements at issue. The SAT statement begins with the accusation, "He likewise cheated to get into college," and only then attributes it to President Trump's "estranged niece." ECF No. 99 ¶ 166. Attribution does not protect a publisher that had "obvious reasons to doubt" its source. *St. Amant,* 390 U.S. at 732. The Survey Article identified "the test-taking friend" through his widow. ECF No. 103 at 10 (quoting ECF No. 44-3 at 6–7). The SAC states that the two men first met at Penn, *after* President Trump took the SAT, as the widow confirmed. ECF No. 99 ¶ 167. Defendants acknowledge that the Survey Article linked the widow's account, and say Baker reported her denial. ECF No. 103 at 10. This admission confirms that Baker had her contrary account when he made the accusation. On those allegations, the mistaken charge was not merely false, but impossible.

The Survey Article also stated that authorities who "looked into [Trump's] ties with the Mafia" had "found violations of money laundering rules," attributing the violations to Plaintiff. Yet, the linked FinCEN release announced a penalty against Trump Taj Mahal Associates, and did not name the President. ECF No. 99 ¶¶ 170–73. That is the contradiction that *Project Veritas* says supports actual malice: the publisher possessed "information that seriously undermines the truth of its story." 121 F.4th at 1284 (omitting internal citation). The SAC also states that Baker verified nothing, and relied on "whatever was stated within the hyperlinks." ECF No. 99 ¶¶

210–17. Defendants try to invoke *Reed v. Chamblee*, 2025 WL 1874638, at *3 (11th Cir. July 8, 2025), for the rule that actual malice is absent "when the publisher's claims are reasonably supported by numerous prior reports." ECF No. 103 at 9–10. The Survey Article's ninety-seven links do not make a claim "reasonably supported," however, and the two on point – the FinCEN release and the widow's account – contradict it. ECF No. 103 at 9-10; ECF No. 99 ¶¶ 167, 171, 173.

### B. The Book's own reporting contradicts the Apprentice Statements.

The Court limited supplemental argument "to any new factual allegations in the second amended complaint." ECF No. 94 at 2. Defendants concede that the SAC "includes no new factual allegations" as to the Business, Penchant, and Apprentice Statements, ECF No. 103 at 8, yet argue them anyway. President Trump stands on ECF No. 81 as to the Business and Penchant Statements.

Defendants' renewed, failed argument on the Apprentice Statements confirms the contradiction. Defendants argue that the authors tried to interview Mark Burnett, who did not respond, and then relied on his books, a 2013 keynote "explaining why he hired Trump," and corporate records. ECF No. 103 at 8–9; *see* ECF No. 99, Ex. A. The Book itself reports that Burnett agreed to split the show's profits 50/50 with Plaintiff, ECF No. 99 ¶ 227 (citing Book at 345–47), a split Defendants themselves told this Court reflected Plaintiff's "stature." ECF No. 44 at 18. Yet, the Book told readers that *The Apprentice* was "the equivalent of a second inheritance," and that "other people would do all the work." ECF No. 99 ¶ 100. The issue is not how much reporting the authors did. It is whether they published something their own reporting

contradicted. The SAC makes clear that they did. A producer does not agree to share half the profits of his own show with someone who does not bring value, and authors who report that arrangement know it.

Defendants' falsity argument misses the point. Defendants contend that Burnett's product placement model made President Trump "a fortune," which is "not inconsistent" with the SAC's allegation that he is "a billionaire many times over." ECF No. 103 at 13. But Plaintiff challenges the false and malicious claim that he did nothing to earn his success, not the fact that *The Apprentice* made him money, which contradicts the claim. ECF No. 99 ¶ 100. The SAC asserts that President Trump's success reflected his own "labor, expertise, and herculean efforts," and that he was a sought-after screen presence long before the show. *Id.* ¶¶ 101, 228–29. Burnett's 50/50 split supports that account, and Burnett was the person best positioned to know what Plaintiff contributed. *Id.* ¶ 227. Plaintiff, otherwise, stands on ECF No. 81 at 10, 23.

### C. Defendants republished unverified accusations despite a specific reason to doubt them.

Defendants acknowledge that the 2018 Article "relates only to the Inheritance Statements." ECF No. 103 at 6. The SAC alleges that the authors republished those false, malicious, and defamatory statements without verifying the six-year-old reporting. ECF No. 99 ¶¶ 200–01, 205. That allegation reaches every Inheritance Statement. The clearest examples are the false statements accusing President Trump and his father of tax fraud (the "Tax Fraud Statements"), such as that President Trump received his father's money, "much of it through fraudulent tax evasion schemes";

Fred Trump's loans were "a likely tax fraud that went unnoticed"; and All County was "a sham layer . . . designed to evade the gift and estate taxes." *Id.* ¶¶ 32, 55, 75. President Trump stands on ECF No. 81 as to the remaining Inheritance Statements.

