**UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PRESIDENT DONALD J. TRUMP, an individual,

Plaintiff,

v.

NEW YORK TIMES COMPANY, a New York corporation, SUSANNE CRAIG, an individual, RUSS BUETTNER, an individual, PETER BAKER, an individual, and PENGUIN RANDOM HOUSE LLC, a Delaware company,

Defendants.

Case No. 8:25-cv-02487-SDM-NHA

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

In a last-ditch effort to save his claims, Plaintiff pivots to a new theory of actual malice in his opposition ("Opp.") (Doc. 104). All but gone are his arguments that relying on tax returns from Charles Littlejohn or the failure to obtain an interview with Mark Burnett somehow supports actual malice. Instead, Plaintiff argues for the first time that "Defendants' own materials contradicted what they published." Opp. at 2. These purported "contradictions" consist of nothing more than general denials from Plaintiff's own lawyer and out-of-context statements that do noy actually contradict the Challenged Statements. Thus, even if this Court were to consider Plaintiff's improper effort to amend his complaint through his opposition, the purported "contradictions" with prior publications do not save his claim.

## <u>BACKGROUND</u>

Craig and Buettner published the 2018 Article based largely on documents from Plaintiff's niece, Mary Trump. Doc. 44-4. The Article describes, in meticulous detail across 38 pages, the various methods the Trump family used to reduce gift and estate taxes, including undervaluing real estate, disguising gifts as loans, and funneling money through sham companies like All County. *Id.* at 6. At the outset, the 2018 Article quotes Plaintiff's then-lawyer Charles Harder, stating the "allegations of fraud and tax evasion are 100 percent false" and "[t]here was no fraud or tax evasion by anyone" (the "General Denial"). *Id.* at 3. Towards the end of the Article, it reports on an IRS audit of Fred and Mary Trump's combined estates completed in 2000, which concluded they were worth "more than Donald Trump and his siblings had claimed," resulting in an "additional $5.2 million in estate taxes," but still far less than if the

actual market values had been used. *Id.* at 35. In response, Mr. Harder "defended the [estate] tax returns," stating that they were "examined in real time by the relevant taxing authorities," who "requested a few minor adjustments, which were made, and then fully approved all of the tax filings" (the "Estate Tax Comment"). *Id.*

## ARGUMENT

### I. The Denials in the 2018 Article Do Not Show Actual Malice

Plaintiff's opposition focuses on three of the Inheritance Statements, 1AC ¶¶ 20(a), 20(f), and 20(k), which he now calls the Tax Fraud Statements, and argues that the General Denial and Estate Tax Comment provided a "verifiable" reason to doubt those Challenged Statements. Opp. at 7–8. The argument fails. *First*, the General Denial does not show Defendants subjectively doubted the truth of any Challenged Statement. "Denials are so commonplace" that "they hardly alert the conscientious reporter to the likelihood of error." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 691 n.37 (1989) (cleaned up); *see Trump v. Dow Jones & Co., Inc.*, 833 F. Supp. 3d 1359, 1373 (S.D. Fla. 2026); *Brimelow v. N.Y. Times Co.*, 2021 WL 4901969, at *2-3 (2d Cir. Oct. 21, 2021). Here, there is nothing "specific and concrete" "in the content of the denial" nor any "supporting evidence produced in conjunction with the denial that carries a doubt-inducing quality." *Montgomery v. Risen*, 197 F. Supp. 3d 219, 263 (D.D.C. 2016), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017). This conclusion is particularly sound here given Plaintiff's failure to challenge the accuracy of the 2018 Article, including the Tax Fraud Statements, in the intervening six years before publication of the Book. Crucially, from Buettner and Craig's perspective, Plaintiff tacitly admitted

the truth of their detailed reporting. As reported in the 2018 Article, Plaintiff's lawyer suggested The Times would face "substantial liability" for defamation if it reported Plaintiff participated in any fraud or tax evasion. Doc. 44-4 at 25. Yet, in 2021, when Plaintiff actually sued over the 2018 Article, he did *not* challenge "the truth of any statements" in the Article. *Trump v. Trump*, 79 Misc. 3d 866, 868 (N.Y. Sup. Ct. 2023).

*Second*, Harder's Estate Tax Comment should be disregarded as Plaintiff once again mischaracterizes what the Book says. Plaintiff's opposition suggests that Defendants had a "specific reason to doubt" the Tax Fraud Statements—particularly that Fred Trump's loans to his son were "a likely tax fraud that went unnoticed"—because in the 2018 Article Plaintiff's counsel said the relevant taxing authorities had "examined the challenged positions in 'real time' and 'fully approved all of the tax filings.'" Opp. at 3, 8 (citing Doc. 44-4 at 3, 35). But nothing in the 2018 Article or Book supports the conclusion that the taxing authorities that reviewed the Trumps' estate taxes ever examined "challenged positions" in "real time" concerning Fred Trump's forgiven loans over decades or the All County "invoice-padding" that began in 1992, the events at issue in the Tax Fraud Statements. To the contrary, the 2018 Article expressly reports that such transfers—which occurred years earlier—were *not* included in the estate tax audit that taxing authorities completed after Mary's death in August 2000, but should have been. Doc. 44-4 at 34–35. Critically, the Book also reports on the audits that Harder's Estate Tax Comment was responding to, again reporting that the IRS found an increase in the estate's value, but the family still paid "hundreds of millions of dollars less than they would have paid in gift or estate taxes"

based on the actual value of the estate. Book at 328. These passages from the Book are *not* included in the Challenged Statements. In short, Plaintiff's latest turn at plucking quotes out of context, here by misleadingly juxtaposing Harder's Estate Tax Comment with Challenged Statements about other topics, does not support actual malice.