The Court asked, at oral argument, "how would anyone be able to say that these things were corrupt yet unnoticed?" Hearing Tr. at 18. The 2018 Article from which the "unnoticed" statement derives, ECF No. 103 at 3 n.3, reported President Trump's response that "[t]here was no fraud or tax evasion by anyone," and that the challenged positions "were examined in real time by the relevant taxing authorities," which "fully approved all of the tax filings." ECF No. 44-4 at 3, 35. That was a specific, verifiable reason to doubt the "unnoticed" accusation. The SAC states that Defendants did not verify the prior reporting before republishing it. ECF No. 99 ¶¶ 200–01, 205, 207–08. Whether the IRS noticed is not a question of tax law that an expert could answer. It is a factual question about what the authorities knew, and Defendants had been told the answer. A publisher cannot accuse someone of a fraud that "went unnoticed," wrongly assert that the responsible authorities support that accusation, and then publish that accusation without verifying it. That "deliberate decision not to acquire knowledge of facts that might confirm the probable falsity" is the purposeful avoidance that *Harte-Hanks* condemns. 491 U.S. at 692.

As to the Inheritance Statements, Defendants' lead argument is that "[r]eliance on experts controverts actual malice," particularly where the plaintiff "makes no effort to challenge such reliance." ECF No. 103 at 4. President Trump does challenge the issue of reliance. Reliance on an expert is only as sound as what the expert was told,

and what the expert was asked. The 2018 Article says Professor Tritt gave his opinion "after being briefed on All County by The Times," and he concluded (wrongly) only that the transactions were "highly suspicious" and "could constitute criminal tax fraud." ECF No. 44-4 at 25. Defendants' counsel described the article as alleging "suspected tax fraud—or what appeared to be tax fraud." Hearing Tr. at 14. The SAC asserts that Defendants worked from "only partial information, illegally obtained, regarding several years of tax returns," and knew that a responsible assessment would have required "forensic auditing, expert tax legal advice, and other expensive investigatory tools." ECF No. 99 ¶ 232. The Book's acknowledgments thank an estate lawyer and an accountant, but say nothing about what they were told, what they concluded, or whether they knew taxing authorities had examined and approved the filings. ECF No. 103 at 4 n.4 (citing Book at 451–52); ECF No. 44-4 at 3, 35. Those are questions of fact. The decisions that Defendants cite resolved them on developed records, not on the pleadings. *See Levan v. Cap. Cities/ABC, Inc.*, 190 F.3d 1230, 1241–44 (11th Cir. 1999) (after trial); *Silvester v. Am. Broad. Cos.*, 839 F.2d 1491, 1498 (11th Cir. 1988) (summary judgment).

Defendants' remaining arguments all improperly treat the 2018 Article as proof of itself. They invoke the rule that reasonable reliance on "prior reports" negates actual malice, but their cited cases concern reporting by others. ECF No. 103 at 5 n.5. *See Tobinick v. Novella*, 848 F.3d 935, 947 (11th Cir. 2017) (Los Angeles Times article); *Moore v. Cecil*, 109 F.4th 1352, 1367 (11th Cir. 2024) (reports "widely published" by others). The "prior report" here is the authors' own. Craig and Buettner cannot

corroborate themselves.

Defendants also wrongly argue that the 2018 reporting went unchallenged for six years. ECF No. 103 at 4–5. However, it was challenged before publication. President Trump's counsel told the authors that "[t]here was no fraud or tax evasion by anyone," and warned that stating or implying fraud would expose the Times to liability for defamation. The authors quoted both statements in the 2018 Article itself. ECF No. 44-4 at 3, 25. Defendants' nonprosecution point, likewise, fails. They say gift-tax evasion is "rarely prosecuted," and the limitations period had "long since lapsed." ECF No. 103 at 6. That explanation proves the point. The SAC alleges that no prosecutor brought charges based on the conduct, and no court found it criminal, leaving the Tax Fraud Statements as the authors' own legal conclusions. ECF No. 99 ¶¶ 33–34, 198. Finally, the SAC states that President Trump and his father complied with applicable law, contrary to Defendants' claim that he does not affirmatively deny fraud. ECF No. 103 at 6; ECF No. 99 ¶ 232.[2]