**II. Plaintiff's Other Supposed Contradictions Are Also Non-Existent**

As to the Apprentice Statements, despite Plaintiff's efforts, it is not contradictory to report that Burnett agreed to share profits 50/50 to "lock in someone of Trump's stature," Book at 345–46; 366, and also to conclude that "other people would do all the work," 1AC ¶ 20(q), with respect to product placement opportunities.

And the Survey Article's hyperlinks provide supporting context for the article's discussion, not contradiction. "The hyperlink is the twenty-first century equivalent of the footnote for purposes of attribution in defamation law." *Adelson v. Harris*, 973 F. Supp. 2d 467, 484 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017). For example, the article includes both Plaintiff's denial of his niece's SAT cheating allegation and the statement that "the widow" of the alleged "test-taking friend said that she was confident her husband did no such thing." Doc. 44-3 at 7. It links to an ABC article reporting that the widow said that "if the book [wa]s referencing her late husband," then the allegation was false because her recollection was that her husband did not meet Plaintiff until they were students at Wharton. https://tinyurl.com/mu7s3end. *Project Veritas v. Cable News Network, Inc.*, 121 F.4th 1267, 1283–84 (11th Cir. 2024), thus does not help Plaintiff. There, the CNN employee first accurately reported that Twitter suspended Project Veritas for publishing private information and then, four

days later, made a contradictory statement that the suspension was due to it "promoting misinformation." *Id.* at 1272. Here, by contrast, the linked-to material *confirms* the article's discussion of the widow's response.[1] Likewise, in a section focusing on Plaintiff's "record in business," Doc. 44-3 at 8, the article carefully *distinguishes* between three types of investigations of Plaintiff conducted by "[f]ederal, state, and local authorities." *Id.* at 10. As the hyperlinks reveal, these investigations included inquiries into the businesses with which Plaintiff has been deeply intertwined. *See id.* The statement that investigators "found violations of money laundering laws" does *not* assert that the violations were Plaintiff's personally. *Id.* at 10. Instead, the hyperlink to a 1998 U.S. Treasury Department press release provides the supporting context that Plaintiff's company Trump Taj Mahal Associates had agreed to a civil penalty for "BSA [Bank Secrecy Act] violations" based on failing "to comply with Treasury's anti-money laundering requirements." https://tinyurl.com/3axx3h96.

## III. Plaintiff's Theory Is Untethered to the 2AC and Should Not Be Considered

Plaintiff's new theory of actual malice suffers from another defect: it is not properly before the Court. The 2AC does not cite Harder or his 2018 comments or invoke any denials. Plaintiff "cannot now use his briefing to add new [factual] allegations and argue that those new assertions support his cause of action." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 705–06 (11th Cir. 2016); *see also, e.g.*, *Orta v. City of Orlando*, 2015 WL 2365834, at *5 n.3 (M.D. Fla. May 18, 2015).

[1] *Project Veritas* also provides no support for the supposed contradictions in the Book. Defendants made the *same* claims in the Book as in the 2018 Article—claims they have never had any reason to doubt.

Dated: October 14, 2026

Respectfully submitted,

/s/ Carol Jean LoCicero
Carol Jean LoCicero
Florida Bar No. 603030
Linda Norbut
Florida Bar No. 1011401
**THOMAS & LOCICERO**
601 S. Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060
clocicero@tlolawfirm.com
lnorbut@tlolawfirm.com

Thomas G. Hentoff* (lead counsel)
Nicholas G. Gamse*
Kimberly Broecker*
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5804
thentoff@wc.com
ngamse@wc.com
kbroecker@wc.com

*Admitted *pro hac vice*

***Attorneys for Defendants New York Times Company, Peter Baker, Susanne Craig, and Russ Buettner***

/s/ William J. Schifino, Jr.
William J. Schifino, Jr.
Florida Bar No. 564338
Justin P. Bennett
Florida Bar No. 112833
Gregory L. Pierson
Florida Bar No. 123905
**GUNSTER, YOAKLEY & STEWART, P.A.**
401 E. Jackson Street, Suite 1500
Tampa, Florida 33602
Telephone: (813) 228-9080
wschifino@gunster.com
jbennett@gunster.com
gpierson@gunster.com

George S. LeMieux
Florida Bar No. 16403
Eric C. Edison
Florida Bar No. 10379
**GUNSTER, YOAKLEY & STEWART, P.A.**
450 East Las Olas Blvd., Suite 1400
Fort Lauderdale, Florida 33301
Telephone: (954) 462-2000
glemieux@gunster.com
eedison@gunster.com

Elizabeth A. McNamara* (lead counsel)
Alexandra Perloff-Giles*
**DAVIS WRIGHT TREMAINE LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 489-8230
lizmcnamara@dwt.com
alexandraperloffgiles@dwt.com

*Admitted *pro hac vice*

*Attorneys for Defendants Penguin Random House LLC, Susanne Craig, and Russ Buettner*