Defendants also falsely contend that the allegation that the 2018 Article "is all that Buettner and Craig relied on for the Book" is belied by the Book's source notes,

---

[2] The Littlejohn allegations bear on two Challenged Statements, ECF No. 99 ¶¶ 112, 157, whose sting is not any dollar figure, but the claim that President Trump's success was "luck" and required "no business expertise." *Id.* Defendants' false assertion that counsel conceded the returns' accuracy, ECF No. 103 at 7, misreads the transcript: the remark that "we're not quibbling over the dollar figures" concerned the Inheritance Statements. Hearing Tr. at 71. And counsel's remarks at argument on the prior complaint are not allegations in any event. The SAC superseded that pleading. *See Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006). Nor may Defendants establish when and how the authors obtained and authenticated the returns through their Exhibits B and C. ECF No. 103 at 7 & n.9. The Court cannot consider Exhibit C, a 2020 Times article, or Exhibit B, the Littlejohn deposition, because neither is central to Plaintiff's claims. *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

and that President Trump alleged nothing new, despite deposing the authors. ECF No. 103 at 6–7. But paragraph 205 of the SAC concerns the Inheritance Statements—the only statements that Defendants say derive from that article. *Id.* at 6; *see id.* at 3 n.3. Interviews on other subjects do not show how those statements were verified. Rule 8 requires facts, not evidence, and Defendants' invitation to infer what the depositions did not show asks the Court to weigh a record that is not before it. If the testimony matters, it matters at summary judgment.

**D. The allegations in the SAC must be assessed together.**

Defendants treat *Harte-Hanks* as a pleading checklist, although it followed a jury trial on a full record. The expert-reliance cases that they cite, likewise, followed trial or summary judgment. Those decisions do not raise the pleading standard.[3] *Harte-Hanks* does not define what President Trump must allege to state a claim for defamation. The SAC need only allege facts that "sufficiently 'nudg[e]' [his] claims 'across the line from conceivable to plausible.'" *Trump Media & Technology Group Corp. v. WP Co.*, 2025 WL 1615443, at *3 (M.D. Fla. June 6, 2025). It clearly does. Baker's own sources contradicted the Survey Statements. The Book's profit split account contradicted its claim that "other people would do all the work," and the authors republished an "unnoticed" tax-fraud accusation, despite the reported claim that taxing authorities had approved the filings. The SAC also asserts publication weeks before the presidential election, a period the Court suggested may be "a moment of

---

[3] *See Levan*, 190 F.3d at 1241–44; *Silvester*, 839 F.2d at 1498; *Berisha v. Lawson*, 973 F.3d 1304 (11th Cir. 2020) (same); *Hunt v. Liberty Lobby*, 720 F.2d 631 (11th Cir. 1983) (jury verdict).

maximum prospective injury." Hearing Tr. at 6.

*Craig and Buettner* are charged with specific omissions as to the Book, ECF No. 99 ¶¶ 198–203, and the First Article, *id.* ¶¶ 206–08; and *Baker* with publishing statements his own sources contradicted, after verifying nothing, *id.* ¶¶ 210–16. The New York Times conceded, at argument, that its reporters' state of mind is imputed to it. Hearing Tr. at 25–26. It also "blindly relied on Baker without engaging in any independent fact checking or other verification." ECF No. 99 ¶ 217. That is its own purposeful avoidance, not simply another's actions that are imputed to it.

Defendants answer only as to Penguin, invoking *Hunt v. Liberty Lobby*, 720 F.2d 631, 649–51 (11th Cir. 1983), for the rule that an independent contractor's state of mind is not imputed to a publisher. But Penguin's liability does not depend on imputation. Penguin itself "blindly relied on Buettner and Craig's prior reporting from the 2018 Article," and, thereby, "purposefully avoided discovering whether the challenged statements from the Book were true." ECF No. 99 ¶ 205. That article told Penguin everything that it needed to know: President Trump's counsel had denied any fraud, stated that taxing authorities had examined and approved the filings, and warned that stating or implying fraud would be defamatory. ECF No. 44-4 at 3, 25, 35. Penguin published the false, malicious, and defamatory accusation, anyway. Imputation remains available, in the alternative. The SAC states that the authors acted within the course and scope of their engagement with Penguin, ECF No. 99 ¶ 204, and how much control Penguin exercised over the Book is a question of fact that *Hunt* resolved only on a full trial record. 720 F.2d at 648–49.

### II. The Supplement's remaining arguments fail.

#### A. Defamatory meaning.

Section II.A of the Supplement addresses the Business, Penchant, and Apprentice Statements on allegations already before the Court. ECF No. 103 at 8. Those allegations were sufficient when first pleaded, for the reasons in ECF No. 81, and President Trump stands on that briefing as to the Business and Penchant Statements. ECF No. 81. Additionally, Section II.A fails on its own terms. A publication is defamatory *per se* if it "charges that a person has committed an infamous crime" or "tends to injure one in his trade or profession." *Loomer v. Maher*, 2025 WL 756549, at *3 (M.D. Fla. Jan. 16, 2025). The Tax Fraud Statements charge crimes outright. ECF No. 99 ¶¶ 32, 55, 75. Other false, malicious, and defamatory Statements improperly strike at a sterling professional identity built over four decades: that President Trump's fortune came "mostly outside of his ability to run a business," and that "the less he has been involved in decision-making, the better his chances of financial success." *Id.* ¶ 43.

Defendants respond that the Book elsewhere documents President Trump's successes, so the "entire context" defeats the sting. ECF No. 103 at 12–13. But a publication does not neutralize a defamatory gist by including favorable details alongside it; were it otherwise, no book could ever defame. Context is assessed "in its totality," *Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984), and, here, the totality begins on the cover, which tells the reader that this is the story of *How*

*Donald Trump Squandered His Father's Fortune and Created the Illusion of Success*. The Times did the same with the First Article, which ran in print under the headline "He Wasn't a Billionaire: He Just Played One on TV." ECF No. 99 ¶ 2 n.1. That is the very sting that President Trump alleges, stated by Defendants themselves.

**B. Falsity and opinion.**

Defendants' falsity arguments ask the Court to resolve disputes that the SAC raises. The false claim that President Trump "had sold the bulk of his father's empire for almost $250 million less than it was worth," ECF No. 99 ¶ 96, is a specific numerical claim, and the SAC alleges that assets were not valued at the falsely stated figures, *id.* ¶¶ 97, 154. Rule 8 does not require a plaintiff to plead a competing appraisal, in order to deny a false one.

Separately, Defendants argue that borrowing the jacket with permission "effectively confirms" the medals statement. ECF No. 103 at 13. Not true. Permission confirms only that President Trump wore the jacket. The Statement charges more: that he "knowingly" wore it, "in effect appropriating medals that he did not win himself." ECF No. 99 ¶ 162. The sting is deceit—passing off another's honors as one's own—and the SAC states that he never claimed the medals were his, and wore the jacket "with the full consent and endorsement of his classmate, Michael Scadron." *Id.* ¶ 163. Whether a photograph taken with permission, and without any claim of entitlement, amounts to "appropriating" honors is not for the Court to resolve against the pleading.

The SAT and money laundering statements are addressed in Part I.A: a widow's denial and an agency release naming only an entity establish falsity, not

substantial truth. ECF No. 99 ¶¶ 167, 171, 173. That President Trump "does not disclaim his control" of the entity, ECF No. 103 at 14, changes nothing. A violation found against a company is not a violation by its owner. The same gap defeats the fair report privilege, which protects only a substantially accurate account of the proceeding reported. *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 502 (Fla. 3d DCA 1993).

Defendants' final, wrong position is that the Challenged Statements are opinions resting on disclosed facts that President Trump "does not dispute." ECF No. 103 at 15. He disputes them. ECF No. 99 ¶¶ 48, 59–60, 67–68, 105, 232. In addition, each of the Challenged Statements arose from what the Defendants have labeled as investigative journalism. "A reasonable reader would expect a piece of investigative journalism to convey facts[.]" *Nunes v. Lizza*, 12 F.4th 890, 898 (8th Cir. 2021) (citing *Michel*, 816 F.3d at 699). When a media outlet publishes accusations under these circumstances, it is encouraging the "reasonable reader to be less skeptical and more willing to conclude that [they] stat[ed] or impl[ied] facts[.]" *Gross v. New York Times Co.,* 82 N.Y.2d 146, 156 (1993). Thus, Defendants' opinion arguments fail.

**C. Damages.**

Counts I, III, and V plead defamation *per se*, for which damages are presumed, and special damages need not be pleaded at all. *Loomer*, 2025 WL 756549, at *3. Defendants' objection that President Trump "no longer specifies" which statements are *per se*, and which *per quod,* ECF No. 103 at 15, identifies no defect: Rule 8(d)(2)–(3) permits pleading in the alternative. Defendants' one-sentence *per quod* objection,

ECF No. 103 at 15, ignores that the SAC now incorporates its damages allegations into each *per quod* count. ECF No. 99 ¶¶ 267, 284, 301. The SAC identifies the related decline in the value of President Trump's holdings, *id.* ¶ 246;[4] reduced profitability for businesses that depend on their placement as luxury brands, and on customer engagement with him personally, *id.* ¶ 247; as well as the diminished value of a personal brand whose ventures generate hundreds of millions in annual revenue, *id.* ¶¶ 248–49. Defendants are on notice of what Plaintiff states to have lost; computation is a matter of proof. Any contrary conclusion would reach only Counts II, IV, and VI.

## III. Leave to amend.

Alternatively, if the Court is inclined to grant Defendants' Motion to Dismiss, which it should not do, President Trump respectfully requests leave to amend to cure any deficiencies found by the Court. *See Michel*, 816 F.3d at 706–07 (allowing leave to amend in a defamation action); *Wallis v. Cueto*, 2017 WL 6388914, at *7 (S.D. Fla. Aug. 9, 2017) (same).

## CONCLUSION

WHEREFORE, Plaintiff President Donald J. Trump respectfully requests that the Court deny Defendants' Motion to Dismiss, as supplemented, or, alternatively, if it chooses to grant Defendants' Motion to Dismiss, which should not be the case, do so without prejudice and allow President Trump leave to amend, and award any other relief the Court deems proper.

---

[4] The stock-price allegation is a measure of harm to his brand, not a corporate injury. So, *Braun v. Buyers Choice Mortg. Corp.*, 851 So. 2d 199 (Fla. 4th DCA 2003), does not apply.

Dated: October 1, 2026

Respectfully submitted,

*/s/ Alejandro Brito*
Alejandro Brito
Florida Bar No. 098442
Ian Michael Corp
Florida Bar No. 1010943
BRITO, PLLC
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Tel: 305-614-4071
Fax: 305-440-4385
abrito@britopllc.com
apiriou@britopllc.com

*Counsel to Plaintiff*
*President Donald J. Trump*

Edward Andrew Paltzik
TAYLOR DYKEMA PLLC
914 E. 25th Street
Houston, TX 77009
Tel: 516-526-0341
edward@taylordykema.com
(*pro hac vice*)

*Co-counsel to Plaintiff*
*President Donald J. Trump*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 1, 2026, the foregoing was served via the Court's CM/ECF System upon:

William J. Schifino, Jr., Esq.
Justin P. Bennett, Esq.
Gregory L. Pierson, Esq.
Gunster, Yoakley & Stewart, P.A.
401 E. Jackson Street
Suite 1500
Tampa, Florida 33602
wschifino@gunster.com
jbennett@gunster.com
gpierson@gunster.com
cwarder@gunster.com

*Counsel for Defendants Penguin Random House LLC, Susanne Craig, and Russ Buettner*

George S. LeMieux, Esq.
Eric C. Edison, Esq.
Gunster, Yoakley & Stewart, P.A.
450 East Las Olas Blvd.
Suite 1400
Fort Lauderdale, Florida 33301
glemieux@gunster.com
eedison@gunster.com

*Counsel for Defendants Penguin Random House LLC, Susanne Craig, and Russ Buettner*

Williams & Connolly, LLP
Thomas G. Hentoff, Esq.*
Nicholas G. Gamse, Esq.*
Kimberly Broecker, Esq.*
680 Main Avenue S.W.
Washington, D.C. 20024
thentoff@wc.com
ngamse@wc.com
kbroecker@wc.com

*Counsel for Defendants New York Times Company, Susanne Craig, Russ Buettner, and Peter Baker*

Elizabeth A. McNamara, Esq.* (lead counsel)
Alexandra Perloff-Giles, Esq.*
Davis Wright Tremaine, LLP
1251 Avenue of the Americas
42nd Floor
New York, New York 10020
lizmcnamara@dwt.com
jackbrowning@dwt.com
alexandraperloffgiles@dwt.com

*Counsel for Defendants Penguin Random House LLC, Susanne Craig, and Russ Buettner*

Thomas & LoCicero, PL
Carol Jean LoCicero, Esq.
James J. McGuire, Esq.
Linda R. Norbut, Esq.
601 South Boulevard

Tampa, FL 33606
clocicero@tlolawfirm.com
jmcguire@tlolawfirm.com
lnorbut@tlolawfirm.com

*Counsel for Defendants New York Times Company,*
*Susanne Craig, Russ Buettner, and Peter Baker*

*/s/ Alejandro Brito*